## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ALTEGRITY, INC., *et al.*,[1]<br><br>                         Debtors. | Chapter 11<br><br>Case No. 15-10226 (LSS)<br><br>Jointly Administered<br><br>**Hearing Date: March 10, 2015 at 11:30 a.m. (EST)**<br>**Objection Deadline: March 3, 2015 at 4:00 p.m. (EST)**<br>**Local Rule 2016-2 Waiver Requested** |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY EVERCORE GROUP LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER *NUNC PRO TUNC* TO THE COMMENCEMENT DATE AND WAIVING CERTAIN INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to retain and employ Evercore Group LLC ("**Evercore**") as their financial advisor and investment banker in connection with their chapter 11 cases effective *nunc pro tunc* to the Commencement Date (defined herein), (b) approving the terms of Evercore's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter (defined herein), and

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Altegrity, Inc. (9985); Albatross Holding Company, LLC (2688); Albatross Marketing and Trading, LLC (8643); Altegrity Acquisition Corp. (1480); Altegrity Holding Corp. (1481); Altegrity Risk International LLC (6350); Altegrity Security Consulting, Inc. (5452); CVM Solutions, LLC (9526); D, D & C, Inc. (9552); Engenium Corporation (2269); FDC Acquisition, Inc (2387); HireRight Records Services, Inc. (1944); HireRight Solutions, Inc. (8954); HireRight Technologies Group, Inc. (1660); HireRight, Inc. (5016); John D. Cohen, Inc. (1738); KCMS, Inc. (0085); KIA Holding, LLC (1333); Kroll Associates, Inc. (6880); Kroll Background America, Inc. (4830); Kroll Crisis Management Group, Inc. (3811); Kroll Cyber Security, Inc. (2393); Kroll Factual Data, Inc. (9911); Kroll Holdings, Inc. (4648); Kroll Inc. (1019); Kroll Information Assurance, Inc. (2283); Kroll Information Services, Inc. (2381); Kroll International, Inc. (1243); Kroll Ontrack Inc. (1650); Kroll Recovery LLC (7082); Kroll Security Group, Inc. (5514); National Diagnostics, Inc. (7132); Ontrack Data Recovery, Inc. (3148); Personnel Records International, LLC (0716); The Official Information Company (1805); US Investigations Services, LLC (9260); USIS International, Inc. (3617); and USIS Worldwide, Inc. (4258).  The location of the Debtors' corporate headquarters is 7799 Leesburg Pike, Suite 1100 North, Falls Church, VA 22043.

(c) waiving certain informational requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").  In support of this application, the Debtors submit the Declaration of Stephen R. Goldstein, a Senior Managing Director of Evercore (the "**Goldstein Declaration**"), which is attached hereto as **Exhibit B**.  In further support of this application, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules 2014-1 and 2016-2.

## Background

4.      On February 8, 2015 (the "**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner or statutory committee has been appointed in these chapter 11 cases.

5. Debtor Altegrity, Inc. ("**Altegrity**"), together with its Debtor and non-Debtor subsidiaries and affiliates, is a privately held global, diversified risk and information services company serving commercial customers and government entities.  Headquartered in Falls Church, Virginia, Altegrity is the parent company of three separately managed businesses:  (a) Kroll, a leading provider of investigative and due diligence advisory services, e-discovery technologies, data recovery solutions, and risk mitigation and verification services, with offices in over 20 countries; (b) HireRight, a leading provider of employment background screening, drug/health screening and employment eligibility solutions, with services offered globally; and (c) USIS, which, until recently, provided background investigations and information management and security services to U.S. federal government agencies.

6. Additional information regarding the Debtors, including their business operations, corporate and capital structure, and the events leading to the Commencement Date, is more fully set forth in the *Declaration of Jeffrey Campbell, President and Chief Financial Officer of Altegrity, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15].

**Retention of Evercore**

**A.    Evercore's Qualifications**

7. Evercore is well-qualified to serve as the Debtors' financial advisor and investment banker.  As described in the Goldstein Declaration, Evercore has extensive experience and an excellent reputation in providing high quality financial advisory and investment banking services to debtors and creditors in bankruptcy reorganizations and other restructurings.

