## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ALTEGRITY, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10226 (LSS)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 11, 53** |

## FINAL ORDER (A) AUTHORIZING POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363 AND 364, (B) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (C) AUTHORIZING THE USE OF CASH COLLATERAL, AND (D) GRANTING ADEQUATE PROTECTION

Upon the motion (the "**Motion**")[2] of the debtors (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rules 2002-1 and 4001-2 for an interim order, which was entered by the Court on February 10, 2015, as Docket No. 53-2 (the "**Interim Order**"), and this final order (this "**Order**"), *inter alia*:

(a)    authorizing the Debtors to obtain postpetition secured debtor-in-possession financing (the "**DIP Facility**") up to an aggregate principal amount of $90,000,000 pursuant to the terms and conditions of that certain Superpriority Debtor-in-Possession Credit and Guaranty

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Altegrity, Inc. (9985); Albatross Holding Company, LLC (2688); Albatross Marketing and Trading, LLC (8643); Altegrity Acquisition Corp. (1480); Altegrity Holding Corp. (1481); Altegrity Risk International LLC (6350); Altegrity Security Consulting, Inc. (5452); CVM Solutions, LLC (9526); D, D, & C, Inc. (9552); Engenium Corporation (2269); FDC Acquisition, Inc. (2387); HireRight Records Services, Inc. (1944); HireRight Solutions, Inc. (8954); HireRight Technologies Group, Inc. (1660); HireRight, Inc. (5016); John D. Cohen, Inc. (1738); KCMS, Inc. (0085); KIA Holding, LLC (1333); Kroll Associates, Inc. (6880); Kroll Background America, Inc. (4830); Kroll Crisis Management Group, Inc. (3811); Kroll Cyber Security, Inc. (2393); Kroll Factual Data, Inc. (9911); Kroll Holdings, Inc. (4648); Kroll Inc. (1019); Kroll Information Assurance, Inc. (2283); Kroll Information Services, Inc. (2381); Kroll International, Inc. (1243); Kroll Ontrack Inc. (1650); Kroll Recovery LLC (7082); Kroll Security Group, Inc. (5514); National Diagnostics, Inc. (7132); Ontrack Data Recovery, Inc. (3148); Personnel Records International, LLC (0716); The Official Information Company (1805); US Investigations Services, LLC (9260); USIS International, Inc. (3617); and USIS Worldwide, Inc. (4258).  The location of the Debtors' corporate headquarters is 7799 Leesburg Pike, Suite 1100 North, Falls Church, VA 22043.

Agreement (a substantially final form of which was attached to the Motion as **Exhibit B**, and as hereafter amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**DIP Loan Agreement**") by and among Altegrity, Inc. (the "**Borrower**"), the other Debtors as guarantors (the "**Guarantors**"), Cantor Fitzgerald Securities, as administrative agent and collateral agent (the "**DIP Agent**"), and the lenders named therein (the "**DIP Lenders**"), and incur the "Obligations" under the DIP Loan Agreement (such Obligations, as provided for, and defined in, the DIP Loan Agreement, shall be referred to herein as the "**DIP Obligations**") (the DIP Loan Agreement together with all agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "**DIP Documents**");

      (b)     authorizing the Debtors to execute and deliver the DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection herewith and therewith;

      (c)     subject to the terms of the DIP Loan Agreement and this Order, authorizing the Debtors to grant liens in favor of the DIP Agent (for the ratable benefit of the DIP Agent and the DIP Lenders) on all prepetition and postpetition property of the Debtors' estates and all proceeds thereof, junior and subordinate only to the First Priority Adequate Protection Liens, the Senior Priority Liens and the Carve-Out (each as defined below) pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and to accord the DIP Obligations superpriority administrative claim status on the terms set forth in this Order;

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(d)       authorizing the Debtors to use cash collateral pursuant to sections 363(c) of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), including Local Rule 4001-2, on the terms and conditions set forth in this Order;

(e)       authorizing the Debtors to provide adequate protection to (i) Goldman Sachs Bank USA, in its capacity as Administrative Agent and Collateral Agent (the "**Prepetition First Lien Bank Agent**") under, and to the lenders (including the Term Lenders, the Revolving Credit Lenders, the Swingline Lenders, and the Issuing Banks (in each case, as defined in the Prepetition Credit Agreement)) (the "**Prepetition First Lien Lenders**") party to, the Prepetition Credit Agreement (as defined below) on account of the Prepetition Term Loan (as defined below), and (ii) Wilmington Trust, National Association solely in its capacity as Trustee and Note Collateral Agent (the "**Prepetition First Lien Notes Agent**" and, together with the Prepetition First Lien Bank Agent, the "**Prepetition First Lien Agents**") under, and to the holders (the "**Prepetition First Lien Holders**," and together with the Prepetition First Lien Lenders and the Prepetition First Lien Agents, collectively, the "**First Lien Secured Parties**") of notes (the "**Prepetition First Lien Notes**") issued pursuant to the First Lien Indenture (as defined below), to protect the First Lien Secured Parties from any diminution in value of their interests in the Prepetition Collateral (as defined below) resulting from (i) the Debtors' use of Cash Collateral (as defined below), (ii) the use, sale or lease of the Prepetition Collateral (other than Cash Collateral) and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code;

(f)     authorizing the Debtors to borrow under the DIP Facility, up to an aggregate principal or face amount of $90,000,000, with no more than $45,000,000 being available to (i) fund expenses for working capital purposes of the Debtors and to otherwise fund the operations and administration of the Debtors during these Chapter 11 Cases, (ii) make Adequate Protection Payments (as defined below) and (iii)  pay costs and expenses in connection with the DIP Documents and these Chapter 11 Cases, including, but not limited to, professional expenses; and

(g)     setting a date for the hearing (the "**Final Hearing**") to consider the entry of this Order authorizing and approving, on a final basis, the transactions described in the foregoing clauses.

The Court having considered the Motion, the First Day Declaration, the exhibits attached thereto, the DIP Documents, and the evidence submitted at the interim hearing held on February 10, 2015 (the "**Interim Hearing**"), and at the Final Hearing held on March 16, 2015; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion, the Interim Hearing and the Final Hearing and opportunity for objection having been given under the circumstances; and the Interim Hearing and Final Hearing to consider the final relief requested in the Motion having been held and concluded; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests

of the Debtors, their estates, their creditors and all parties in interest; and any objections to the

Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had

before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

A.      The Motion. The Motion is granted on a final basis as set forth herein. Any

objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

B.      Debtor-in-Possession Operation; Creditors' Committee. On February 8, 2015 (the

"**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case

under the Bankruptcy Code. Each Debtor is authorized to continue to operate its business and

manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. On February 24, 2015, the Office of the United States Trustee for the District

of Delaware appointed an official committee of unsecured creditors (the "**Creditors'**

**Committee**"). No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      Jurisdiction. This Court has jurisdiction to consider this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(D), and the Debtors confirmed their consent pursuant to Local

Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the

extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection with the Motion consistent with Article III of the United

States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for relief requested herein are sections 105(a), 361, 362, 363 and 364 of the

Bankruptcy Code, Rules 2002, 4001 and 9014 of the Bankruptcy Rules and Local Rules 2002-1 and 4001-2.

D.      Notice.  Notice of the Final Hearing and the relief requested in the Motion was given by electronic mail, facsimile and/or overnight delivery to (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (ii) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims, (iii) counsel to the Prepetition First Lien Bank Agent (on behalf of itself and the Prepetition First Lien Lenders), (iv) counsel to the DIP Agent (on behalf of itself and the DIP Lenders), (v) the indenture trustee for each of the Debtors' outstanding bond issuances, (vi) counsel to the *ad hoc* group of prepetition first lien debt holders, (vii) counsel to the *ad hoc* group of second and third lien noteholders, (viii) counsel to certain equity holders of Debtor Altegrity Holding Corp., (ix) the Internal Revenue Service, (x) the United States attorney for the District of Delaware, (xi) the United States Office of Personnel Management and (xii) all parties who were known by the Debtors, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in the Prepetition Collateral.  Such notice constitutes good and sufficient notice of the Motion and the Final Hearing under the circumstances.

