## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALTEGRITY, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10226 (LSS)<br><br>Jointly Administered<br><br>**Re Docket No. 385** |

**ORDER (A) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN, INCLUDING (I) APPROVING FORM AND MANNER OF SOLICITATION PROCEDURES, (II) APPROVING THE FORM AND NOTICE OF THE CONFIRMATION HEARING, (III) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES, (IV) APPROVING FORMS OF BALLOTS, (V) ESTABLISHING DEADLINE FOR RECEIPT OF BALLOTS, AND (VI) APPROVING PROCEDURES FOR VOTE TABULATIONS; (B) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors, pursuant to sections 1125 and 1126 of the

Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018 and 3020 and Local Rule 3017-1, for an

order (this "**Order**"): (a) establishing procedures for solicitation and tabulation of votes to accept

or reject the Plan, including (i) approving the form and manner of the solicitation procedures,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Altegrity, Inc. (9985); Albatross Holding Company, LLC (2688); Albatross Marketing and Trading, LLC (8643); Altegrity Acquisition Corp. (1480); Altegrity Holding Corp. (1481); Altegrity Risk International LLC (6350); Altegrity Security Consulting, Inc. (5452); CVM Solutions, LLC (9526); D, D & C, Inc. (9552); Engenium Corporation (2269); FDC Acquisition, Inc. (2387); HireRight Records Services, Inc. (1944); HireRight Solutions, Inc. (8954); HireRight Technologies Group, Inc. (1660); HireRight, Inc. (5016); John D. Cohen, Inc. (1738); KCMS, Inc. (0085); KIA Holding, LLC (1333); Kroll Associates, Inc. (6880); Kroll Background America, Inc. (4830); Kroll Crisis Management Group, Inc. (3811); Kroll Cyber Security, Inc. (2393); Kroll Factual Data, Inc. (9911); Kroll Holdings, Inc. (4648); Kroll Inc. (1019); Kroll Information Assurance, Inc. (2283); Kroll Information Services, Inc. (2381); Kroll International, Inc. (1243); Kroll Ontrack Inc. (1650); Kroll Recovery LLC (7082); Kroll Security Group, Inc. (5514); National Diagnostics, Inc. (7132); Ontrack Data Recovery, Inc. (3148); Personnel Records International, LLC (0716); The Official Information Company (1805); US Investigations Services, LLC (9260); USIS International, Inc. (3617); and USIS Worldwide, Inc. (4258). The location of the Debtors' corporate headquarters is 600 Third Avenue, 4th Floor, New York, NY 10016.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Plan or the Disclosure Statement, as applicable.

(ii) approving the form and manner of notice of the Confirmation Hearing, (iii) establishing a record date and approving procedures for distributing the solicitation packages, (iv) approving the forms of ballots, (v) establishing the deadline for the receipt of ballots and (vi) approving procedures for tabulating acceptances and rejections of the Plan; (b) establishing procedures with respect to, and the deadline for filing objections to, confirmation of the Plan and (c) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection having been given under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND THAT:**

A.     Notice of the Motion and the Disclosure Statement Hearing was served as proposed in the Motion, and such notice constitutes good and sufficient notice to all interested parties and no other or further notice need be provided.

B.     The Court has approved the Proposed Disclosure Statement.

C.     The forms of Ballots and Master Ballots annexed hereto as **Exhibits 2A-2C** are sufficiently consistent with Official Form No. 14 and adequately address the particular needs of these chapter 11 cases and are appropriate for each of the classes of claims that is entitled to vote to accept or reject the Plan.

D.     The content and proposed distribution of the Solicitation Packages complies with Bankruptcy Rule 3017(d).

E.     Ballots need not be provided to the holders of claims in Class A1 (Operating Debtors First Lien Credit Agreement Claims), Class A2 (Operating Debtors First Lien Notes Claims), Class A3 (Operating Debtors Lien Claims), Class A6 (Operating Debtors Other Priority Claims), Class B1 (Liquidating Debtors First Lien Credit Agreement Claims), Class B2 (Liquidating Debtors First Lien Notes Claims) and Class B3 (Liquidating Debtors Lien Claims) (collectively, the "**Unimpaired Creditors**"), because such holders are deemed to accept the Plan.