8.    Established in 1996, Evercore is a leading independent investment banking advisory and investment management firm.  Evercore's investment banking business includes its advisory business, which provides a range of financial advisory services to multinational corporations on mergers and acquisitions, divestitures, special committee assignments, recapitalizations, restructurings, and other strategic transactions.  In addition, through its investment banking business, Evercore provides capital markets advice, underwrites securities, raises funds for financial sponsors, and offers equity research and agency-only equity securities trading for institutional investors.  Evercore's investment management business includes private equity investment, institutional asset management and wealth management.  Evercore and its affiliates serve a diverse set of clients around the world from its offices in New York, Los Angeles, Washington, D.C., San Francisco, Houston, Menlo Park, Singapore, Hong Kong, London, Aberdeen, Mexico City, Monterrey, São Paulo, and Rio de Janeiro.  Since the beginning of 2000, Evercore's corporate advisory and restructuring advisory groups have advised on over $1.4 trillion of transactions.  Its restructuring professionals provide investment banking services in financially distressed situations, including advising debtors, creditors, and other constituents in chapter 11 cases and out-of-court restructurings.

9.    Evercore and its professionals have assisted and advised numerous financially troubled companies from a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases.  Evercore professionals have been particularly active in large, complex chapter 11 cases, including, among others, *In re Mineral Park, Inc.*, No. 14-11996 (KJC) (Bankr. D. Del. Sept. 23, 2014); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Sept. 16, 2014); *In re FAH Liquidating Corp. (Fisker Automotive)*, No. 13-13087 (KG) (Bankr. D. Del. March 31, 2014); *In re Synagro Technologies, Inc.*, No. 13-

11041 (BLS) (Bankr. D. Del. May 23, 2013); *In re Ormet Corp.*, No. 13-10334 (MFW) (Bankr.

D. Del. Apr. 18, 2013); *In re Otelco Inc.*, No. 13-10593 (MFW) (Bankr. D. Del. Apr. 18, 2013);

*In re RDA Holding Co.*, No. 13-22233 (RDD) (Bankr. S.D.N.Y. Mar. 25, 2013); *In re Inspiration Biopharmaceuticals, Inc.*, No. 12-18687 (WCH) (Bankr. D. Mass. Dec. 19, 2012); *In re Broadview Networks Holdings, Inc.*, No. 12-13581 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2012);

*In re Circus and Eldorado Joint Venture*, No. 12-51156 (BTB) (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Jan. 11, 2012); *In re Trico Marine Servs., Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Oct. 6, 2010); *In re CIT Group, Inc.*,

No. 09-16565 (ALG) (Bankr. S.D.N.Y. Nov. 24, 2009); *In re General Motors Corp.*,

No. 09-50026 (REG) (Bankr. S.D.N.Y. Oct. 28, 2009); *In re Lyondell Chem. Co.*, No. 09-10023

(REG) (Bankr. S.D.N.Y. Feb. 25, 2009).[2]

10.    The resources, capabilities and experience of Evercore in advising the Debtors are crucial to the Debtors' chapter 11 strategy.  A financial advisor and investment banker with a deep bench of experience, such as Evercore, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  The Debtors require the services of a capable and experienced financial advisor and investment banker such as Evercore.

**B.    Prepetition Services**

11.    Evercore has been working for the Debtors, under the current Engagement Letter and previous agreements, since November 2013 to address their capital structure, including work relating to the Debtors' recapitalization in July 2014.  As a result, Evercore has acquired significant knowledge of the Debtors and their businesses and is intimately familiar with the

---

[2]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this application.  Copies of these orders are available upon request to the Debtors' counsel.

Debtors' financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents and other related material information.  Likewise, in providing prepetition services to the Debtors, Evercore's professionals have advised the Debtors' senior management and its Board of Directors on all aspects of the Debtors' restructuring efforts.

12.    Evercore, along with the Debtors' other advisors, has also been instrumental in negotiations with key stakeholders across the Debtors' capital structure, including with respect to the extensive due diligence and arms' length negotiations with certain of the Debtors' secured lenders and noteholders that resulted in the restructuring support agreement entered into by those creditors and the Debtors.