E.      Debtors' Stipulations.  On behalf of themselves and their estates, subject to Paragraph E-3 below, the Debtors admit, stipulate and agree that:

1.      The Prepetition Debt.

a.      Prior to the Commencement Date, the Borrower and the Guarantors were provided financing pursuant to (a) a first lien senior secured revolving credit facility (the "**Prepetition Revolving Credit Facility**") under the Prepetition Credit Agreement, (b) a first lien senior secured term loan facility (the "**Prepetition Term Loan**" and, together with the

Prepetition Revolving Credit Facility, the "**Prepetition First Lien Credit Facility**") under that certain Credit Agreement, dated as of July 3, 2014, among Altegrity Acquisition Corp., Altegrity, Inc., as the borrower, the Prepetition First Lien Lenders, the Prepetition First Lien Bank Agent, and other parties thereto from time to time (the "**Prepetition Credit Agreement**") and that the Debtors were unconditionally liable, without defense, counterclaim, offset or setoff of any kind with respect to obligations arising under the Prepetition First Lien Credit Facility in an aggregate principal amount of not less than $294,213,221[3] plus accrued but unpaid interest, fees, expense, including any reasonable attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Loan Documents (as defined in the Prepetition Credit Agreement) (the "**Prepetition Credit Agreement Documents**") and other amounts due in accordance with the terms of the Prepetition Credit Agreement Documents, before giving effect to Senior Priority Obligations arising under Section 2.12 of the Prepetition Credit Agreement Documents, (c) the Prepetition First Lien Notes issued under that certain Indenture, dated as of July 3, 2014 (the "**First Lien Indenture**," and together with the Prepetition Credit Agreement Documents, including any ancillary documents related thereto or referenced thereby, collectively, the "**Senior Priority Documents**"), among the Borrower as Issuer, the other Debtors party thereto as guarantors, and the Prepetition First Lien Notes Agent (the obligations under such Prepetition First Lien Notes, the "**Prepetition First Lien Notes Obligations**" and, together with the obligations under the Prepetition First Lien Credit Facility, the "**Senior Priority Obligations**," and the holders of the Senior Priority Obligations, the "**Senior Priority Holders**"), and that the Debtors were unconditionally liable, without defense,

---

[3]    As of January 30, 2015.

counterclaim, offset or setoff of any kind with respect to the Prepetition First Lien Notes

Obligations in the aggregate principal amount of not less than $825,000,000[4] plus accrued but

unpaid interest, fees, and expenses in accordance with the terms of the First Lien Indenture,

before giving effect to Senior Priority Obligations arising under Section 602 of the First Lien

Indenture, (d) certain Senior Second Lien Secured 12.00% Cash Pay and 2.00% Pay-in-Kind

Notes due 2020 and certain Senior Second Lien Secured 10.50% Cash Pay and 2.50% Pay-in-

Kind Notes due 2020 (collectively, the "**Prepetition Second Lien Notes**," the holders of such

Notes, the "**Prepetition Second Lien Holders**," and the obligations under such Notes or the

Second Lien Indenture (as defined below), the "**Prepetition Second Lien Obligations**") issued

under that certain Indenture, dated as of July 3, 2014 (the "**Second Lien Indenture**"), among the

Borrower as Issuer, the Debtors party thereto as guarantors and Wilmington Trust, National

Association as trustee (in such capacity, and including any successor thereto, the "**Prepetition

Second Lien Notes Agent**") and note collateral agent (in such capacity, the "**Prepetition

Second Lien Collateral Agent**" and together with the Prepetition Second Lien Notes Agent, the

"**Prepetition Second Lien Notes Agents**"), and that the Debtors were unconditionally liable,

without defense, counterclaim, offset or setoff of any kind with respect to obligations arising

under the Second Lien Indenture in an aggregate principal amount of not less than

$517,816,241.65[5] plus accrued but unpaid interest, fees, expense, including any reasonable

attorneys', accountants', appraisers' and financial advisors' fees and expenses that are

chargeable or reimbursable under the Second Lien Indenture, (e) certain Senior Third Lien

Secured 15.00% Pay-in-Kind Notes due 2021 (the "**Prepetition Third Lien Notes**," the

---

[4] As of January 30, 2015.

[5] As of January 30, 2015.

obligations under such Notes or the Third Lien Indenture (as defined below), the "**Prepetition Third Lien Obligations**," and together with the Senior Priority Obligations and the Prepetition Second Lien Obligations, collectively, the "**Prepetition Secured Obligations**," and the holders of the Prepetition Third Lien Notes, the "**Prepetition Third Lien Holders**") issued under that certain Indenture, dated as of July 3, 2014 (the "**Third Lien Indenture**" and, together with the Second Lien Indenture and the Senior Priority Documents, the "**Prepetition Secured Loan Documents**"), the Borrower as Issuer, the Debtors party thereto as guarantors and Wilmington Trust, National Association as trustee (in such capacity, and including any successor thereto, the "**Prepetition Third Lien Notes Agent**") and note collateral agent (in such capacity, the "**Prepetition Third Lien Collateral Agent**" and together with the Prepetition Third Lien Notes Agent, the "**Prepetition Third Lien Notes Agents**") and together with the Prepetition Third Lien Holders, the Prepetition Second Lien Notes Agents, the Prepetition Second Lien Holders, and the First Lien Secured Parties, collectively, the "**Prepetition Secured Parties**"), and that the Debtors were unconditionally liable, without defense, counterclaim, offset or setoff of any kind with respect to obligations arising under the Third Lien Indenture in an aggregate principal amount of not less than $66,086,564.50[6] plus accrued but unpaid interest, fees, expense, including any reasonable attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Third Lien Indenture, (f) certain unsecured 12.00% Senior Notes due 2015, (g) certain unsecured 10.50% Senior Notes due 2015, (h) certain unsecured 11.75% Senior Subordinated Notes due 2016 and (i) certain unsecured zero coupon junior subordinated notes.  Entry of this Order shall not preclude the Prepetition Secured Parties under both the Second Lien Indenture and the Third Lien Indenture, as applicable, from

---

[6]   As of January 30, 2015.

taking the position that PIK Interest payments due on January 1, 2015 were not made by the Debtors.

b.    The Debtors' obligations under the Senior Priority Obligations are secured by duly perfected first priority security interests (the "**Senior Priority Liens**") in all "Collateral" (as defined in the Prepetition Credit Agreement) (the "**Prepetition Collateral**").

c.    The Debtors' obligations due and owing on account of the Prepetition Second Lien Notes and Prepetition Third Lien Notes are secured by duly perfected second and third priority security interests, respectively in all of the Prepetition Collateral (respectively, the "**Prepetition Second Priority Notes Liens**" and the "**Prepetition Third Priority Notes Liens**" and, collectively, the "**Primed Liens**").

d.    The Senior Priority Liens and the Primed Liens are valid, binding, enforceable, non-avoidable and perfected liens and the Prepetition Secured Obligations constitute legal, valid, binding, enforceable and non-avoidable obligations of the Debtors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), the Senior Priority Liens and the Primed Liens were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and, subject to the Challenge Period referenced below, the Prepetition Secured Obligations are not subject to any challenge or defense, including (without limitation) avoidance, reduction, offset, attachment, disallowance, disgorgement, recharacterization, surcharge, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

e.    All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition First Lien Bank Agent and the other Prepetition Secured Parties, as applicable.

2.    Releases.  Immediately upon the entry of this Order, each of the Debtors on its own behalf (collectively, the "**Releasors**") shall unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the Prepetition Secured Parties and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "**Releasees**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Prepetition Secured Loan Documents, or the transactions contemplated under such documents, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under title 11 of the United States Code, (iii) any recharacterization, subordination, avoidance, disallowance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provision of applicable state law, federal law, or municipal law, and (iv) any right or basis to challenge or object to the amount, validity, or

enforceability of the Prepetition Secured Obligations or any payments or other transfers made on account of the Prepetition Secured Obligations, or the validity, enforceability, priority, or non-avoidability of the Senior Priority Liens or the Primed Liens securing the Prepetition Secured Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Releasees.