F.     Ballots need not be provided to the holders of claims and interests in Class A8 (Altegrity, Inc. Junior Subordinated Notes Claims) and Class A10 (Interests in Altegrity Holding Corp.) (collectively, the "**Rejecting Parties**"), because such holders are deemed to reject the Plan.

G.     The period, set forth below, during which the Debtors may solicit acceptances to the Plan is a reasonable and adequate period of time under the circumstances for creditors to make an informed decision to accept or reject the Plan.

H.     The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion and below) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

I.     The contents of the Solicitation Packages; the notice of the time, date, and place of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") substantially in

the form annexed hereto as **Exhibit 1** (the "**Confirmation Hearing Notice**"); the notice of non-voting status and election to opt out of certain third party release provisions substantially in the form annexed hereto as **Exhibit 3** (the "**Notice of Non-Voting Status**"); and the procedures set forth below for providing notice to all creditors and equity security holders of the Confirmation Hearing comply with Bankruptcy Rules 2002 and 3017, and service of such materials as set forth herein constitutes sufficient notice to all interested parties.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.　　The Motion is GRANTED.

2.　　The record date is established as the first day of the Disclosure Statement Hearing (the "**Record Date**") for purposes of this Order and determining which creditors are entitled to vote on the Plan and which creditors and interest holders receive materials, which include the Notice of Non-Voting Status.

3.　　The Debtors are authorized and empowered to commence distribution of the Confirmation Hearing Notice and the Solicitation Packages to the Voting Classes, including the Ballots to be sent to beneficial holders of the subject securities (the form of which is set forth in **Exhibit 2B** attached hereto) (the "**Beneficial Holder Ballots**"), to the Voting Classes, including sufficient copies to the Voting Nominees (as defined below) so that each Voting Nominee may send the Confirmation Hearing Notice and a Solicitation Package to each beneficial holder that holds through such Voting Nominee, on or before the date that is five (5) business days after the date of entry of this Order (the "**Solicitation Commencement Date**").

4.　　The Debtors are authorized and empowered to commence distribution of the master ballots (the form of which is set forth in **Exhibit 2A** attached hereto) (the "**Master Ballots**") to be sent to each bank, broker, custodian, dealer, nominee, or other intermediary, or their mailing agent

(each a "**Voting Nominee**") approximately three (3) days after the Solicitation Commencement Date.

5.    To the extent the Debtors are required to distribute copies of the Plan and/or Disclosure Statement, the Debtors may distribute either paper copies or electronic copies in "pdf" format on CD-ROM, at their sole discretion; <u>provided</u> that the Debtors shall make paper copies available upon written request by a party in interest.

6.    By the Solicitation Commencement Date, the Debtors shall commence or cause service of a copy of (i) this Order (without the exhibits annexed hereto), (ii) the Confirmation Hearing Notice, and (iii) the Disclosure Statement (together with the Plan and other exhibits annexed thereto) to, among other parties (to the extent such parties did not otherwise receive Solicitation Packages):

    a)    the U.S. Trustee;

    b)    proposed counsel to the Creditors' Committee;

    c)    counsel to the agent for the Debtors' prepetition secured credit facility;

    d)    the indenture trustee for each of the Debtors' outstanding bond issuances;

    e)    counsel to the *ad hoc* group of first lien debt holders;

    f)    counsel to the *ad hoc* group of second and third lien noteholders and debtor-in-possession lenders;

    g)    counsel to certain equity holders of debtor Altegrity Holding Corp.;

    h)    the Internal Revenue Service;

    i)    the United States Attorney for the District of Delaware;

    j)    the United States Office of Personnel Management; and

    k)    all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

7.      The Ballots, Beneficial Holder Ballots and Master Ballots, which shall be in substantially the forms annexed hereto as **Exhibits 2A-2C**, as applicable, are approved.