13.    As is customary in the preparation of pre-arranged chapter 11 cases, Evercore expended a significant amount of professional time during the prepetition period in order to minimize the time spent by the Debtors during the chapter 11 process.  In particular, Evercore has worked closely with the Debtors to analyze the Debtors' financial positions and to assist the Debtors to evaluate various restructuring alternatives.  Evercore assisted the Debtors in analyzing financial recapitalization and asset sale alternatives based on the Debtors' business plan.  During the weeks leading up to the filing of these cases, Evercore assisted in the structuring and negotiation of Debtors' proposed postpetition financing (the "**DIP Credit Agreement**"). Evercore assisted the Debtors in detailed negotiations of the key terms and covenants of the DIP Credit Agreement, an important feature of which allows the Debtors, under specific conditions, to pay back the DIP Credit Agreement with new second lien notes rather than cash.

14.    Accordingly, as a result of the prepetition work performed on behalf of the Debtors and the significant knowledge gained thereby, Evercore has developed relevant experience and expertise regarding the Debtors that (i) makes Evercore a natural selection as the

Debtors' financial advisor and investment banker and (ii) will allow Evercore to provide effective and efficient services to the Debtors in these chapter 11 cases.

### C.     Services to Be Provided

15.     The Debtors and Evercore have agreed on the terms of Evercore's current engagement by the Debtors, as set forth in the engagement letter dated October 29, 2014 (the "**Engagement Letter**"), attached as **Exhibit 1** to **Exhibit A** hereto.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and Evercore and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors propose to retain Evercore to render, among other things, the following investment banking services:[3]

    a.  Reviewing and analyzing the Debtors' business, operations and financial projections;

    b.  Advising and assisting the Debtors in a Restructuring, Financing and/or Sale transaction, if the Debtors determine to undertake such a transaction;

    c.  If the Debtors pursue a Restructuring, providing financial advice in developing and implementing a Restructuring, including:

        i.  Assisting the Debtors in developing a Plan;

        ii.  Advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

        iii.  Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings under the Bankruptcy Code that are pending before the Court; and,

        iv.  Providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate.

    d.  If the Debtors pursue a Financing, assisting the Debtors in:

---

[3] The listed services are a summary of the services Evercore may provide to the Debtors.  In the event of any inconsistency between the Engagement Letter and this summary, the Engagement Letter shall govern in all respects.  Capitalized terms used in this summary but not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

      i.  Structuring and effecting a Financing;

     ii.  Identifying potential Investors and, at the Debtors' request, contacting such Investors; and,

    iii.  Working with the Debtors in negotiating with potential Investors.

   e.  If the Debtors pursue a Sale, assisting the Debtors in:

      i.  Structuring and effecting a Sale;

     ii.  Identifying interested parties and/or potential acquirors and, at the Debtors' request, contacting such interested parties and/or potential acquirors; and,

    iii.  Advising the Debtors in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale transaction.

16.    If the Debtors request that Evercore perform services not contemplated by the Engagement Letter, Evercore and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval thereof.

**D.**    **No Duplication of Services**

17.    The services that Evercore will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services Evercore will provide will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Thus, Evercore will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and other retained professionals to avoid the unnecessary duplication of services.

E.    **Professional Compensation**[4]

18.    In consideration of the services to be provided by Evercore, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay Evercore the proposed compensation set forth in the Engagement Letter (the "**Fee Structure**"):

a.    **Monthly Fee**:  $200,000 per month, with 100% of the first four monthly fees and 50% of any subsequent monthly fees credited against the Restructuring Fee.

b.    **Restructuring Fee**:  0.50% of the amount of any restructured debt, excluding the Zero Coupon Junior Subordinated Notes due 2022.  Provided that, in the event that the debt under the First Lien Debt Agreements (the "**First Lien Debt**") is reinstated, the Restructuring Fee with respect to such First Lien Debt will be 0.25% of the amount of such First Lien Debt so reinstated, and if the First Lien Debt is otherwise restructured (but not reinstated) the Restructuring Fee on such First Lien Debt will be 0.375% of the First Lien Debt so restructured.[5]

c.    **Sale Fee**:  0.875% of the Aggregate Consideration of a Sale.

d.    **Financing Fee**:  A fee equal to a fixed percentage of the aggregate principal amount of financing proceeds irrevocably committed or funded, excluding any proceeds from Providence Equity Partners or its affiliates, as follows:  1.00% of the Secured Debt, 3.00% of the Unsecured Debt and 5.00% of the Equity (together with any Restructuring Fee and/or Sale Fee, the "**Transaction Fees**").  Fifty percent of the Financing Fee will be credited against any Restructuring Fee.[6]

---

[4]    The following is a summary of the Fee Structure.  In the event of any inconsistency between the Engagement Letter and this summary, the Engagement Letter shall govern in all respects.