3.    <u>Effects of Stipulations on Third Parties</u>.  The stipulations, admissions, findings, and releases contained in this Order, including in Paragraphs E-1 and E-2 hereof, shall be binding upon the Debtors and any successor thereto, including in any Successor Case (as defined below), in all circumstances upon entry of this Order, and the Debtors shall not assign or transfer standing upon any other party to pursue any Claims and Defenses (defined below).  The stipulations, admissions, findings, and releases contained in this Order, including in Paragraphs E-1 and E-2 hereof, shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee or other estate representative appointed or elected for any of the Debtors (a "**Trustee**") in the Chapter 11 Cases, upon the conversion of any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), unless the Creditors' Committee or any other such party in interest (including any Trustee), in each case, with requisite standing, (y) first, has duly filed a contested matter, adversary proceeding or other challenge action or objection (1) challenging the stipulations, admissions, findings, or releases contained in this Order, including in Paragraphs E-1 and E-2 hereof, or (2) against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Secured Obligations, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Secured Obligations or the

Prepetition Credit Agreement Documents, as applicable, including any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Secured Obligations (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition First Lien Secured Parties) (collectively, the "**Claims and Defenses**") by no later than (i) in the case of any such contested matter, adversary proceeding, or other challenge action or objection filed by a party in interest with requisite standing other than the Creditors' Committee, seventy-five (75) days after the date of entry of the Interim Order, and (ii) in the case of any such contested matter, adversary proceeding, or other challenge action or objection filed by the Creditors' Committee, the date that is the later of (A) the objection deadline set for confirmation of the plan of reorganization in these Chapter 11 Cases and (B) 90 days after the appointment of the Creditors' Committee (the "**Confirmation Objection Deadline**") (the time period established by the later of the foregoing clauses (i) and (ii), the "**Challenge Period**") and (z) second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Claim or Defense in any such timely-filed contested matter, adversary proceeding, or other action (any such Claim or Defense timely brought for which such a final and non-appealable order is so obtained, a "**Successful Challenge**"); provided further that during the Challenge Period, the Creditors' Committee may petition the Bankruptcy Court for an extension of the Challenge Period upon a showing of cause for such extension (with the Challenge Period tolled pending entry of an order by the Court ruling on any motion for such an extension made before the expiration of such period), subject to any objection by the Debtors or any party in interest (all of which rights are preserved). The date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Claim or Defense is properly raised during the

Challenge Period or (ii) with respect only to those parties who properly file a Claim or Defense, such Claim or Defense is fully and finally adjudicated, shall be referred to as the "**Challenge Period Termination Date**." The Creditors' Committee shall (without prejudice to its ability to supplement or amend such claims up to the Confirmation Objection Deadline) provide the Debtors and the Prepetition Secured Parties with a list of the potential claims at issue on or before the date that is seven (7) days before the Confirmation Objection Deadline  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases (and after the dismissal of these Cases or any Successor Cases), (v) the Prepetition Secured Obligations shall constitute allowed secured claims within the meaning of section 506 of the Bankruptcy Code, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law, for all purposes in these Chapter 11 Cases and any Successor Cases; (w) the Prepetition Secured Obligations, the Senior Priority Liens, the Primed Liens or the Prepetition Secured Parties shall not be subject to any other or further challenge and any party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto in any Successor Case (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period); (x) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Order or otherwise (whether made prior to, on, or after the Commencement Date) shall be indefeasible and not be subject to

counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance; (y) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived, and barred; and (z) the Debtors' stipulations, admissions and releases contained in this Order, including in Paragraphs E-1 and E-2 hereof, shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including the Creditors' Committee or any Trustee. If any such Claim or Defense is timely filed prior to the Challenge Period Termination Date, the stipulations, admissions, and releases contained in this Order, including in Paragraphs E-1 and E-2 hereof and the provisions in clauses (v) through (z) in the immediately preceding sentence, shall nonetheless remain binding and preclusive on the Creditors' Committee and any other Person (as defined in the Credit Agreement), including any Trustee in any Successor Case, except as to any such findings, stipulations, admissions, and releases or the other provisions in clauses (v) through (z) of the immediately preceding sentence that were expressly challenged in such Claim or Defense and such Claim or Defense becomes a Successful Challenge. Nothing in this Order vests or confers on any person, including the Creditors' Committee or any Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates. For the avoidance of doubt, any Trustee appointed or elected prior to expiration of the Challenge Period, or during the pendency of any Claim or Defense timely asserted by the Creditors' Committee or any other party in interest, shall not, solely for purposes of such Claim or Defense, be bound by the acknowledgments, admissions, confirmations, stipulations and waivers set forth by this Order, but all such acknowledgements, admissions, confirmations, stipulations, and waivers set forth by this order (including in Paragraphs E-1 and E-2 hereof) shall be binding on the Debtors and all other parties. If these Chapter 11 Cases are converted to one or more cases under Chapter 7, the Trustee shall be

permitted to continue prosecution of any Claim or Defense that is actually pending on behalf of the Debtors' estates. Furthermore, if prior to expiration of the Challenge Period, one or more of these Chapter 11 Cases are converted to one or more cases under Chapter 7 and no Challenge or Claim has been filed, the Challenge Period shall be extended for an additional 30 days from the date of conversion solely for the Trustee appointed in such case or cases under Chapter 7 but for no other party and in no other case.

    4.    Each of the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of this Order, the "equities of the case" exception shall not apply.

    F.    <u>Findings Regarding the DIP Financing and Use of Cash Collateral.</u>

    1.    Upon entry of this Order and so long as the Restructuring Support Agreement dated as of February 2, 2015, by and among the parties thereto (the "**RSA**") has not terminated (so long as the DIP Lenders are not the Consenting Creditors whose breach caused the RSA to terminate), the Debtors shall have the ability to draw from the Escrow Funds (as defined in the DIP Loan Agreement), in one or more drawings, up to, but not exceeding, $45,000,000 of the DIP Facility less the Initial Draw (the "**Second Draw**"), with the balance available solely to fund an Acceptable Plan (as defined in the DIP Loan Agreement) and for post-consummation working capital. There exists a need for the Debtors to access the Second Draw and to use Cash Collateral, in each case, to fund their ordinary course operations, to pay costs and expenses associated with the DIP Facility, meet payroll and other necessary and ordinary course business expenditures, satisfy the Adequate Protection Provisions (as defined below) and administer and preserve the value of their estates. The ability of the Debtors to

finance their operations during the Chapter 11 Cases requires the availability of additional working capital, the absence of which would harm the Debtors, their estates and their creditors.

        2.        The DIP Obligations shall have the benefit of (a) a guaranty from the Guarantors and (b) the security interest and liens provided for in Article X of the DIP Loan Agreement and hereunder.

        3.        Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors are unable to obtain unsecured credit allowable only as an administrative expense pursuant to section 503(b)(1) of the Bankruptcy Code.

        4.        The Debtors also are unable to obtain credit secured by a lien allowable only under sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code except under the terms and conditions provided in this Order and the DIP Documents. The Debtors are unable to obtain credit for borrowed money without the Debtors granting to the DIP Agent (for the ratable benefit of the DIP Agent and the DIP Lenders) liens on various of the assets of the Debtors pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, subject to the terms of this Order and the DIP Loan Agreement.

        5.        The ability of the Debtors to finance their operations and the availability of sufficient working capital through the incurrence of indebtedness for borrowed money and other financial accommodations is vital to the Debtors' ability to preserve and maintain their going concern value.

6.    The relief granted herein is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their properties.

7.    It is in the best interest of Debtors' estates to be authorized to borrow under the DIP Facility contemplated by the DIP Loan Agreement and the other DIP Documents.

8.    Prepetition First Lien Lenders holding more than 90% of the aggregate principal balance of the Loans and L/C Exposure (each as defined in the Prepetition Credit Agreement) (which Prepetition First Lien Lenders constitute "Required Lenders," as defined in the Prepetition Credit Agreement) have expressly consented to the entry of this Order and the relief provided herein, ~~and pursuant to the terms of the Prepetition Credit Agreement Documents and the First Lien Indenture, the consent of such Prepetition First Lien Lenders is binding on all First Lien Secured Parties.~~

9.    The terms and conditions of the DIP Facility, including those which provide for the payment of interest to, and fees of, the DIP Agent (for the benefit of the DIP Agent and the DIP Lenders, as applicable) at the times, and in the manner provided under the DIP Documents, are fair, reasonable, and the best available under the circumstances.