8.      The Debtors are authorized to accept Ballots and Master Ballots via electronic, online transmission through a customized "E-Ballot" section on the Debtors' case website (https://cases.primeclerk.com/Altegrity).  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot solely by utilizing Prime Clerk's E-Ballot platform.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Creditors and Voting Nominees who cast an electronic Ballot shall not also submit a paper Ballot.  If a creditor or Voting Nominee casts both an electronic Ballot and a paper Ballot with respect to the same claim, the paper Ballot shall not be counted.  Additionally, beneficial holders required to vote through a Voting Nominee must submit their Beneficial Holder Ballots in paper copy to the applicable Voting Nominee.

9.      Solicitation Packages, which shall include individual Ballots, shall be distributed either directly by the Debtors' Balloting Agent or via the Voting Nominees to the Voting Classes, which classes are designated under the Plan as entitled to vote to accept or reject the Plan.

10.     In addition, Master Ballots shall be distributed to each Voting Nominee identified by the Debtors' Balloting Agent as an entity through which beneficial holders indirectly hold claims in Voting Classes entitled to vote on the Plan.

11.     Solicitation Packages or Notices of Non-Voting Status (as appropriate) shall be distributed to (a) the directly registered holders, if any, of the Debtors' publicly-traded securities as of the Record Date, and (b) each Voting Nominee identified by the Debtors' Balloting Agent as an entity through which beneficial noteholders indirectly hold Claims.

12.     Upon receipt of sufficient copies of the Solicitation Packages or Notices of Non-Voting Status (as applicable) from the Balloting Agent, the Voting Nominees shall promptly distribute such materials to the beneficial holders by no later than five (5) business days after receipt by the Voting Nominees of such materials in accordance with the Voting Nominee's customary procedures.

13.     The Debtors are authorized, but not directed, to reimburse Voting Nominees for their reasonable and documented, actual and necessary out-of-pocket expenses incurred in connection with the distribution of Solicitation Packages and Notices of Non-Voting Status (as well as the tabulation of votes as applicable).

14.     The Notice of Non-Voting Status, which shall be substantially in the form annexed hereto as **Exhibit 3**, is approved.

15.     Only a copy of the Notice of Non-Voting Status shall be distributed to the Unimpaired Creditors, which are deemed to accept the Plan; provided, however, that each Debtor and non-Debtor Affiliate with a claim in Class A9 (Operating Debtors Intercompany Claims), Class A11 (Interests in the Subsidiary Debtors that are Operating Debtors) or Class B8 (Interests in the Liquidating Debtors) will be deemed to have received the Notice of Non-Voting Status without actually mailing such Notice of Non-Voting Status to such Debtor or non-Debtor Affiliate. The Debtors are not required to distribute copies of the Plan, Disclosure Statement, or this Order to any Unimpaired Creditor, unless such holder makes a specific request in writing for the same.

16.     Only a Notice of Non-Voting Status shall be distributed to Rejecting Parties, which are deemed to reject the Plan. The Debtors are not required to distribute copies of the Plan, Disclosure Statement, or this Order to any Rejecting Party unless such holder makes a specific request in writing for the same.

17.     With respect to addresses from which one or more prior notices served in these cases were returned as undeliverable or from which mailings made pursuant to this Order are returned as undeliverable, the Debtors are excused from distributing Solicitation Packages to those entities listed at such addresses if the Debtors are not provided with an accurate address or forwarding address for such entities before the Solicitation Commencement Date.  Failure to attempt to re-deliver Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline or a violation of Bankruptcy Rule 3017(d).

18.     All Ballots must be properly executed, completed, and delivered by first class mail, overnight mail, or hand delivery or through electronic, online transmission solely via, and in accordance with the instructions set forth on, the Balloting Agent's E-Ballot platform on the Debtors' case website (https://cases.primeclerk.com/Altegrity), to the Balloting Agent so as to be actually received by no later than the Voting Deadline, which shall be June 19, 2015 at 5:00 p.m. (prevailing Eastern Time).  Ballots cast by facsimile or email will not be counted.