[5]    The Engagement Letter also provides that in the event of an out-of court amendment of the either of the First Lien Debt Agreements, Evercore will receive a Restructuring Fee in the amount of $1,500,000 (the "**Amendment Fee**").  Upon the closing of the amendment to the First Lien Debt Agreements on February 6, 2015, the Debtors paid Evercore the Amendment Fee.

[6]    More than one Transaction Fee may become payable to Evercore, even if such fees are in connection with a single transaction.

> e.    **Expenses**:  Reimbursement of reasonable and documented out-of-pocket expenses, including fees and expenses of external counsel, not to exceed an aggregate of $50,000 without the prior consent of the Debtors (such consent not to be unreasonably withheld or delayed).

19.    The Debtors believe that the Fee Structure is reasonable and comparable to those generally charged by financial advisors and investment bankers of similar stature to Evercore for comparable engagements, both in and out of court.   The Debtors also submit that the Fee Structure reflects a balance between a fixed monthly fee and a contingency amount tied to both the (i) consummation and closing of the transactions and (ii) services contemplated by the Debtors and Evercore in the Engagement Letter.

20.    The Fee Structure summarized above and described more fully in the Engagement Letter is consistent with Evercore's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these chapter 11 cases.  Moreover, the Fee Structure is consistent with and typical of arrangements entered into by Evercore and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.  Evercore and the Debtors believe that the Fee Structure is both reasonable and market-based.

21.    To induce Evercore to represent the Debtors, the Fee Structure was established to reflect the difficulty of the extensive assignments Evercore has undertaken and expects to undertake and to account for the potential for an unfavorable outcome resulting from factors outside of Evercore's control.

22.    The Debtors and Evercore negotiated the Fee Structure to function as an interrelated, integrated unit, in correspondence with Evercore's services, which Evercore renders not in parts, but as a whole.  It would be contrary to the intention of Evercore and the Debtors for

any isolated component of the Fee Structure to be treated as sufficient consideration for any isolated portion of Evercore's services.  Instead, the Debtors and Evercore intend that Evercore's services be considered as a whole that is to be compensated by the Fee Structure in its entirety.

23.     Evercore's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Evercore's engagement hereunder, were important factors in determining the Fee Structure.  The ultimate benefit to the Debtors derived from the services provided by Evercore hereunder cannot be measured by a reference to the number of hours expended by Evercore's professionals.

24.     The Fee Structure was agreed to in anticipation that a substantial commitment of professional time and effort will be required of Evercore and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Evercore and (ii) the actual time and commitment required of Evercore and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Evercore.

25.     The Fee Structure further anticipates (i) the myriad issues that Evercore may be required to address in the performance of its services hereunder, (ii) Evercore's commitment to the variable level of time and effort necessary to address all such issues and (iii) the market prices for Evercore's services for engagements of this nature in both the in-court and out-of-court contexts.  The Debtors therefore submit that the Fee Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

26.     The Debtors propose that all compensation and expenses will be sought in accordance with section 328(a) of the Bankruptcy Code and will not be subject to any other standard of review, including section 330 of the Bankruptcy Code.  The Debtors also propose

that, notwithstanding Evercore's retention under section 328(a), the United States Trustee for the District of Delaware (the "**U.S. Trustee**") will retain the right to object to the compensation to be paid to Evercore pursuant to the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, provided that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in this case to the fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of these cases.

27.    Evercore has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code. No promises have been received by Evercore as to compensation in connection with these chapter 11 cases, other than as outlined in the Engagement Letter.