10.    The DIP Documents and this Order were negotiated in good faith and at arms' length among the Debtors, on the one hand, and the DIP Agent, DIP Lenders, and certain of the Prepetition Secured Parties, on the other hand.  Credit to be extended under the DIP Facility will be so extended in good faith, in consequence of which the DIP Agent and the DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

11.    So long as the RSA has not been terminated (other than a termination on account of a breach by one or more First Lien Secured Parties that are party to the RSA), subject

to ordered paragraph 21 below, the First Lien Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code. The Prepetition First Lien Agents, solely in their capacities as such and for the ratable benefit of the First Lien Secured Parties are entitled, pursuant to sections 361, 363(c), 363(e) and 364(d) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral from any diminution in value of such interests in the Prepetition Collateral, including, as applicable, from the use of Cash Collateral, the use, sale or lease of the Prepetition Collateral, and the modification of the automatic stay granted in this Order and the DIP Documents pursuant to section 364(d) of the Bankruptcy Code. The Debtors have agreed, in their reasoned business judgment, to provide adequate protection to (i) the Prepetition First Lien Bank Agent, solely in its capacity as such and for the ratable benefit of the Prepetition First Lien Lenders, (ii) the Prepetition First Lien Notes Agent, solely in its capacity as such and for the ratable benefit of the Prepetition First Lien Holders, (iii) the Prepetition Second Lien Notes Agents, solely in their capacities as such and for the ratable benefit of the Prepetition Second Lien Holders and (iv) the Prepetition Third Lien Notes Agents, solely in their capacities as such and for the ratable benefit of the Prepetition Third Lien Holders, in each case on the terms and conditions set forth in this Order. Based on the Motion and on the record presented to this Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the DIP Facility contemplated hereby, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition Secured Parties.

12.    Good and sufficient cause has been shown for the entry of this Order. Among other things, entry of this Order will enable the Debtors to continue the operation of their business, to meet payroll and other operating expenses, and to avoid disputes with the First Lien Secured Parties with respect to adequate protection. Entry of this Order is in the best interests of the Debtors, their estates and their creditors. Approval of the DIP Facility is vital to the Debtors' estates, and is therefore in the best interests of all stakeholders in the Debtors' estates.

NOW THEREFORE, it is hereby ORDERED that:

1.    On a final basis, the Motion is granted as set forth herein.

2.    The Debtors are authorized to:

a.    enter into the DIP Facility;

b.    execute and deliver each of the DIP Documents to which any Debtor is a party;

c.    borrow under the DIP Facility on the terms and conditions set forth herein and in the DIP Documents;

d.    use proceeds for working capital purposes of the Debtors and to otherwise fund the operations of the Debtors during these Chapter 11 Cases and for other purposes as permitted herewith and under the DIP Documents;

e.    pay all fees and expenses required under or referred to in the DIP Facility as such become due, including, agent fees, and reasonable fees and expenses of attorneys, financial advisors, accountants and other professionals; and

f.    make the Adequate Protection Payments (as defined below).

3.    The Debtors hereby are authorized and directed to do and perform all acts and to make, execute, and deliver all instruments and documents which may be required or

necessary for the performance by the Debtors under the DIP Documents and the creation and perfection of the DIP Liens (as defined below) granted by the Debtors, as described in and provided for by the DIP Documents.

4.    Each officer of the Debtors hereby is authorized to execute and deliver each of the DIP Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

5.    The Debtors are further hereby authorized and directed to (i) make any payment due under the DIP Documents, including any reimbursement of indemnified obligations provided for in the DIP Documents and to pay for any reasonable costs and expenses as may be due from time to time herewith, including, without limitation, the reasonable fees and expenses of the professionals retained as provided for in the DIP Documents, whether incurred pre- or post-petition, without the need to file retention motions or fee applications; and (ii) perform of all other acts required under or in connection with the DIP Documents, including the granting and perfection of the DIP Liens as provided herein and therein.

6.    The DIP Loan Agreement and each of the DIP Documents respectively shall constitute and evidence the valid and binding obligations of each of the Debtors, which DIP Obligations shall be enforceable against each of the Debtors in accordance with their terms and the terms of this Order.  No obligation, payment, transfer or grant of a security or other interest under the DIP Documents or this Order shall be stayed, restrained, voidable or recovereable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment or counterclaim.

7.    DIP Liens.

a.    As security for the DIP Obligations, upon entry of this Order, effective and perfected *nunc pro tunc* to the date of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined below), the Debtors hereby are authorized and directed to grant to the DIP Agent (for the ratable benefit of the DIP Agent and the DIP Lenders) and the DIP Agent is hereby granted (for the ratable benefit of the DIP Agent and the DIP Lenders) as collateral pursuant to the DIP Documents to secure all DIP Obligations:  (a) pursuant to section 364(c)(2) of the Bankruptcy Code, senior, valid, binding, enforceable and perfected security interests in, and liens upon, all of the assets (other than Excluded Collateral (as defined below)) of the Debtors not otherwise subject to any prepetition lien at the time of the commencement of the Chapter 11 Cases, including the Senior Priority Liens; provided that for the avoidance of doubt any liens granted to secure the DIP Obligations shall be subject to the Adequate Protection Liens in all respects, (b) pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, enforceable and perfected junior security interests in, and liens upon, all of the assets of the Debtors subject to a valid and enforceable lien as of the Commencement Date, including, for the avoidance of doubt, the Senior Priority Liens; provided that for the avoidance of doubt any liens granted to secure the DIP Obligations with respect to Cash Collateral (as defined herein) shall be junior to the Senior Priority Liens and the Adequate Protection Liens in all respects, and (c) pursuant to section 364(d) of the Bankruptcy Code, senior, valid, binding, enforceable and perfected security interests in, and senior priming liens upon, all of the assets of the Debtors subject to a lien

securing the Prepetition Second Lien Obligations or the Prepetition Third Lien Obligations (all such liens and security interests granted to the DIP Agent, for its benefits and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "**DIP Liens**"); provided that, notwithstanding anything herein to the contrary, the DIP Liens shall be junior in all respects to the Senior Priority Liens and the Adequate Protection Liens. The DIP Liens will extend to the Escrow Funds on an exclusive basis.

> b.    The property described in this Paragraph 7, and the collateral in which liens are granted pursuant to this Paragraph 7, including, all of the property and assets of the Debtors and their estates, real and personal, tangible and intangible, including all causes of action (except as provided below), whether owned as of the Commencement Date or thereafter acquired or arising, and regardless of where located or by whomsoever held (and as further set forth in Article X of the DIP Loan Agreement), and whether now owned or in which the Debtors have any interest or hereafter acquired or in which the Debtors obtain an interest are referred to in this Order as the "**DIP Collateral**"; provided that the DIP Collateral under this Order shall not include, and the DIP Agent shall not be granted a lien on, the following (the "**Excluded Collateral**"): (a) property consisting of voting equity interests of any Foreign Subsidiary (as defined in the DIP Loan Agreement) in excess of 65% of the equity interests representing the total combined voting power of all classes of equity interests of such Foreign Subsidiary entitled to vote, (b) any general intangibles or other rights arising under contracts or other documents to the extent that a grant of a security interest would require any government approval (unless such approval has been received or is excused by operation of the Bankruptcy Code) or violate any law or (c) actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code (collectively,

"**Avoidance Actions**"); provided, however, that the DIP Collateral shall include the proceeds of such Avoidance Actions other than proceeds with respect to Avoidance Actions against the DIP Lenders (the "**Excluded DIP Avoidance Action Proceeds**"); provided, further that (x) the First Priority Adequate Protection Liens and Senior Adequate Protection Claims shall encumber, and shall have recourse to, the proceeds of such Avoidance Actions (other than the proceeds with respect to Avoidance Actions against the Senior Priority Holders on a first priority basis, (y) the Second and Third Priority Adequate Protection Liens and Claims shall encumber, and shall have recourse to, the proceeds of such Avoidance Actions (other than the proceeds with respect to Avoidance Actions against the Prepetition Second Lien Holders and the Prepetition Third Lien Holders) on a first priority basis but subject to the DIP Liens, Superpriority Claims, any First Priority Adequate Protection Liens and Senior Adequate Protection Claims on such proceeds, and (z) notwithstanding anything in this Order to the contrary, the Adequate Protection Liens shall encumber, and the Adequate Protection Claims shall have recourse to, as applicable, proceeds of any Avoidance Action only to the extent of any diminution in value of the applicable interests in the Prepetition Collateral from and after the Commencement Date, resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral) or from the imposition or enforcement of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.

   c. The DIP Liens are created and granted pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Liens on the Prepetition Collateral (and the DIP Collateral) shall be junior in all respects to the Senior Priority Liens and other unavoidable liens in existence immediately prior to the Commencement Date, or to any other valid and unavoidable liens in existence

immediately prior to the Commencement Date that are perfected subsequent to the Commencement Date as permitted by section 546(b) of the Bankruptcy Code, to the extent such other unavoidable liens are senior to the Senior Priority Liens.

        d.    Notwithstanding anything herein to the contrary, the DIP Liens shall be subordinate to the Carve-Out and the First Priority Adequate Protection Liens granted to the First Lien Secured Parties. The DIP Liens will extend to the Escrow Funds on an exclusive basis.

        e.    The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) unless otherwise provided for in the DIP Documents, any liens arising after the Commencement Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors.