19.     For purposes of voting on the Plan, the amount of a claim held by a creditor or the number of any interests held by an interest holder shall be determined pursuant to the following guidelines:

    a)    The amount of the claim listed in the Debtors' Schedules; provided that (i) such claim is not scheduled as any of contingent, unliquidated, undetermined, disputed or in a zero dollar amount and (ii) no proof of claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law) with respect to such claim; provided, further, that a party whose claim has been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of such claim, if any, to accept or reject the Plan.

    b)    The noncontingent and liquidated amount specified in a proof of claim timely filed with the Court or Prime Clerk (or otherwise deemed timely filed by the Court under applicable law) to the extent the proof of claim is not the subject of an objection filed no later than [**May 29], 2015 at 4:00 p.m. (prevailing Eastern Time)** (the "**Voting Objection Deadline**") (or, if such

8

claim has been resolved for allowance and/or voting purposes pursuant to a stipulation or order entered by the Court, or otherwise resolved by the Court, the amount set forth in such stipulation or order).

c)    If a proof of claim has been timely filed prior to the applicable bar date and such claim is asserted in the amount of $0.00, such claim shall not be entitled to vote.

d)    Notwithstanding anything to the contrary in these tabulation rules, the holder of any claim that has been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of such claim, if any, to accept or reject the Plan.

e)    The amount temporarily allowed or estimated by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), subject to notice consistent with the procedures set forth herein, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

f)    Except as otherwise provided in subsection (d) of this paragraph, with respect to Ballots cast by alleged creditors who have timely filed proofs of claim that include contingent, unliquidated, or disputed amounts (as may be reasonably determined by the Debtors or the Balloting Agent after review of the claim supporting documents) that are not the subject of an objection filed before the Voting Objection Deadline, such Ballots shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and shall be counted at the greater of (i) $1.00 and (ii) the amount that is a liquidated amount and not contingent or disputed in determining whether the aggregate claim amount requirement has been met (as may be reasonably determined by the Debtors or the Balloting Agent after review of the claim supporting documents).

g)    If a claim is deemed allowed under the Plan, such claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan.

h)    If a claim is not listed in the Schedules or is listed in the Schedules as contingent, unliquidated, or disputed (or in a zero amount) and a proof of claim was not (a) filed by the applicable bar date for the filing of proofs of claim established by the Court or (b) deemed timely filed by an order of the Court prior to the Voting Deadline, such claim shall be disallowed for voting purposes.

i)    If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.    Except as

otherwise ordered by the Court, any amendments to proofs of claim after the Record Date shall not be considered for purposes of these tabulation rules.

20.      The temporary allowance of Claims for voting purposes does not constitute an allowance of Claims for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context, including, without limitation, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan.

21.      In addition, with respect to Class A4 (Operating Debtors Secured Second Lien Notes Claims), Class A5 (Operating Debtors Secured Third Lien Notes Claims), Class A7-a (Operating Debtors Unsecured Notes Claims), Class B4 (Liquidating Debtors Secured Second Lien Notes Claims), Class B5 (Liquidating Debtors Secured Third Lien Notes Claims) and Class B7 (Liquidating Debtors Unsecured Claims), the applicable Indenture Trustees are hereby directed to provide to the Debtors or Prime Clerk an electronic file listing each participant lender or directly registered noteholder (as applicable) as of the Record Date, and provide contact information and claim amount for each lender and registered noteholder for voting purposes by no later than one (1) business day after the Record Date.  Alternatively, by no later than one (1) business day after the Record Date, the applicable Indenture Trustee may confirm that there are no directly registered noteholders on its books and records as of the Record Date.