## F.    Recordkeeping

28.    It is not the general practice of financial advisory and investment banking firms, including Evercore, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).   Because Evercore does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), Evercore requests that it be excused from compliance with such requirements set forth in Local Rule 2016-2(d). Evercore should be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

29.     Evercore will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Evercore's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any procedures established by the Court (to the extent compliance is not waived pursuant to any order granting the relief requested herein), *provided*, *however*, that the Debtors request that, pursuant to Local Rule 2016-2(h), in connection with Evercore's request for reimbursement for fees, disbursement and other charges of its external legal counsel in respect of its retention and its fee applications, the requirements of Local Rule 2016-2(f) be waived, except that Evercore shall include its external legal counsel's summary invoices (not to include time entries) in any interim and final fee applications seeking allowance of reimbursement of such invoices.

## G.     Indemnification Provisions

30.     Pursuant to **<u>Schedule I</u>** to the Engagement Letter, the Debtors have agreed to certain indemnification and contribution provisions (the "**Indemnification Provisions**").[7]  The Indemnification Provisions provide that the Debtors will, among other things, indemnify and hold harmless Evercore and its affiliates, and their respective members, partners, officers, directors, advisors, representatives, employees, agents, affiliates, or controlling persons, if any (collectively, the "**Indemnified Persons**"), to the fullest extent lawful, from and against any and all losses, claims, damages, liabilities, and expenses related to, arising out of, or in connection with, Evercore's engagement under the Engagement Letter, or any matter referred to in the Engagement Letter, all as more fully set forth in the Indemnification Provisions.  The Debtors

---

[7]     The indemnification provisions included in this Application are a summary of the Indemnification Provisions the Debtors may provide to Evercore.  In the event of any inconsistency between Schedule 1 to the Engagement Letter and this summary, Schedule 1 to the Engagement Letter shall govern in all respects.

shall not, however, be liable to the extent of any loss, claim, damage, liability, or expense resulting from the gross negligence, bad faith or willful misconduct of an Indemnified Person.

31.    In addition, if the Indemnification Provisions are held to be unavailable (other than in accordance with the terms of the Engagement Letter) by any court, the Engagement Letter allocates contribution obligations based on the relative benefits and faults of Evercore and the Debtors, all as more fully set forth in the Indemnification Provisions.

32.    The Debtors and Evercore believe that the Indemnification Provisions contained in **Schedule I** to the Engagement Letter are customary and reasonable for financial advisory and investment banking engagements, both in and out of court, and, as modified by the proposed order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.  *See, e.g.*, *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Sept. 16, 2014); *In re Broadview Networks Holdings, Inc.*, No. 12-13581 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2012); *In re Circus and Eldorado Joint Venture*, No. 12-51156 (BTB) (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Dec. 16, 2011); *In re Trico Marine Services, Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Aug. 5, 2010); *In re CIT Group Inc.*, No. 09-16565 (ALG) (Bankr. S.D.N.Y. Nov. 1, 2009); *In re General Motors Corp.*, No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009); *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 6, 2009).

33.    The terms and conditions of the Engagement Letter, including the Indemnification Provisions, were negotiated by the Debtors and Evercore at arm's length and in good faith.  The Debtors respectfully submit that the Indemnification Provisions reflected in the Engagement Letter are customary and, viewed in conjunction with the other terms of Evercore's proposed

retention, are reasonable terms of consideration for financial advisors and investment bankers such as Evercore for engagements both out of court and in chapter 11.

**H.    Evercore's Disinterestedness**

34.    To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Goldstein Declaration, (i) Evercore is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates; and (ii) Evercore has no connection to the Debtors, their creditors, equity holders, or other parties in interest.

35.    In connection with its prepetition engagement, the Debtors were required to pay Evercore certain monthly fees.   During the 90 days immediately preceding the Commencement Date, Evercore received the following payments in connection with Evercore's engagement under the Engagement Letter: fee payments of $600,000, expense reimbursement payments of $30,028 and an expense reimbursement deposit of $10,000 (the "**Expense Deposit**").   The unapplied residual retainer will be held until the end of these chapter 11 cases and applied to Evercore's final approved fees in these chapter 11 cases.   During the 90 days immediately preceding the Commencement Date, Evercore also received payment of the Amendment Fee in the amount of $1,500,000 and a Sale Fee for the sale of the Debtors' Kroll Factual Data business in the amount of $927,500.   Other than as set forth herein, Evercore did not receive any payments from the Debtors during the 90 days preceding the Commencement Date.