        8.    <u>Perfection of DIP Liens</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted, as necessary, to permit (i) the Debtors to grant the DIP Liens to the DIP Agent (for the benefit of the DIP Agent and the DIP Lenders), (ii) the Debtors to perform their obligations under the DIP Obligations and incur the DIP Obligations and (iii) any action of the DIP Agent or DIP Lenders to file and record financing statements, mortgages or other instruments to provide further notice of and evidence the grant and perfection of the DIP Liens granted to the DIP Agent and DIP Lenders, as the DIP Agent shall determine. The Debtors shall execute and deliver to the DIP Agent and the DIP Lenders all such financing statements, notices and other documents as the DIP Agent or any DIP Lender may reasonably request in connection therewith. The DIP Agent, in its discretion, may file a copy of this Order

as a mortgage, financing statement or similar perfection document with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property (but is not required to perfect any lien).

         9.      Application of Payments.  All amounts applied to the payment of the DIP Obligations shall be applied thereto in the manner set forth in the DIP Documents and shall be subject to the priorities set forth in this Order, including with respect to the Carve-Out, the Senior Priority Obligations and the Adequate Protection Obligations.

         10.     Superpriority Claims.

         a.      Pursuant to section 364(c)(1) of the Bankruptcy Code, upon entry of this Order and effective *nunc pro tunc* to the date of the Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims against the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and their estates and all proceeds thereof, including proceeds of Avoidance Actions (other than Excluded DIP Avoidance Action Proceeds), to the extent required under the DIP Documents; provided that notwithstanding anything herein to the contrary, the Superpriority Claims shall be

junior in all respects to the Adequate Protection Claims, the Senior Priority Obligations, and the Carve-Out, each to the extent specifically provided for herein. Any payments, distributions or other proceeds received on account of such Superpriority Claims shall be promptly delivered to the applicable DIP Agent to be applied or further distributed by the applicable DIP Agent on account of the applicable DIP Obligations in such order as is specified in this Order and the applicable DIP Documents. The Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

        b.     The DIP Obligations, the DIP Liens, the First Priority Adequate Protection Liens, the Adequate Protection Claims, the Senior Priority Liens, the Senior Priority Obligations, the Primed Liens, the Prepetition Second Lien Notes Obligations, and the Prepetition Third Lien Notes Obligations shall be subject to a carve-out (the "**Carve-Out**") which shall equal the sum total of: (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) fees and expenses of up to $25,000 incurred by a trustee that would otherwise be entitled to priority under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors or the Creditors' Committee pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "**Professional Persons**") at any time before or on the first business day following the Termination Date, whether allowed by the Bankruptcy Court prior to or after the Termination Date (the "**Pre-Termination Date Fees**"); and (iv) after the first business day following the Termination Date, to the extent allowed at any time, whether by interim order, procedural order

or otherwise, the payment of (x) all Professional Fees of Professional Persons retained by the Debtors and (y) the payment of Professional Fees of Professional Persons incurred by the Creditors' Committee in an aggregate amount for clauses (x) and (y) not to exceed $2,000,000 incurred on and after the Termination Date (the amount set forth in this clause (iv) being the "**Post-Carve Out Termination Date Cap**"); <u>provided</u> that nothing in this Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation described above in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed Under Section 330 of the Bankruptcy Code and any applicable order of the Court; <u>provided</u> that in no instance shall any fees or expenses incurred by the Creditors' Committee or any other party to (xx) investigate any Claims or Defenses against any of the Prepetition Secured Parties in excess of the Investigation Budget (as defined herein) or (yy) initiate or prosecute any Claims or Defenses against any of the Prepetition Secured Parties be subject to, or benefit from, the Carve-Out.

11.     <u>Use of Cash Collateral and DIP Facility Proceeds.</u>

a.     Provided that the Termination Date (as defined herein) has not occurred, the Debtors hereby are authorized pursuant to this Order to use the cash proceeds of the Prepetition Collateral that constitute "cash collateral" within the meaning of section 363 of the Bankruptcy Code (the "**Cash Collateral**") and other property in which the Prepetition First Lien Agents, solely in their respective capacities as such and for the ratable benefit of the First Lien Secured Parties, have an interest pursuant to sections 363(b) and 363(c) of the Bankruptcy Code in accordance with the terms and conditions of the DIP Loan Agreement and this Order; <u>provided</u> that the Debtors may use such Cash Collateral during the Notice Period (as defined

herein) related to such Termination Date, and, <u>provided further</u>, that such Cash Collateral may be used only as authorized by this Order.

        b.     The Debtors' borrowings from the DIP Lenders under the DIP Facility and this Order will be used in a manner consistent with the terms and conditions of the applicable DIP Documents, solely for (a) working capital and other general corporate purposes, including to make Adequate Protection Payments (as defined below), (b) payment of costs of administration of these Chapter 11 Cases, (c) payment of such prepetition expenses as have been or hereafter are permitted under the DIP Loan Agreement and are approved by this Court; and (d) with respect to the Final Draw (as defined in the DIP Documents) only, providing liquidity to the Debtors to fund payments required under an Acceptable Plan and for working capital needs after the consummation thereof.

        c.     The Debtors hereby are authorized and directed to use proceeds of the DIP Facility and Cash Collateral to satisfy their working capital and operational needs subject to the terms of this Order and the DIP Documents.

        12.    <u>Budget</u>.

        a.     Attached as **Exhibit 1** hereto and incorporated by reference herein is the 13-week budget setting forth the Debtors' projected receipts and disbursements for the 13-week period after the Commencement Date (as amended from time to time or as provided herein and in the DIP Documents, the "**Budget**"). The Debtors shall operate generally in accordance with the Budget in the ordinary course of the Debtors' business and generally consistent with the Debtors' business plan; <u>provided</u> that the Budget shall not act as a limitation or cap on the Debtors' expenditures. Notwithstanding anything herein to the contrary, the Debtors shall not be authorized to use Cash Collateral or borrowings under the DIP Facility to pay fees or expenses,

(x) in excess of $150,000 (the "**Investigation Budget**") for the Creditors' Committee to investigate Claims and Defenses against the Prepetition Secured Parties before the termination of the Challenge Period, or (y) to initiate or prosecute proceedings or actions on account of any Claims or Defenses against the Prepetition Secured Parties, provided that during the Challenge Period, the Creditors' Committee may petition the Bankruptcy Court for an increase in the Investigation Budget upon a showing of cause for such increase. For the avoidance of doubt, nothing herein shall limit the ability of the Debtors or any party in interest to respond or otherwise object to any such petition.

b. Commencing on the first Wednesday after the date on which this Court enters this Order (or the next business day if such day is not a business day), and continuing once every four weeks thereafter, the Debtors shall be authorized, but not directed, to deliver an updated "rolling" budget for the following 13-week period to the Consenting First Lien Creditors, the DIP Agent and the Creditors' Committee; provided that if the Debtors do deliver a Budget, it shall be delivered simultaneously to the Consenting First Lien Creditors, the Prepetition First Lien Bank Agent, the DIP Agent, counsel for the Creditors' Committee, and, subject to the execution of a confidentiality agreement, the Prepetition First Lien Notes Agent.