22.      The Debtors may object to any claim (as defined in section 101(5) of the Bankruptcy Code) solely for Plan voting purposes by filing a Determination Motion no later than the Voting Objection Deadline.  Further, if a creditor casts a Ballot and has timely filed a proof of claim (or has otherwise had a proof of claim deemed timely filed by the Court under applicable law), but the creditor's claim is the subject of an objection filed no later than the Voting Objection Deadline, in accordance with Bankruptcy Rule 3018, the creditor's Ballot shall not be counted, unless such claim is temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy

Rule 3018(a), after a Claims Estimation Motion (as defined below) is filed. Notwithstanding the foregoing, if an objection to a claim requests that such claim be reclassified and/or reduced, such claimant's Ballot shall be counted in such reduced amount and/or in the reclassified category.

23.     If a creditor seeks to have its claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a), such creditor shall file a motion (the **"Claims Estimation Motion"**) by the later of (a) the Voting Objection Deadline, or (b) if such claim is the subject of an objection or a Determination Motion, seven (7) business days after the filing of the applicable objection or Determination Motion.

24.     In the Event that a Determination Motion or Claims Estimation Motion is filed, the non-moving party shall file a reply to such motion by the later of (i) the Voting Objection Deadline, or (ii) seven (7) business days after the filing of the applicable motion (the **"Voting Objection Reply Deadline"**), and a hearing, subject to the Court's availability, shall be scheduled within seven (7) days of the Voting Objection Reply Deadline but in no event later than the Confirmation Hearing. The ruling by the Court on any Determination Motion or Claims Estimation Motion shall be considered a ruling with respect to the allowance of the claim(s) under Bankruptcy Rule 3018 and such claim(s) will be counted, for voting purposes only, in the amount determined by the Court.

25.     Any objection to a claim for voting purposes or Determination Motion must be served on the applicable parties so as to be received by the parties no later than one (1) business day after the filing of such claim objection or Determination Motion.

26.     In the event that a claimant reaches an agreement with the Debtors as to the treatment of its claim for voting purposes, the claim may be treated in such manner subject to providing three (3) business days' notice to the Office of the U.S. Trustee.

27.   The following voting procedures and standard assumptions shall be used in tabulating the Ballots:

a)   For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code and based on the reasonable efforts of the Balloting Agent, separate claims held by a single creditor in a particular class will be aggregated as if such creditor held one claim against the applicable Debtor in such class, and the votes related to such claims will be treated as a single vote to accept or reject the Plan.

b)   Any creditor who holds duplicate claims within the same class shall be provided with only one Solicitation Package and one Ballot for voting a single claim in such class, regardless of whether the Debtors have objected to such duplicate claims.

c)   Creditors must vote all of their claims within a particular class either to accept or reject the Plan and may not split their vote; additionally, creditors in classes A7-a and B7 will cast a single vote to accept or reject the Plan, which will be applied to each of class A7-a and B7, and such creditors may not split their vote between the two classes. Accordingly, a Ballot (or multiple Ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan will not be counted.

d)   Ballots that fail to indicate an acceptance or rejection of the Plan or that indicate both acceptance and rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will not be counted.

e)   Only Ballots that are timely received with signatures (including electronic signatures) will be counted. Unsigned Ballots will not be counted.

f)   Ballots sent by mail or overnight delivery that are postmarked prior to the Voting Deadline, but received after the Voting Deadline, will not be counted. Electronic ballots will not be accepted after the Voting Deadline.

g)   Ballots which are illegible, or contain insufficient information to permit the identification of the creditor, will not be counted.

h)   Whenever a creditor casts more than one Ballot voting the same claim prior to the Voting Deadline, the last valid Ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and supersede any prior received Ballots. Notwithstanding the foregoing or anything to the contrary in this paragraph 27(h), if a creditor casts both an electronic Ballot and a paper Ballot with respect to the same claim, the paper Ballot shall not be counted.