36.    Within one year prior to the Commencement Date, the Debtors paid Evercore $11,412,500 in fees and $59,634 in expense reimbursements for services rendered in connection

with Evercore's engagement under the Engagement Letter and under prior engagement letters relating to the July 2014 recapitalization.

37.     As of the Commencement Date, none of the Debtors owes Evercore for any fees or expenses incurred prior to the Commencement Date.

38.     While the Goldstein Declaration sets forth certain connections that Evercore has with creditors, equity holders and other parties in interest in these chapter 11 cases, all of these matters are unrelated to these chapter 11 cases.  Evercore does not believe that any of these matters represents an interest materially adverse to the Debtors' estates or otherwise creates a conflict of interest regarding the Debtors or these chapter 11 cases.

39.     Evercore will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new, relevant facts or relationships are discovered or arise, Evercore will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Relief Requested

40.     By this application, the Debtors request entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014(a) and 2016-2, (a) authorizing the Debtors to retain and employ Evercore as their financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc* to the Commencement Date, (b) approving the terms of Evercore's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter and (c) waiving certain informational requirements of Local Rule 2016-2.

**Basis for Relief**

41.    The Debtors seek authority to employ and retain Evercore as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

42.    In addition, the Debtors seek approval of the Engagement Letter (including the Fee Structure and the indemnification provisions in **Schedule I**) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ."  11 U.S.C. § 328(a).  Section 328(a) of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *In re National Gypsum Co.*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable

17

> compensation" based on relevant factors of time and comparable costs, etc.
> Under present section 328 the professional may avoid that uncertainty by
> obtaining court approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d 861, 862 (5th Cir. 1997) (citations omitted). Owing to this inherent uncertainty, courts in this and other jurisdictions have approved arrangements similar to the Fee Structure under section 328 of the Bankruptcy Code. *See, e.g.*, *In re Mineral Park, Inc.,* Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014 & Oct. 2, 2014); *In re Energy Futures Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014); *In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Oct. 2, 2013); *In re iGPS Co. LLC*, No. 13-11459 (KG) (Bankr. D. Del. July 1, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re Nebraska Book Co.*, No. 11 12005 (PJW); (Bankr. D. Del. Aug. 10, 2011); I*n re Appleseed's Intermediate Holdings LLC*, No. 11 10160 (KG).

43.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the
> court's approval, may employ or authorize the employment of a professional
> person under section 327 or 1103 of this title, as the case may be, on any
> reasonable terms and conditions of employment, including on a retainer, on an
> hourly basis, *on a fixed or percentage fee* basis, or on a *contingent fee* basis.

11 U.S.C. § 328(a) (emphasis added). This change makes clear that debtors are able to retain a professional on a fixed and contingent fee basis with bankruptcy court approval, such as provided for in the Fee Structure.

44.    The Debtors submit that the Court's approval of the Debtors' retention of Evercore in accordance with the terms and conditions of the Engagement Letter is warranted for the reasons set forth herein and in the Goldstein Declaration.

45.    <u>First</u>, the requirements of section 327 of the Bankruptcy Code are satisfied.  The Debtors respectfully submit that Evercore's employment is needed to facilitate the Debtors' restructuring, financing and/or sale processes, and provide expert advice and related testimony to enable the Debtors to discharge their duties as debtors and debtors in possession.  Evercore has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  The Debtors believe that Evercore is well qualified to provide its services to the Debtors in a cost-effective, efficient and timely manner.  Furthermore, as detailed above, Evercore does not hold or represent an interest adverse to the Debtors' estates and is a disinterested person as that term is defined by section 101(14) of the Bankruptcy Code.

46.    <u>Second</u>, the Debtors believe that the Fee Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee Structure reflects Evercore's commitment to the variable level of time and effort necessary to perform the services it will provide to the Debtors, Evercore's particular expertise, and the market prices for Evercore's services for engagements of this nature both out of court and in a chapter 11 context.