13. Adequate Protection Payments. In consideration, and as a requirement, for obtaining the consent of the First Lien Secured Parties to the entry of this Order and for the use of the Prepetition Collateral (including Cash Collateral), but subject in all respects to Paragraph E-3 above, the Prepetition First Lien Agents, for the benefit of the First Lien Secured Parties, shall receive the following adequate protection:

a. As adequate protection in accordance with sections 361 and 363 of the Bankruptcy Code, and without limiting any parties' rights under section 506 of the Bankruptcy

Code, the Debtors hereby are authorized and directed, notwithstanding anything to the contrary set forth elsewhere in this Order, to pay to the Prepetition First Lien Bank Agent (for application in accordance with the Prepetition Credit Agreement), solely in its capacity as such and for the ratable benefit of the Prepetition First Lien Lenders, in accordance with the Prepetition Credit Agreement, payment of regularly scheduled interest on the principal amount of the Prepetition Term Loan outstanding at the applicable non-default rate per the terms of the Prepetition Credit Agreement (the "**Credit Agreement Adequate Protection Payments**").

      b.    As adequate protection in accordance with sections 361 and 363 of the Bankruptcy Code, and without limiting any parties' rights under section 506 of the Bankruptcy Code, the Debtors hereby are authorized and directed, notwithstanding anything to the contrary set forth elsewhere in this Order, to pay to the Prepetition First Lien Notes Agent (for application in accordance with the First Lien Indenture) payment of regularly scheduled interest on the principal amount of the Prepetition First Lien Notes Obligations outstanding at the applicable non-default rate per the terms of the First Lien Indenture (the "**Prepetition First Lien Notes Adequate Protection Payments**"), and, upon entry of this Order, the Debtors shall be authorized and directed to pay that certain interest payment previously due on January 1, 2015 arising under the First Lien Indenture and not paid.

      c.    As additional adequate protection in accordance with sections 361 and 363 of the Bankruptcy Code, but solely to the extent provided for the Senior Priority Documents and without limiting any parties' rights under section 506 of the Bankruptcy Code, the Debtors are authorized and directed to pay on an ongoing basis any reasonable and documented fees, costs, and expenses reasonably incurred by or payable to the Consenting First Lien Creditors and the Prepetition First Lien Agents, or to the applicable professional, as appropriate, in either case in

accordance with the Prepetition Credit Agreement and First Lien Indenture, the Consenting First Lien Creditors' and the Prepetition First Lien Agents' reasonable and documented professional fees and expenses (collectively, the "**Professional Fees**," and payment of such Professional Fees, together with the Prepetition First Lien Notes Adequate Protection Payments, the Credit Agreement Adequate Protection Payments, collectively, the "**Adequate Protection Payments**") both pre- and post-petition including, without limitation, the reasonable fees and expenses of Kirkland & Ellis LLP, Womble Carlyle Sandridge & Rice, LLP as counsel to the Consenting First Lien Creditors, Moelis & Company LLC, as financial advisor to the Consenting First Lien Creditors, Latham & Watkins LLP and Richards, Layton & Finger LLP, as counsel to the Prepetition First Lien Bank Agent, and Kilpatrick Townsend & Stockton LLP and Reed Smith LLP as counsel to the Prepetition First Lien Notes Agent on a regular monthly basis during these Chapter 11 Cases within ten (10) days of receipt.  Professionals for the Consenting First Lien Creditors and the Prepetition First Lien Agents (collectively, the "**Lender Professionals**") shall not be required to comply with the United States Trustee fee guidelines or submit invoices to this Court.  Copies of summary invoices (which may be redacted to preserve confidentiality, attorney-client privilege, and all other similar rules and privileges) submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the United States Trustee, counsel for the Creditors' Committee, and such other parties as this Court may direct.

14.    <u>Adequate Protection Liens & Claims and Other Provisions</u>.    In consideration, and as a requirement, for obtaining the consent of the Prepetition Secured Parties to the entry of this Order and for the use of the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Parties, as applicable, shall receive the following adequate protection:

a.    Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, effective *nunc pro tunc* to the date of the Interim Order, the Debtors are authorized and directed to grant to the Prepetition First Lien Agents, in their capacities as such and for the ratable benefit of the First Lien Secured Parties, additional adequate protection in the form of replacement liens on the DIP Collateral (the "**First Priority Adequate Protection Liens**") to secure any diminution in value of their respective interests in the Prepetition Collateral from and after the Commencement Date, whether or not resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("**Diminution in Prepetition Collateral Value**").

b.    Pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, effective *nunc pro tunc* to the date of the Interim Order, holders of Senior Priority Obligations shall have allowed superpriority administrative claims against each of the Debtors' estates with priority over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other provisions of the Bankruptcy Code or otherwise, and payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (the "**Senior Adequate Protection Claims**").  For the avoidance of doubt, the Senior Adequate Protection Claims shall be senior in all respects to the DIP Obligations but shall be junior to the Carve-Out.

The Adequate Protection Claims against each Debtor shall be allowed and enforceable against each Debtor and its estate on a joint and several basis.

c.    The Adequate Protection Provisions (A) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (C) shall be valid, binding, perfected and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Cases or any Successor Cases, and/or upon the dismissal of any of the Chapter 11 Cases, and (D) notwithstanding anything to the contrary in any "first day" orders of this Court in any of the Chapter 11 Cases, shall be senior to any administrative claims arising under any such "first day" orders.

d.    The Debtors shall deliver to the First Lien Secured Parties and counsel for the Creditors' Committee all information, reports, documents and other material that the Debtors provide to the DIP Agent or DIP Lenders pursuant to the DIP Documents.

e.    Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, upon entry of this Order and effective *nunc pro tunc* to the date of the Interim Order, the Prepetition Second Lien Notes Agents, for the ratable benefit of the Prepetition Second Lien Holders, are hereby granted additional adequate protection in the form of junior replacement liens on the DIP Collateral to secure any diminution in value of their interest in the Prepetition Collateral (the "**Second Priority Adequate Protection Liens**"). Pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, the Prepetition Second Lien Notes Agents, for the ratable benefit

of the Prepetition Second Lien Holders shall have allowed superpriority administrative claims against each of the Debtors' estates with priority over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other provisions of the Bankruptcy Code or otherwise (the "**Second Priority Adequate Protection Claims**").  For the avoidance of doubt, the Second Priority Adequate Protection Liens and Second Priority Adequate Protection Claims shall be senior in all respects to the Third Priority Adequate Protection Liens, the Prepetition Third Priority Notes Liens and the Third Priority Adequate Protection Claims but shall be junior to the Carve-Out, the First Priority Adequate Protection Liens, the Senior Adequate Protection Claims, the Senior Priority Liens, the Senior Priority Obligations, the DIP Obligations and the DIP Liens.

        f.     Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, upon entry of this Order and effective *nunc pro tunc* to the date of the Interim Order, the Prepetition Third Lien Notes Agents, for the ratable benefit of the Prepetition Third Lien Holders, are hereby granted additional adequate protection in the form of junior replacement liens on the DIP Collateral to secure any diminution in value of their interest in the Prepetition Collateral (the "**Third Priority Adequate Protection Liens**;" and together with the Senior Adequate Protection Liens and the Second Priority Adequate Protection Liens, the "**Adequate Protection Liens**").  Pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, the Prepetition Third Lien Notes Agents, for the ratable benefit of the Prepetition Third Lien Holders shall have allowed superpriority administrative claims against each of the Debtors' estates with priority over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any

other provisions of the Bankruptcy Code or otherwise (the "**Third Priority Adequate Protection Claims**;" together with the Senior Adequate Protection Claims and the Second Priority Adequate Protection Claims, the "**Adequate Protection Claims**"). For the avoidance of doubt, the Third Priority Adequate Protection Liens shall be junior to the Carve-Out, the First Priority Adequate Protection Liens, the Senior Adequate Protection Claims, the Senior Priority Liens, the Senior Priority Obligations, the DIP Obligations, the DIP Liens, the Second Priority Adequate Protection Liens, the Second Priority Adequate Protection Claims and the Prepetition Second Priority Notes Liens. The Adequate Protection Claims, the Adequate Protection Liens and the Adequate Protection Payments are referred to herein as the "**Adequate Protection Provisions**"). The Adequate Protection Claims against each Debtor shall be allowed and enforceable against each Debtor and its respective estate on a joint and several basis.

g.    This Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any DIP Collateral (and the Prepetition First Lien Agents shall be deemed, without any further action, to have control over all the Debtors' deposit accounts, securities accounts and commodities accounts within the meaning of such Uniform Commercial Code and other law, other than the Escrow Account (as defined in the DIP Loan Agreement) over which the DIP Agent shall be deemed to have control) or (c) taking any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Prepetition First Lien Agents may, each in its sole discretion,

enter into and file, as applicable, financing statements, security agreements, notices of Liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Commencement Date.  The applicable Debtors shall execute and deliver to the Prepetition First Lien Agents, as applicable, all such financing statements, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the First Priority Adequate Protection Liens, as applicable, granted pursuant hereto.  Without limiting the foregoing, the Prepetition First Lien Agents may, each in its sole discretion, file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized and hereby is directed to file or record such copy of this Order.  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or other monetary obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the Prepetition Secured Parties in accordance with this Order.