12

i)   If a creditor simultaneously casts inconsistent duplicate Ballots with respect to the same claim, such Ballots shall not be counted.

j)   Each creditor shall be deemed to have voted the full amount of its claim. Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Balloting Agent and the Debtors, which determination shall be final and binding.

k)   Any Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code shall not be counted.

l)   Any Ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Plan shall not be counted.

m)   Notwithstanding anything contained herein to the contrary, the Balloting Agent, in its discretion, may contact parties that submitted Ballots to cure any defects in the Ballots.

n)   Any class that does not have a holder of an allowed claim or interest or a claim or interest temporarily allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class pursuant to section 1129(a)(8) of the Bankruptcy Code.

o)   If a class contains claims or interests eligible to vote and no holders of claims or interests eligible to vote in such class vote to accept or reject the Plan, the Debtors may request at the Confirmation Hearing that the Court deem the Plan accepted by the holders of such claims or interests in such class.

p)   Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors or the Court determines. Neither the Debtors nor any other person or entity shall be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor shall any incur any liabilities for failure to provide such notification. Unless otherwise directed by the Court, delivery of such Ballots shall not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) shall not be counted.

q)   The Debtors, in their discretion, and subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting and without notice. Except as provided below, unless the

Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors may, in their discretion, reject such Ballot as invalid, and therefore, decline to utilize it in connection with confirmation of the Plan by the Court; provided, however, that such invalid Ballots shall be documented in the voting results filed with the Court.

r)    Subject to contrary order of the Court, the Debtors reserve the absolute right to reject any and all Ballots not proper in form, the acceptance of which would, in the opinion of the Debtors, not be in accordance with the provisions of the Bankruptcy Code; provided, however, that such invalid Ballots shall be documented in the voting results filed with the Court.

28.    Voting By Beneficial Noteholders and Applicable Tabulation Procedures.    The Court hereby authorizes the Voting Nominees to obtain the votes of beneficial noteholders by either (i) forwarding the Solicitation Package to each beneficial noteholder for whom it acts as a Voting Nominee and directing such beneficial noteholder to return its Beneficial Holder Ballot to its Voting Nominee in accordance with such Voting Nominee's customary practices by a date calculated by the Voting Nominee to allow it to prepare and return the Master Ballot to the Balloting Agent so that the Master Ballot is actually received by the Voting Deadline, or (ii) "prevalidating" the Beneficial Owner Ballots contained in the Solicitation Package by, inter alia, (a) indicating thereon the names and address of the record holder of the note claim to be voted, the amount of the note claim held by the beneficial owner as of the Record Date, and the appropriate account numbers through which the beneficial owner's holdings are derived, and (b) executing the beneficial owner's Beneficial Holder Ballot, and then forwarding the Solicitation Package to the beneficial owner of the note claim for voting within five (5) business days after receipt by such Voting Nominee of the Solicitation Package, with the beneficial owner then returning the Beneficial Owner Ballot directly to the Balloting Agent in the return envelope to be provided in the Solicitation Package by the Voting Deadline.

29.    Voting Nominees shall summarize on the applicable Master Ballot the individual votes of their respective beneficial noteholders cast on the appropriate form of Ballot or in

accordance with the Voting Nominee's customary practices, and then return such Master Ballot to the Balloting Agent.

30. The following additional tabulation procedures shall apply with respect to tabulating Master Ballots:

a)   All Voting Nominees are required to retain the Beneficial Holder Ballots cast by their respective beneficial holders (or a record thereof if such vote was otherwise cast in accordance with the Voting Nominees' customary practices) for inspection for a period of one year following the Voting Deadline.

b)   Votes cast by holders of public securities through Voting Nominees shall be applied to the applicable positions held by such Voting Nominees as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Voting Nominees shall not be counted in excess of the amount of public securities held by such Voting Nominees as of the Record Date.

c)   If conflicting votes or "over-votes" are submitted by a Voting Nominee, the Balloting Agent shall use reasonable efforts to reconcile discrepancies with such Voting Nominee. The submission of a Master Ballot reflecting an aggregate amount of voting Claims that exceeds the record position as identified on record and depository listings, respectively, is referred to herein as an "overvote."