47.    <u>Third</u>, the Indemnification Provisions are reasonable under the circumstances, reflect market conditions and should be approved under section 328 of the Bankruptcy Code. *See, e.g.*, *In re United Artists Theatre Co. v. Walton*, 315 F.3d 217 (3d Cir. 2003) (approving indemnification for investment banker where the indemnity clause, including carve out for gross negligence, was "reasonable" and, therefore, permissible under the Bankruptcy Code).  Courts in this jurisdiction have approved market-based provisions similar to the Indemnification Provisions in other large chapter 11 cases.  *See, e.g.*, *In re Mineral Park, Inc.*, Case No. 14-

19

11996 (Bankr. D. Del. September 23, 2014 & October 2, 2014); *In re Energy Futures Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. September 16, 2014); *In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Oct. 2, 2013); *In re iGPS Co. LLC*, No. 13 11459 (KG) (Bankr. D. Del. July 1, 2013); *In re Vertis Holdings, Inc.*, No. 12 12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re Nebraska Book Co.*, No. 11 12005 (PJW); (Bankr. D. Del. Aug. 10, 2011); *In re Appleseed's Intermediate Holdings LLC*, No. 11 10160 (KG) (Bankr. D. Del. Feb. 23, 2011).

48.    <u>Fourth</u>, *nunc pro tunc* relief is warranted.  Bankruptcy courts may retroactively approve a professional's valuable services, and Evercore has provided, and will continue to provide, such valuable services to the Debtors.  *See In re Arkansas Co., Inc.*, 798 F.2d 645 (3d Cir. 1986) (holding that bankruptcy courts have the power to grant retroactive approval of the employment of professionals under their broad equity power); *In re Singson*, 41 F.3d 316 (7th Cir. 1994) (rejecting the "extraordinary circumstance" requirement for granting *nunc pro tunc* relief); *In re Atkins*, 69 F.3d 970 (9th Cir. 1995) (stating that bankruptcy courts "possess the equitable power to approve retroactively a professional's valuable but unauthorized services" by granting *nunc pro tunc* relief); *In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) (holding that post facto applications for professional services are allowed under section 327(a) of the Bankruptcy Code).

49.    Indeed, courts routinely grant *nunc pro tunc* relief in this jurisdiction.  *See, e.g.*, *In re Mineral Park, Inc.*, Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014 & Oct. 2, 2014); *In re Energy Futures Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014); *In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Oct. 2, 2013); *In re iGPS Co. LLC*, No. 13-11459 (KG) (Bankr. D. Del. July 1, 2013); *In re Vertis Holdings, Inc.*, No. 12 12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re WP Steel Venture LLC*, No. 12 11661 (KJC)

20

(Bankr. D. Del. Sept. 18, 2012); *In re Ritz Camera & Image, L.L.C.*, No. 12 11868 (KG) (Bankr. D. Del. July 27, 2012).

50.     <u>Fifth</u>, waiver of the informational requirements of Local Rule 2016-2(d) is appropriate.  Local Rule 2016-2(h) states that an employed professional person may request that the Court waive, for cause, one or more of the information requirements of the Local Rule.  It is not the customary practice of financial advisory and investment banking firms to keep detailed time records similar to those required by Local Rule 2016-2(d).  Because Evercore does not keep detailed time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, Evercore should be excused from compliance with such requirements.

### <u>Notice</u>

51.     The Debtors have provided notice of this application to: (a) the Office of the U.S. Trustee; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims; (c) counsel to the agent for the Debtors' prepetition secured credit facility; (d) the indenture trustee for each of the Debtors' outstanding bond issuances; (e) counsel to the *ad hoc* group of first lien debt holders; (f) counsel to the *ad hoc* group of second and third lien noteholders and debtor-in-possession lenders; (g) counsel to certain equity holders of Debtor Altegrity Holding Corp.; (h) the Internal Revenue Service; (i) the United States Attorney for the District of Delaware; (j) the United States Office of Personnel Management and (k) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

**<u>No Prior Request</u>**

52.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE the Debtors respectfully request that the Court (a) enter the order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to retain and employ Evercore as their financial advisor and investment banker effective *nunc pro tunc* as of the Commencement Date, (ii) approving the terms of Evercore's employment and retention, and (iii) waiving certain information requirements of Local Rule 2016-2, and (b) grant such other and further relief as is just and proper.

New York, New York  
Dated:  February 17, 2015

Respectfully submitted,

Altegrity, Inc., *et al.*

*/s/ Jeffrey S. Campbell*  
Jeffrey S. Campbell  
President and  
Chief Financial Officer