15.    <u>Consent to Adequate Protection; Right to Seek Additional Adequate</u>

<u>Protection; No Admission</u>.    The Prepetition First Lien Agents, on behalf of the First Lien

Secured Parties, consent to the Adequate Protection Provisions and the use of Cash Collateral

provided for herein; <u>provided</u>, <u>however</u>, that such consent of the Prepetition First Lien Agents to

the use of Cash Collateral is expressly conditioned upon the entry of this Order, and such consent

shall not be deemed to extend to any other Cash Collateral usage or other replacement financing

or debtor-in-possession financing other than the DIP Facility provided under the DIP

Documents; and <u>provided</u>, <u>further</u>, that such consent shall be of no force and effect in the event

this Order is not entered or is entered and subsequently reversed, modified, stayed, or amended

(unless such reversal, modification, stay, or amendment is acceptable to the Prepetition First Lien

Agents) or the DIP Documents and DIP Facility as set forth herein are not approved. This Order:

(i) is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights

of the Prepetition Secured Parties to request additional or alternative forms of adequate

protection; and (ii) does not constitute an admission, acknowledgement, or stipulation and shall

not be deemed an admission, acknowledgement, or stipulation by the Prepetition Secured Parties

that the Prepetition Secured Parties, are in fact adequately protected by the terms and conditions

of this Order or otherwise.

16.    <u>Cash Management</u>.    Unless otherwise agreed by the Consenting First Lien

Lenders and the DIP Agent, the Debtors shall maintain their cash management arrangements in

all material respects in a manner consistent with that described in the applicable "first-day" order

and the related motion seeking authorization to continue the Debtors' cash management

arrangements.

17.     <u>Credit Bidding</u>.   The Prepetition First Lien Agents (subject to the Intercreditor Agreement (as defined in the Prepetition Credit Agreement), subject to obtaining any required consents of the Prepetition First Lien Holders under the Prepetition Credit Agreement Documents and the First Lien Indenture and subject to the terms and conditions in the Prepetition Credit Agreement Documents and the First Lien Indenture)  shall have the right to credit bid up to the full amount of any remaining Senior Priority Obligations in the sale of any of the Debtors' assets or pursuant to the exercise of remedies hereunder, including  pursuant to (i) section 363 of the Bankruptcy Code (notwithstanding any "for cause" limitation set forth therein), (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

18.     <u>Section 552(b)</u>. Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, or profits with respect to any of the Prepetition Collateral or assets subject to Adequate Protection Liens.

19.     <u>Limitation on Charging Expenses Against Collateral</u>.   As a further condition of the DIP Facility and any obligation of the DIP Agent or the DIP Lenders to make credit extensions pursuant to the DIP Documents, and as a further condition for the consensual use of the Cash Collateral as set forth in this Order, (a) no costs or expenses of administration of these Chapter 11 Cases, any Successor Cases or any other future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the

Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity without the prior written consent of the DIP Agent, the Prepetition First Lien Bank Agent or the Prepetition First Lien Notes Agent, as applicable, (b) no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the First Lien Secured Parties, and (c) any exercise of any rights under section 506(c) of the Bankruptcy Code or otherwise to charge any costs or expense of administration of the Chapter 11 Cases or any Successor Cases from or against the DIP Collateral, the Prepetition Collateral or the Cash Collateral shall be prohibited and shall not impair and shall be subject to, and junior to, the DIP Liens on and the DIP Agent's and DIP Lenders' other interests in the DIP Collateral and the Senior Priority Liens and the Prepetition Secured Parties' other interests in the Prepetition Collateral and the Cash Collateral and the Adequate Protection Liens accorded the Prepetition Secured Parties.

20.    Termination.   Upon delivery (including delivery by electronic mail or facsimile) of notice of the occurrence of the Termination Date (as defined below) to the Debtors by the DIP Agent or any Prepetition First Lien Agent, as applicable, in accordance with this Order: (a) all DIP Obligations shall become immediately due and payable and (b) the Debtors' authority to use the proceeds of the DIP Facility and Cash Collateral as set forth in this Order shall cease, both on the earliest of (such date the "**Termination Date**"):

a.    the Debtors fail to comply in any material respect with the terms and provisions of this Order after notice and an opportunity to cure, unless such failure to comply is waived by the affected party;

b.    with respect to the use of Cash Collateral and the Debtors' continued ability to borrow under the DIP Facility, termination of the RSA so long as the Consenting

40

Creditors seeking to terminate the Debtors' use of Cash Collateral under this clause (b) are not also the Consenting Creditors whose breach of the RSA caused it to be terminated, whereupon the DIP Agent may also set off against the Escrow Account;

        c.    an order shall be entered reversing, amending, supplementing, staying, vacating, or otherwise modifying this Order without the consent of the DIP Agent, the Requisite Consenting First Lien Creditors, and the Debtors;

        d.    Total Liquidity (as defined below) shall be less than $25,000,000 as of the close of business on the Monday of each week beginning on February 16, 2015. The Borrower shall furnish to the DIP Agent a certificate from a responsible offer on the Wednesday of each week certifying the amount of Total Liquidity as of the close of business on the preceding Monday. For purposes hereof, "**Total Liquidity**" shall mean, at any time of determination, all cash and cash equivalents of the Debtors and their domestic subsidiaries, including all amounts then held in the Escrow Account that are, on the date of determination, available to be drawn upon by the Borrower under the terms of the DIP Documents, but excluding any Restricted Cash. "**Restricted Cash**" shall mean, as of any date of determination, any cash proceeds from the sales of (i) the equity of US Investigations Services, Professional Services Division, Inc. and Labat-Anderson Incorporated and (ii) substantially all of the assets of Kroll Factual Data, Inc. that are then being held in a segregated account by either of the Prepetition First Lien Agents for specified purposes.

        e.    the occurrence of the Maturity Date (as defined in the DIP Loan Agreement), unless extended in accordance with the DIP Documents;

f.    an Event of Default (as defined in the DIP Loan Agreement) shall have occurred and be continuing, unless waived in accordance with the DIP Documents (but, for the avoidance of doubt, subject to ordered paragraph 27 hereof).

21.    Remedies.

a.    On notice to the Debtors (with a copy to the counsel to the Prepetition First Lien Agents, the Creditors' Committee, and the U.S. Trustee), upon the occurrence of the Termination Date, the DIP Agent and DIP Lenders may, in their sole discretion, terminate the use of proceeds from the DIP Facility and recover any undrawn proceeds from the Escrow Account. Notwithstanding anything herein or in the DIP Loan Agreement to the contrary, upon the occurrence of the Termination Date, but subject to five (5) days' prior written notice to the Debtors (with a copy to the counsel to the Prepetition First Lien Agents, the Creditors' Committee, and the U.S. Trustee), the DIP Agent and DIP Lenders may exercise any other remedies against the Collateral or otherwise seek to compel payment on account of the DIP Obligations upon the earliest of (x) the conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, the dismissal of any of the Cases or the appointment of a trustee or examiner with expanded powers in any of the Cases, (y) confirmation of a chapter 11 plan confirmed for these chapter 11 cases and (z) 150 days after the occurrence of such Termination Event, provided that this provision shall not be applicable upon the occurrence of a Termination Date due to the termination of the RSA other than with respect to the Debtors' continued ability to borrow under the DIP Facility and set-off against the Escrow Funds.

b.    Upon five (5) days' prior written notice to the Debtors (with a copy to the counsel to the Prepetition First Lien Agents, the Creditors' Committee, and the U.S. Trustee) (the "**Notice Period**"), upon the occurrence of a Termination Date, Prepetition First Lien Agents

may, in their sole discretion, exercise remedies in accordance with the Senior Priority Documents and this Order (including by collecting accounts receivable and applying the proceeds thereof to the Senior Priority Obligations, and by occupying the Debtors' premises to sell or otherwise dispose of the DIP Collateral or Prepetition Collateral), and the automatic stay shall be lifted accordingly to permit such exercise of remedies, provided that this provision shall not be applicable upon the occurrence of a Termination Date due to the termination of the RSA other than with respect to the termination of the Debtors' use of Cash Collateral.

        c.    In any hearing regarding the exercise of rights or remedies, the only issue that may be raised by the Debtors shall be whether, in fact, the Termination Date has occurred (subject to any applicable cure period).