d)   If over-votes are submitted by a Voting Nominee which are not reconciled prior to the preparation of the certification of vote results, the votes to accept and to reject the Plan shall be counted in the same proportion as the votes to accept and to reject the Plan submitted by the Voting Nominee, but only to the extent of the Voting Nominee's Record Date position in the public securities.

e)   For the purposes of tabulating votes, each beneficial holder shall be deemed (regardless of whether such holder includes interest in the amount voted on its Ballot) to have voted only the principal amount of its public securities; any principal amounts thus voted may be thereafter adjusted by the Balloting Agent, on a proportionate basis to reflect the corresponding claim amount, including any accrued but unpaid prepetition interest, with respect to the securities thus voted.

f)   A single Voting Nominee may complete and deliver to the Balloting Agent multiple Master Ballots. Votes reflected on multiple Master Ballots shall be counted except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the last properly

completed Master Ballot received prior to the Voting Deadline shall, to the extent of such inconsistency, supersede any prior received Master Ballot; provided, however, that if a Voting Nominee casts both a paper Master Ballot and an electronic Master Ballot with respect to the same claim, the paper Master Ballot shall not be counted.

31.    In accordance with section 1125(e) of the Bankruptcy Code, to the fullest extent permitted by law, none of the Debtors, or their respective directors, officers, employees, shareholders, members, partners, agents or representatives (including attorneys, accountants, financial advisors and investment bankers), each solely in their capacity as such, shall have any liability on account of soliciting votes on the Plan or participating in such solicitation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

32.    The Confirmation Hearing Notice, which shall be in substantially the form annexed hereto as **Exhibit 1**, and Notice of Non-Voting Status, which shall be in substantially the form annexed hereto as **Exhibit 3**, are approved.

33.    No later than 12:00 p.m. prevailing Eastern Time two (2) business days prior to the Confirmation Hearing, the Balloting Agent shall file with the Court a tabulation report for Plan voting and the Debtors shall file with the Court a proposed form of confirmation order and a declaration in support of confirmation addressing the requirements of section 1129(a) of the Bankruptcy Code.

34.    The Confirmation Hearing will be held at **10:00 a.m. (prevailing Eastern Time) on [July 1], 2015,** which hearing may be continued from time to time by the Court or the Debtors, without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on the Notice Parties (as defined below).

35.    The Debtors shall mail to all creditors and equity security holders a copy of the Confirmation Hearing Notice or Notice of Non-Voting Status, as set forth herein.  The Debtors shall also publish the Confirmation Hearing Notice once, at least twenty-eight (28) days before the last date to object to confirmation of the Plan, in (a) the national and international editions of the *Wall Street Journal*, (b) *USA Today*, (c) *The Los Angeles Times* and (d) *The San Francisco Chronicle*.  Additionally, the Debtors will post the Confirmation Hearing Notice electronically on the website dedicated to these chapter 11 cases, https://cases.primeclerk.com/Altegrity.

36.    Any objection, comment or response to confirmation of the Plan (including any supporting memoranda) must be in writing, served on the parties identified below, and filed with the Court, together with proof of service, such that the foregoing are received by such parties and the Court on or before **4:00 p.m. (prevailing Eastern Time) on [June 19], 2015**, which deadline may be extended by the Debtors in their sole discretion (the "**Confirmation Objection Deadline**").  The Court shall consider only timely filed written objections.  All objections not timely filed and served in accordance with the provisions of the Motion are hereby deemed waived.  Objections to confirmation of the Plan should provide proposed language to remedy such objections and shall be served on the following parties:  (i) the Debtors, Altegrity, Inc., 600 Third Avenue, 4th Floor, New York, NY 10016, Attn: David R. Fontaine; (ii) counsel to the Debtors, Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attn: M. Natasha Labovitz, Jasmine Ball and Craig A. Bruens, Email:  nlabovitz@debevoise.com, jball@debevoise.com, and cabruens@debevoise.com; (iii) Delaware bankruptcy and conflicts counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Edmon L. Morton, Joseph M. Barry and Ryan M. Bartley, Email:  emorton@ycst.com, jbarry@ycst.com and rbartley@ycst.com; (iv) the Office of the United States Trustee for the District of Delaware, 844

Email: Mark.Kenney@usdoj.gov

King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Mark Kenney; (v) counsel to the *ad hoc* group of first lien lenders, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Patrick J. Nash, Jr., Ryan P. Dahl and Justin R. Bernbrock, Email: patrick.nash@kirkland.com, ryan.dahl@kirkland.com, and justin.bernbrock@kirkland.com; (vi) Delaware counsel to the *ad hoc* group of first lien lenders, Womble Carlyle Sandridge & Rice LLP, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801, Attn: Mark L. Desgrosseilliers, Email: mdesgrosseilliers@wcsr.com; (vii) counsel to the *ad hoc* group of second and third lien lenders and the debtor-in-possession lenders, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Brian S. Hermann and Rebecca R. Cohen, Email: bhermann@paulweiss.com and rcohen@paulweiss.com; (viii) Delaware counsel to the *ad hoc* group of second and third lien lenders and the debtor-in-possession lenders, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, P.O. Box 2087, Wilmington, DE 19899, Attn: Richard S. Cobb and Matthew B. McGuire, Email: cobb@lrclaw.com and mcguire@lrclaw.com; (ix) counsel to the official committee of unsecured creditors, Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109, Attn: Andrew Goldman and Dennis L. Jenkins, Email: andrew.goldman@wilmerhale.com and dennis.jenkins@wilmerhale.com; (x) Delaware counsel to the official committee of unsecured creditors, Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19801, Attn: Neil B. Glassman and GianClaudio Finizio, Email: nglassman@bayardlaw.com and gfinizio@bayardlaw.com; (xi) counsel to the Consenting Interest Holders, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 Attn: Marcia Goldstein, Jacqueline Marcus, and Amy Price, Email: marcia.goldstein@weil.com, jacqueline.marcus@weil.com, and amy.price@weil.com; and (xii) Delaware counsel to the Consenting Interest Holders, Ashby & Geddes, P.A., 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899, Attn.: William P. Bowden,

Email:   WBowden@ashby-geddes.com; and (xiii) all parties that have requested notice in these chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (collectively, the "**Notice Parties**").

37.     Objections to confirmation of the Plan, if any, must: (a) be made in writing; (b) state with particularity the legal and factual ground therefor, and, unless impracticable, propose modification to the Plan that would resolve such objection; (c) conform to the Bankruptcy Rules and Local Rules; (d) be sent by hand delivery, mail or, if a Notice Party's email address is set forth above, to such email address; and (e) be served so as to be received by each of the Notice Parties no later than the Confirmation Objection Deadline.

38.     Objections to confirmation of the Plan not timely filed and served in the manner set forth above shall not be considered by the Court and shall be overruled.

39.     Unless the court sets a later deadline, the Debtors and any other party supporting the Plan shall be afforded an opportunity to file a response to any objection to confirmation of the Plan, which shall be filed prior to the time the agenda is due for the Confirmation Hearing.

40.     The Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court, including, but not limited to, the making of any payments reasonably necessary to perform the actions and distributions contemplated herein.

41.     The Debtors are authorized, with the approval of the Consenting First Lien Creditors and Consenting Junior Lien Creditors, to make nonsubstantive changes to the Disclosure Statement, Plan, Ballots, Confirmation Hearing Notice, Notice of Non-Voting Status and related documents without further order of the Court, including, without limitation, changes to correct

typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package prior to their distribution.

42.    The Court shall retain jurisdiction with respect to all matters related to this Order.


Dated: _May 15, 2015_
      Wilmington, Delaware

                                   LAURIE SELBER SILVERSTEIN
                                   UNITED STATES BANKRUPTCY JUDGE