        22.    Limitation of Liability.  In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order, the DIP Agent, the DIP Lenders and the First Lien Secured Parties solely by reasons of such loans or the authorization to use Cash Collateral shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-

petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

      23.    <u>Protection and Preservation of Rights Under the Order</u>.

      a.    Unless and until the DIP Obligations and Adequate Protection Provisions are unconditionally and indefeasibly repaid in full in cash, the terms and provisions of this Order and the claims, liens, security interests and other protections granted to the DIP Agent, the DIP Lenders and the Prepetition Secured Parties pursuant to the DIP Documents and this Order, including any actions taken pursuant thereto and hereto, shall survive the entry of any order confirming a plan of reorganization or in any Successor Case.

      b.    In no event shall the DIP Agent, the DIP Lenders and the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, Prepetition Collateral, or Cash Collateral, as applicable.

      c.    The Debtors agree not to seek, and it shall constitute an Event of Default under the DIP Loan Agreement and a material breach of the terms and conditions of this Order, if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order or the use of Cash Collateral without the prior written consent of the DIP Agent, DIP Lenders, the Prepetition First Lien Agents and the Requisite Consenting First Lien Creditors, (ii) an order converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or (iii) an order dismissing any of these Chapter 11 Cases. If an order dismissing any of these Chapter 11 Cases under section 1122 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Liens and Adequate Protection Liens, pursuant to the DIP Documents and this Order, shall continue in full force and effect and

maintain their priorities as provided in this Order until the DIP Obligations are indefeasibly paid in full in cash, and (ii) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, priorities and security interests as provided in this Order.

d.      Except as otherwise contemplated by the RSA, the time and manner of payment of the DIP Obligations shall not be altered or impaired by any chapter 11 plan of reorganization, that may hereafter be confirmed or by any further order of the Bankruptcy Court which may hereafter be entered without the consent of the DIP Agent and the DIP Lenders.

e.      Nothing included in this Order shall prejudice, impair, or otherwise affect the rights of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors consistent with and subject to the provisions of this Order.

f.      If any provision of this Order is hereafter modified, amended, vacated, reversed or stayed in any respect by subsequent order of this or any other court for any reason, such modification, amendment, vacation, reversal or stay shall not affect the validity of any obligation, lien, or liability incurred pursuant to this Order to the extent consistent with section 364(e) of the Bankruptcy Code.

24.      <u>Binding Effect; Successors and Assigns</u>.  The (a) DIP Liens granted to the DIP Agent under the DIP Facility under this Order, and the priority thereof, and any payments made pursuant to the DIP Facility and this Order, and (b) the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties under this Order, and the priority thereof, and any Adequate Protection Payments made pursuant to this Order shall be binding (subject to the terms of this Order) on the Debtors, any successor trustee or examiner,

and all creditors of the Debtors in these Chapter 11 Cases and any Successor Cases, as provided in section 364(e) of the Bankruptcy Code.

25.     No Standing Granted.   Nothing in this Order vests or confers on any person (as defined in the Bankruptcy Code), including the Creditors' Committee or any other statutory committee appointed in these Chapter 11 Cases, standing or authority to pursue any Claim or Defense or other cause of action belonging to the Debtors or their estates with respect to the Prepetition Secured Loan Documents or the Prepetition Secured Obligations.

26.     No Waiver.   The Prepetition First Lien Agents', any Prepetition First Lien Lenders', any Prepetition First Lien Holders', the Prepetition Second Lien Notes Agents', any Prepetition Second Lien Holder's, the Prepetition Third Lien Notes Agents', any Prepetition Third Lien Holder's, the DIP Agent's or any DIP Lenders' failure to exercise its rights and remedies under the DIP Facility or this Order, as applicable, shall not constitute a waiver of any of such Agent's or Holder's rights hereunder or otherwise.

27.     Amendment to DIP Loan Agreement.   The Debtors, the DIP Agent and the requisite Lenders under the DIP Loan Agreement have agreed to amend the DIP Loan Agreement to include the following proviso at the end of Section 7.01(m) of the DIP Agreement: "; provided that for all purposes of this Agreement, this Event of Default shall not allow the DIP Agent to exercise remedies other than as specified in ordered paragraph 21.a. of the Final DIP Order." The text of Section 7.01(m) of the DIP Loan Agreement is hereby amended as provided in this ordered paragraph 27.

28.     Subsequent Modifications to DIP Documents.   Subject to the provisions of the DIP Loan Agreement, the Debtors, the DIP Agent and the requisite Lenders thereunder may amend or modify, and the DIP Agent and the DIP Lenders may waive, any provision of the DIP

Documents, and any such amendment, modification or waiver shall not require the approval of the Bankruptcy Court; provided that such amendment or waiver, in the judgment of the Debtors and the DIP Agent, is either nonprejudicial to the rights of third parties or is not material, and that notice thereof shall be provided to the Prepetition First Lien Agents, the Prepetition Second Lien Notes Agents, the Prepetition Third Lien Notes Agents, counsel for the Creditors' Committee and the U.S. Trustee no less than 3 days prior to the effective date thereof (or such shorter period as to which such parties may agree); provided, further, that it is acknowledged and agreed that such amendment shall be without prejudice to the Prepetition First Lien Agents', Consenting First Lien Creditors' rights or any other parties' right under the RSA or this Order.

29.    Proofs of Claim.    The Prepetition First Lien Agents, the Prepetition Second Lien Notes Agents and the Prepetition Third Lien Notes Agents will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein. The Debtors' stipulations set forth in Paragraph E-1 hereof shall be deemed to constitute timely filed proofs of claim for the Prepetition First Lien Agents, the Prepetition Second Lien Notes Agents and the Prepetition Third Lien Notes Agents, as applicable, in respect of the Prepetition Secured Obligations. In addition, the Prepetition First Lien Agents, the Prepetition Second Lien Notes Agents and the Prepetition Third Lien Notes Agents will not be required to file any request for allowance and/or payment of any administrative expenses, and this Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations constituting administrative expenses. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of the Prepetition First Lien Agents, the Prepetition Second Lien Notes Agents and the Prepetition Third Lien Notes Agents, for the

benefit of themselves and the Prepetition First Lien Holders, the Prepetition Second Lien Holders and the Prepetition Third Lien Holders, respectively, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, in its discretion) in each of the Chapter 11 Cases or Successor Cases (i) a proof of claim and/or aggregate proofs of claim in respect of any Prepetition Secured Obligations, and (ii) a request or aggregate requests for allowance and/or payment of any portion of the Prepetition Secured Obligations constituting administrative expenses.

30.     State Laws; Government Agencies.  Nothing in this Order or the DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).  As to the United States, its agencies, departments or agents, nothing in this Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

31.     Order Governs.  In the event of any inconsistency between the terms and conditions of any DIP Document and of this Order, the provisions of this Order shall govern and control.

32.     Effectiveness.

a.     The requirements set forth in Bankruptcy Rule 6003(b) have been satisfied.

b.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be ~~immediately~~ effective and enforceable ~~upon entry of this Order.~~ as of March 19, 201

c.     The requirements of Bankruptcy Rule 6004(a) are waived.

     d.    The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

     33.    <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction with respect to all matters arising from or any way related to this Order.

Dated: March 16, 2015
       Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE