## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ALTEGRITY, INC., *et al.*,[1] | Case No. 15-10226 (LSS) |
| Debtors. | Jointly Administered |
| | **Requested Hearing Date: August 14, 2015 at 10:00 a.m. (ET)**<br>**Requested Objection Deadline: August 13, 2015 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO, AND APPROVING, A SETTLEMENT AGREEMENT WITH THE UNITED STATES

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to enter into, and approving, a settlement agreement attached hereto as **Exhibit B** (the "**Settlement Agreement**") with the United States of America, acting through the United States Department of Justice, the United States Department of Labor, and the United States Office of Personnel Management ("**OPM**") (collectively, the "**United States**" and together with the Debtors, the "**Parties**"). In support of this motion, the Debtors respectfully state as follows:

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Altegrity, Inc. (9985); Albatross Holding Company, LLC (2688); Albatross Marketing and Trading, LLC (8643); Altegrity Acquisition Corp. (1480); Altegrity Holding Corp. (1481); Altegrity Risk International LLC (6350); Altegrity Security Consulting, Inc. (5452); CVM Solutions, LLC (9526); D, D & C, Inc. (9552); Engenium Corporation (2269); FDC Acquisition, Inc. (2387); HireRight Records Services, Inc. (1944); HireRight Solutions, Inc. (8954); HireRight Technologies Group, Inc. (1660); HireRight, Inc. (5016); John D. Cohen, Inc. (1738); KCMS, Inc. (0085); KIA Holding, LLC (1333); Kroll Associates, Inc. (6880); Kroll Background America, Inc. (4830); Kroll Crisis Management Group, Inc. (3811); Kroll Cyber Security, Inc. (2393); Kroll Factual Data, Inc. (9911); Kroll Holdings, Inc. (4648); Kroll Inc. (1019); Kroll Information Assurance, Inc. (2283); Kroll Information Services, Inc. (2381); Kroll International, Inc. (1243); Kroll Ontrack Inc. (1650); Kroll Recovery LLC (7082); Kroll Security Group, Inc. (5514); National Diagnostics, Inc. (7132); Ontrack Data Recovery, Inc. (3148); Personnel Records International, LLC (0716); The Official Information Company (1805); US Investigations Services, LLC (9260) ("**USIS**"); USIS International, Inc. (3617); and USIS Worldwide, Inc. (4258). The location of the Debtors' corporate headquarters is 600 Third Avenue, 4th Floor, New York, NY 10016.

**Preliminary Statement**

1.      This motion – for approval of a comprehensive settlement of certain federal government claims related to the Debtors' USIS business – represents a continuation of the Debtors' strong track record of consensually resolving difficult disputes that, at times, have threatened to complicate or delay their restructuring efforts.  As described in detail herein, the settlement comes after a long investigation period and difficult negotiations.  The resulting agreement, which the Debtors believe is supported by all of their major creditor and equity constituencies, including the statutory committee of unsecured creditors, sets the stage for the Debtors' near-term emergence from chapter 11.

2.      As this Court is aware, the Debtors began these chapter 11 cases with a restructuring support agreement that represented a comprehensive settlement among all major classes of their funded debt and equityholders with respect to the terms of a plan of reorganization that would provide for new funding, eliminate hundreds of millions of dollars in make-whole claims and set the framework for a streamlined and efficient reorganization.  Just three months later, the Debtors announced that they had reached agreement with their statutory committee of unsecured creditors regarding the chapter 11 treatment of all unsecured claims.  With this Court's authorization, the Debtors began soliciting votes on the resulting chapter 11 plan; that process was complete in late June and the Debtors are preparing to present that plan to this Court for confirmation on August 14, 2015.

3.      On June 19, 2015, the United States filed an objection to the Debtors' proposed plan, arguing among other things that certain discharge and release provisions of the plan were improper in light of claims that might be asserted by the United States.  In the context of addressing that objection, the Debtors saw an opportunity to try to achieve one more comprehensive settlement with a key constituency – in this case, a settlement that will put to rest

certain substantial claims related to the USIS business that will liquidate under the plan, resolve the United States' related objections to plan confirmation, and avoid the need for risky and potentially lengthy litigation post-confirmation with respect both to claims asserted against the Debtors and also claims asserted by USIS against OPM.  The Debtors seek expedited review and approval of the settlement, as it will resolve objections to chapter 11 confirmation and allow the Debtors' ongoing operating businesses to emerge from bankruptcy expeditiously, without any overhang or any further delay related to the former USIS business.

### Jurisdiction and Venue

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are section 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  The Debtors also request a ruling under section 3730(c)(2)(B) of title 31 of the United States Code, §§ 3729-33 (the

"**FCA**"), to the extent the Relator (as defined below) has not consented to the Settlement Agreement.

**Background**

**A.    Procedural Background**

7.    On February 8, 2015 (the "**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.    On February 24, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these chapter 11 cases.

9.    Additional information regarding the Debtors' history and business operations, their corporate and capital structure, and the events leading up to the commencement of the Debtors' chapter 11 cases is set forth in greater detail in the *Declaration of Jeffrey Campbell, President and Chief Financial Officer of Altegrity, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] and is incorporated by reference herein.

10.    On May 15, 2015, the Court entered an order approving the Disclosure Statement [Docket No. 528] and on May 16, 2015, the Debtors filed (a) a revised Joint Chapter 11 Plan of Altegrity, Inc., *et al.* [Docket No. 532] (as amended and supplemented from time to time, the "**Plan**") and (b) a revised Disclosure Statement for the Joint Chapter 11 Plan of Altegrity, Inc. *et al.* [Docket No. 533].  A hearing to consider confirmation of the Plan is scheduled to commence on August 14, 2015.

**B.      Background Regarding the Settlement Agreement**

11.      As further described below, the Settlement Agreement resolves certain claims alleged by the United States against the Debtors (some of which have been asserted as non-dischargeable claims), on the one hand, and certain of the Debtors' claims against the United States, on the other hand.  The Settlement Agreement also resolves the United States' objection to confirmation of the Plan.  These compromises will facilitate the Debtors' emergence from chapter 11 and remove potential uncertainty that otherwise could have existed with respect to the business prospects and capital structure of the reorganized Debtors.

### i.      The FCA Action Against USIS

12.      The United States' claims against the Debtors arise from a lawsuit that was originally filed against USIS on July 1, 2011 by Blake Percival (the "**Relator**") on behalf of the United States under the *qui tam* provisions of the FCA in the United States District Court for the Middle District of Alabama, Northern Division, under the caption, *United States ex rel. Blake Percival v. U.S. Investigations Services, LLC*, Civil Action No. 11-CV-527-WKW (the "**FCA Action**").

13.      The United States intervened in the FCA Action in October 2013 and filed its own complaint in January 22, 2014.  The United States' complaint asserts, among other things, that from March 2008 through September 2012, USIS presented false or fraudulent claims to the United States for payment or approval, and materially breached its Fieldwork Services contracts with OPM by failing to perform quality reviews on all reports of investigations as required by such contracts (collectively, the "**FCA Claims**").[2]  The United States' complaint alleges damages and penalties against USIS resulting from the FCA Claims that, without admission as to

---

[2]      A copy of the United States' complaint is attached to its objection to the Plan [Docket No. 654].

liability or the likelihood of ultimate recovery, could potentially result in substantial claims against the USIS estates ranging in the tens of millions of dollars.

14.     On April 24, 2014, the United States District Court for the District of Alabama transferred the FCA Action to the United States District Court for the District of Columbia, where it is pending under Case No. 1:14-cv-00726-RMC.  The FCA Action was stayed by order of the District Court in May of 2014 and that stay was supplemented by the automatic stay under section 362 of the Bankruptcy Code upon the filing of USIS's chapter 11 case.

### ii.     The Debtors' Claims Against the United States

15.     Despite the existence of the FCA Action, USIS and OPM maintained their contractual relationships until September 2014.  Prior to that time, in June of 2014, USIS personnel detected the possibility that USIS's technology infrastructure had been subject of an external intrusion attack (the "**Data Intrusion**").  USIS immediately notified OPM of the Data Intrusion, communicated with federal law enforcement agencies as well as its other customers, and invested substantial resources in investigating, containing and remediating the Data Intrusion following the incident.

16.     On August 6, 2014, as a result of the Data Intrusion, OPM issued notice of a temporary stop-work order related to the USIS Fieldwork contract and instructed USIS to temporarily stop work under that contract.  Soon thereafter, USIS received stop-work orders related to services performed on other USIS government contracts.  On September 9, 2014, OPM notified USIS that the government had decided not to exercise its remaining options on either the Fieldwork or the Background Investigation Support Services contracts held by USIS.  These actions by OPM resulted in USIS's contracts ending on September 30, 2014.

17.     Debtor USIS has asserted claims against the United States for tens of millions of dollars arising from OPM's termination of the Fieldwork and Support Services contracts held by

USIS, including claims to recover the substantial costs incurred to wind down and transition the contracts to other contractors, consistent with the directions of OPM and operative federal contracting principles, and certain requests for equitable adjustment. The Debtors also have identified, but have not yet formally asserted, additional claims arising from OPM's decision to end its contracts with USIS, claims based on alleged violations of the Federal Acquisition Regulation, breach of contract, violations of the Contract Disputes Act, alleged breach of duty, constructive debarment, bad faith and the taking of the Debtors' property without just compensation.

### iii.    The United States' Objection to the Plan

18.    On June 19, 2015, the United States filed an objection to the Plan [Docket No. 654] (the "**Objection**") contending, among other things, that the FCA Claims are not dischargeable against USIS and possibly certain of the other Debtors pursuant to section 1141(d)(6) of the Bankruptcy Code, and objecting to the Plan's injunction and third-party releases. The Objection also raised issues regarding the Debtors' assumption of government contracts and treatment of government data allegedly in the Debtors' possession.

19.    The Objection was the first time that the United States (or anyone) had raised the possibility that the FCA Claims could extend beyond USIS and be asserted against other Debtors. As such, the Objection challenged a fundamental element of the global chapter 11 compromise among the Debtors and their lenders, creditors and current shareholders that was set forth in the Restructuring Support Agreement and further modified to reflect Creditors' Committee input, all of which serves as the basis for the Plan.

01:17471031.1

### C.    Settlement Negotiations and the Settlement Agreement

20.    While the Debtors had previously discussed a potential settlement of the FCA Claims with the United States before commencing these chapter 11 cases, those discussions had stalled well before the Commencement Date.  Nonetheless, the Debtors maintained an open dialogue with the United States after commencing these chapter 11 cases both with respect to the FCA Claims and also with respect to claims that the Debtors had compiled and asserted against the United States.

21.    After the Objection was filed, the Debtors worked in earnest to revitalize prior settlement discussions and to negotiate a consensual resolution of all disputes with the United States with respect to the FCA Action and the Objection.  The Debtors also prepared to pursue a contested confirmation if settlement negotiations proved unsuccessful.

22.    The Debtors' arm's-length negotiations with the United States have taken several weeks, during which time the Debtors, with the support of their creditor constituencies, agreed to adjourn the confirmation hearing on the Plan.  The negotiations have involved numerous telephonic conversations among (at various times) attorneys for the Department of Justice, Department of Labor, OPM, in-house and outside counsel for the Debtors, and representatives of every major creditor and equity constituency of the Debtors, and have culminated in the Settlement Agreement.

23.    Ultimately, the Parties agreed to the Settlement Agreement, which effectuates a mutual release of certain Claims between the Debtors and the United States relating to and arising from the Debtors' relationship with OPM, and resolves the Objection.  The salient terms of the Settlement Agreement are as follows:[3]

---

[3]    The following description represents only a summary of the salient provisions of the proposed Settlement Agreement; the Settlement Agreement itself should be referred to in its entirety for the specific terms and

a. <u>Debtors' Release of Claims</u>.  Upon the Effective Date (as that term is defined in the Plan), in consideration for the undertakings by the parties set forth in the Settlement Agreement, the Debtors and their chapter 11 estates release and discharge the United States, its agencies, officers, agents, employees, and servants from any and all Claims arising before the Effective Date from the Debtors' relationship with OPM, including, without limitation, any alleged breach of contract, any claims based on alleged violations of the Federal Acquisition Regulation or Contract Disputes Act, pending requests for equitable adjustment, invoice claims, claims arising from any alleged breach of duty, constructive debarment, bad faith and/or taking of the Debtors' property.  For the avoidance of doubt, the Debtors do not release the United States from (a) any Claims arising from the Debtors' relationship with, or the conduct by, any agencies of the United States other than OPM and (b) any Claims (or defenses) relating to the Excluded Matters.

b. <u>United States' Release of Claims</u>.  Upon the Effective Date, in consideration for the undertakings by the parties set forth in the Settlement Agreement, the United States waives, releases and discharges the Released Parties from (a) any and all Claims arising before the Effective Date for the Covered Conduct that have been, are now, or could have been asserted in the FCA Action and (b) any other Claims arising on or before the Effective Date relating to the Debtors or their chapter 11 cases that arise from or relate to the relationship of OPM with any of the Debtors.  For the avoidance of doubt, the United States does not release the Released Parties from the Excluded Matters.  Any Claims related to the Excluded Matters shall be classified pursuant to and subject to the treatment set forth in and resolved pursuant to the Plan (to the extent applicable) and the Bankruptcy Code.

c. <u>ERISA</u>.  The Confirmation Order shall contain the following language: "Notwithstanding any provision of the Plan (including, without limitation Section 9.3 of the Plan) or the Confirmation Order providing for the release of non-debtors, or any injunction on behalf of non-debtors, nothing in the Plan or the Confirmation Order shall (a) discharge or release any ERISA fiduciaries, parties in interest and knowing participants, in each case to the extent not a Debtor (the "Non-Debtor ERISA Parties") from any actions brought by the Secretary of Labor, United States Department of Labor (the "Secretary") pursuant to ERISA against Non-Debtor ERISA Parties, or (b) enjoin the Secretary from pursuing such actions against Non-Debtor ERISA Parties."

d. <u>Government Data</u>.  The parties acknowledge that the Settlement Agreement does not resolve, and the United States reserves its right to if necessary pursue, its previously asserted objection as to government data in the Debtors'

---

conditions thereof.  If there is any inconsistency between the summary and the Settlement Agreement, the terms and conditions of the Settlement Agreement will control.  Capitalized terms used in this motion without definition have the meaning ascribed to such terms in the Settlement Agreement.

possession, custody or control, provided that the parties are separately engaged in discussions regarding a resolution to such objection and will continue those discussions in good faith.

e.  <u>Executory Contracts</u>.  The assumption by the Debtors of the Federal Contracts pursuant to the Plan and the Confirmation Order shall not alter, waive or modify any right of the United States to consent, or withhold consent, to such purported assumption.   The Debtors shall comply with applicable non-bankruptcy law and follow the customary procedures of the applicable United States agencies or departments in connection with the assumption of any such Federal Contract, and notwithstanding anything contrary in the Plan, the United States shall retain the right to contest any stated cure amounts as part of such procedures.  The United States and the Debtors agree to use their reasonable best efforts to provide any necessary consents to the Debtors' assumption of any Federal Contract before the Effective Date.  Any purported assumption of any Federal Contract with the United States by the Debtors shall become effective only upon the consent of the United States.  Notwithstanding any prior filing relating to the Plan, none of the Liquidating Debtors shall assume any executory contract with the United States.  All Federal Contracts with the Liquidating Debtors shall be deemed rejected under the Plan on the Effective Date.  For the avoidance of doubt, upon rejection of any Federal Contract, the Debtors shall be relieved of all obligations relating to such contract, including all close-out obligations under the Federal Acquisition Regulations.  Any Claims against the Liquidating Debtors relating to or arising from the rejection of any Federal Contract, including Claims relating to the non-performance of any close-out obligations, not released pursuant to paragraph 3 in the Settlement Agreement shall be treated as prepetition Claims and resolved in accordance with the Plan and the Bankruptcy Code.

f.  <u>Cooperation</u>.   Subject to compliance with federal law and consistent with applicable *Touhy* regulations, OPM agrees to cooperate with the Debtors in their defense or other treatment of (a) Claims arising under the Worker Adjustment and Retraining Notification Act, including those alleged in the legal proceeding captioned *Karaniewsky v. US Investigations Services, LLC*, Case No. 14-CV-01344-AJS (W.D. Pa.) or the adversary proceeding captioned *Karaniewsky, et al. v. Altegrity, Inc., et al.*, Adv. Proc. No. 15-50204 (LSS) and (b) Claims arising out of or related to the September 16, 2013 shootings at the Washington Navy Yard.  For the purposes of this provision, cooperation shall only require OPM to use its reasonable efforts to respond to appropriate requests for knowledgeable OPM witnesses and/or affidavits attesting to facts within the knowledge of OPM witnesses at the request of USIS or its counsel in each case.

g.  <u>Withdrawal of the Objection and Approval of the Settlement Agreement</u>.  Upon execution of the Settlement Agreement by the Parties, the United States agrees to (a) withdraw the Objection, (b) not object to the Plan with respect to

the issues raised in the Objection, (c) use reasonable efforts to support approval of the Settlement Agreement by the Bankruptcy Court and (d) upon approval by the Bankruptcy Court, seek a dismissal of the FCA Action with prejudice, in each case on an expedited basis.

h. <u>Joint Stipulation</u>.  Promptly after approval of the Settlement Agreement by the Bankruptcy Court, the United States shall sign and file in the FCA Action pursuant to Rule 41(a)(1) a Stipulation of Dismissal dismissing the FCA Action with prejudice upon the occurrence of the Effective Date.  It is expressly understood that the Settlement Agreement does not address or affect claims of the Relator for a percentage of the FCA proceeds from the United States or claims for reasonable expenses, attorneys' fees, costs and claims for retaliation from USIS related to or arising under the FCA Action.

**D.    Settlement Considerations**

24.    In deciding whether to enter into the Settlement Agreement, the Debtors exercised their business judgment and compared the cost of the settlement (i.e., the release of the Debtors' claims against the United States) with the benefits that they will obtain from the settlement (i.e., the release of the United States' claims and the resolution of the Objection, including the issue of whether the FCA Claims could be asserted as non-dischargeable claims against other Debtors in addition to USIS).  While the Debtors are releasing valuable claims against the United States, they will obtain in return assurance that the USIS-related liabilities that could be non-dischargeable claims will remain isolated from the Debtors' reorganizing businesses.[4]  Given the events precipitating this case, including negative publicity across the entire organization relating to the USIS business, this future certainty is of significant value for the Debtors and their future owners under the Plan.

25.    The Debtors also considered the risk of litigation over the settled claims, including the risk that their claims against the United States could be subject to setoff by valid

---

[4]    The Settlement Agreement does not purport to address claims that the Relator may assert against the United States for any portion of the United States' recovery or any claims that the relator may assert against USIS. The Relator's claims will be governed by § 3730 of the FCA and the availability or validity of the Relator's claims against USIS, if any, will be resolved pursuant to the Plan and otherwise applicable law.

claims, if any, of the United States against the Debtors.  The Debtors believe that, while all litigation brings with it inherent risk, that risk is amplified as a practical matter when litigating against the United States with respect to such claims and at such a critical time when the Debtors are trying to emerge from chapter 11.  The Settlement Agreement will obviate the need for expensive, protracted and risky litigation.

26.    Lastly, the Debtors' entry into the Settlement Agreement has the support of each of the Debtors' major creditor constituencies, including the Consenting First Lien Creditors, Consenting Second and Third Lien Creditors and the Creditors' Committee.  As described above, the Debtors' "currency" for the Settlement Agreement is a release of certain claims against the United States.  Many, if not all, of such claims are collateral of the Debtors' secured lenders.  Thus, the support of the Debtors' secured lenders for the use of their collateral under the Settlement Agreement was an important consideration for the Debtors in determining to enter into the agreement.

## Relief Requested

27.    By this motion, the Debtors request that the Court enter an order pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 (a) authorizing the Debtors to enter into, and approving, the Settlement Agreement and (b) to the extent the Relator has not consented to the Settlement Agreement, finding that the Settlement Agreement is fair, adequate and reasonable under all the circumstances pursuant to 31 U.S.C. § 3730(c)(2)(B).

01:17471031.1

## Basis for Relief

**A.    The Settlement Agreement Should be Approved Pursuant to Bankruptcy Rule 9019(a)**

28.    Bankruptcy Rule 9019, which governs the approval of compromises and settlements by a debtor, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

29.    The analysis of any proposed settlement starts with the general policy of encouraging settlements and favoring compromises.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).  To approve a settlement, a bankruptcy court must determine that the settlement is in the best interest of a debtor's estate.  *Law Debenture Trust Co. of New York v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 95–96 (D. Del. 2006).  In addition, a court must:

> "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors:  (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

*Id*. at 96 (quoting *Martin*, 91 F.3d at 393).  The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable and in the best interest of a debtor's estate.  *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

30.    The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court.  *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and equitable.  *Protective Comm. for Indep. S'holders of TMT Trailer Ferry*

*Inc., v. Anderson*, 390 U.S. 414, 424 (1968).  A court need not decide the numerous issues of law and fact raised by the settlement and it need not be convinced that the proposed settlement is the best possible, rather "[t]he court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."  *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) (quoting *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004)).

31.     In the Debtors' business judgment – supported by each of their major creditor and equity constituencies – the resolution embodied in the Settlement Agreement is fair and equitable and in the best interests of the Debtors, their estate and creditors.  The Settlement Agreement provides for a prompt and complete resolution of claims in the FCA Action and certain other potential claims of the United States, which, if litigated, would be distracting, impose significant demands on certain of the Debtors' personnel and deplete assets of the Debtors' estates.  Moreover, because the claims in the FCA Action have been alleged to be non-dischargeable, the Settlement Agreement removes potential uncertainty that could otherwise affect the reorganized Debtors' businesses if those claims were not resolved and the Debtors did not otherwise obtain an injunction barring them as part of the Plan.

32.     The Settlement Agreement also provides for resolution of certain claims of the Debtors against the United States, which the Debtors would have to litigate and reduce to a judgment or a further future settlement prior to vindicating any rights or recovery pursuant to such claims.  Even if successful, such a resolution would impose costs and time demands on the Debtors, and such claims would potentially remain subject to setoff against any successfully asserted claims of the United States.

01:17471031.1

14

33.     The Settlement Agreement is the product of lengthy good faith, arm's-length negotiations among the Parties, with the input and support of all major creditor and equity constituencies, that has culminated in a global settlement that falls well within the range of reasonable litigation outcomes.  In addition, as discussed below, each of the *Martin* factors weighs in favor of approving the Settlement Agreement.

### i.     The Probability of Success in Litigation

34.     Had the Parties failed to reach the consensual resolution provided for in the Settlement Agreement, the Debtors would have been forced to litigate the FCA Action and the Debtors' claims against the United States.  Although the Debtors firmly believe in their defenses to the FCA Action, the United States similarly believes in its position concerning such action. Similarly, the Debtors firmly believe in their claims against the United States, and the United States believes in its defenses to such claims.  The probability that the Debtors would succeed in litigation with respect to all of the issues resolved by the Settlement Agreement is uncertain.  By contrast, the Settlement Agreement provides complete certainty to the Debtors, their estates and creditors, particularly the new equityholders of the Debtors under the Plan, with respect to resolution of the FCA Action and any potential non-dischargeable claims against any of the Debtors arising from such action.  Both the Debtors and the United States understand the inherent uncertainties, costs and delays associated with protracted litigation and believe that the Settlement Agreement eliminates the time, costs and tremendous strains on resources and personnel that would be associated with both defending and prosecuting all of the settled claims. In light of the foregoing, the first *Martin* factor weighs significantly in favor of approving the Settlement Agreement.

01:17471031.1

15

### ii.    The Likely Difficulties in Collection

35.    There is no certainty that the Debtors would be able to obtain any monetary recovery on their claims against the United States, because any recovery that the Debtors would be entitled to on such claims would be subject to setoff to the extent the United States was successful in pursuing its alleged claims against USIS.  Moreover, any litigation result would likely be subject to further costly and time-consuming appeal.  Therefore, the second *Martin* factor weighs in favor of approving the Settlement Agreement.

### iii.    The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It

36.    A litigated resolution of the settled claims would be complex and involve substantial discovery.  The FCA Action alleges wrongdoing over a course of four years.  Even if maintained against USIS, such litigation would be costly and a distraction to the ongoing operation of the Debtors' businesses.  Moreover, the United States has asserted in the Objection that the FCA Claims could be asserted against certain other Debtors.  Likewise, the Debtors' claims against the United States are complex, involving expenses and other costs against the United States, which the Debtors have taken months to compile and assert.  By entering into the Settlement Agreement, the Debtors eliminate the time, resources and expenses associated with likely complex and protracted litigation, on both the defensive and offensive side, and thereby maximize value.  Accordingly, the third *Martin* factor also weighs in favor of approving the Settlement Agreement.

### iv.    The Paramount Interest of Creditors

37.    The Settlement Agreement will substantially benefit, not prejudice, the Debtors' creditors, and as mentioned above, all of the Debtors' major creditor constituencies support the Debtors' entry into the Settlement Agreement.  Approval of the Settlement Agreement will

resolve the FCA Action and certain other claims between the Debtors and the United States, without the need for potentially expensive and time-consuming litigation.  If the Debtors do not enter into the Settlement Agreement, the Debtors would be faced with potential nondischargeable claims that could burden the Debtors' reorganized businesses after emerging from bankruptcy.  The settlement with the United States will ensure that no additional expenses will be incurred in connection with the claims alleged in the FCA Action, and ensures that any such costs will be reinvested in the businesses to the benefit of the Debtors' creditors. Accordingly, the fourth *Martin* factor weighs in favor of approving the Settlement Agreement.

**B.      The Debtors Should Be Authorized to Enter into the Settlement Agreement Pursuant to Section 363(b) of the Bankruptcy Code**

38.      Settlement agreements frequently involve the use or disposition of assets of the estate, thereby implicating section 363 of the Bankruptcy Code.  *In re Martin*, 91 F.3d at 394-95. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

39.      Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the debtor's use of estate property, courts in this Circuit and others have required that decisions regarding the use of assets outside the ordinary course of business be based upon the debtor's sound business judgment and a finding of "good faith."  *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) (requiring a finding of "good faith" to approve a sale under section 363(b)); *In re Martin*, 91 F.3d at 395 (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re*

01:17471031.1

*Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions.").

40.     In entering into the Settlement Agreement, the Debtors have evaluated the claims asserted in the FCA Action, as well as other potential claims of the United States, and have weighed the risks and costs of litigating the claims asserted therein against the benefits of settlement.  Aside from avoiding the time, expense and uncertainty of potential litigation over the FCA Action, the Settlement Agreement resolves potentially tens of millions of dollars of alleged liability in exchange for the Debtors' release of their settled claims.  Moreover, litigation of the FCA Action would carry the risk of the Debtors facing potentially significant liability that may not be discharged in these cases.  As discussed above, such litigation has extremely high stakes, is expensive and carries the potential for delay.

41.     Based upon the above analysis, the Debtors have determined that the benefits of the Settlement Agreement significantly outweigh the benefits (and associated costs) of proceeding with litigation.  The Settlement also will allow the Debtors to reallocate resources now devoted to resolution of the FCA Action and Debtors' settled claims to the other important matters associated with the Debtors' reorganization and businesses.

42.     To the extent section 363 of the Bankruptcy Code is implicated in connection with the Settlement Agreement, the Debtors submit that the terms of the Settlement Agreement have a sound business purpose and represent the exercise of the Debtors' sound business judgment.  As set forth more fully above, under the Settlement Agreement, the Debtors, among other things, will release the United States of certain claims the Debtors have against them.  In return, the Debtors will be released of all claims by the United States alleged in connection with

the FCA Action and their relationship with OPM. The Debtors submit that entry into the Settlement Agreement should be authorized and approved pursuant to section 363(b) of the Bankruptcy Code.

**C.      The Court Should Find that the Settlement Agreement is Fair, Adequate and Reasonable under All the Circumstances Pursuant to 31 U.S.C. § 3730(c)(2)(B).**

43.     The Debtors understand that the United States intends to seek the Relator's consent for its entry into the Settlement Agreement. To the extent that such consent is not obtained by the hearing on this motion, the Debtors request that the Court find that the Settlement Agreement is fair, adequate and reasonable from the perspective of the United States in accordance with the FCA.

44.     Under section 3730(c)(2)(B) of the FCA, "the Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." In determining whether a "proposed settlement is fair, adequate and reasonable," some courts have looked to the factors considered in reviewing class action settlements. *See United States ex rel. Schweizer v. Océ N. Am., Inc.*, 956 F. Supp. 2d 1, 23 (D.D.C. July 19, 2013); *United States ex rel. Resnick v. Weill Med. College of Cornell Univ.*, 2009 U.S. Dist. LEXIS 24376, at *4 (S.D.N.Y. Mar. 5, 2009); *United States ex rel. Nudelman v. Int'l Rehabilitation Assocs.*, No. 00-1837, 2006 WL 925035, at *14 (E.D. Pa. Apr. 4, 2006). Courts in this jurisdiction consider the following factors in determining if a class action settlement is fair, adequate and reasonable:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the [stakeholders] to the settlement; (3) the stage
> of the proceedings and the amount of discovery completed; (4) the
> risks of establishing liability; (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial; (7)

01:17471031.1

> the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation.

*See In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 258 (3d Cir. 2009).  In evaluating settlements under these factors, courts in this jurisdiction and other jurisdictions have found settlements to be fair, reasonable and adequate where every factor did not weigh in favor of the settlement.  *See, eg.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 218 (3d Cir. 2001); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

45.    The complexity, expense and likely duration of the litigation as discussed above weigh in favor of approving the settlement as fair, adequate and reasonable from the perspective of the United States in the same manner as viewing the settlement from the Debtors' perspective. The FCA Action and the Debtors' claims against the United States are in very early stages and will be highly contested.  Any litigated resolution of such claims would require protracted discovery.  Furthermore, the risks of the United States establishing liability and damages, and defending its own liability and damages, are great and weigh in favor of approval of the Settlement Agreement, especially as here, where USIS is liquidating under the Plan with virtually no assets available for general unsecured creditors even if the United States was to prevail under its alleged claims against USIS.

46.    Additionally, the Debtors and the United States are unable to obtain a more favorable settlement of the FCA Action and the Debtors' claims.  As discussed above, the Debtors seek to settle the FCA Action in exchange for releases of certain of the Debtors' claims. Although the Debtors have asserted tens of millions of dollars of claims against the United States, they have additional claims that have yet to be asserted and could impose potentially far greater liability on the United States.  The Debtors are not in the position to offer more to settle

the FCA Action and would otherwise seek a litigated resolution of the United States' Objection and thereafter proceed to prosecute their claims against the United States.

47.    Pursuant to the Settlement Agreement, the United States will be released of all claims by the Debtors arising before the Effective Date in connection with the Debtors' relationship with OPM in return for a release of the FCA Claims and certain other claims that have been alleged against the Debtors.  The Debtors believe that such settlement is reasonable from the perspective of both the Debtors and the United States in light of the attendant risks and uncertainty of litigation of all of the settled claims.  Therefore, the Debtors respectfully submit that this Court should find that the Settlement Agreement is fair, adequate and reasonable pursuant to section 3730(c)(2)(B) of the FCA.

## Notice

48.    Notice of this motion has been provided to the following parties:  (a) the U.S. Trustee; (b) counsel for the Creditors' Committee; (c) counsel to the agent for the Debtors' prepetition secured credit facility; (d) the indenture trustee for each of the Debtors' outstanding bond issuances; (e) counsel to the *ad hoc* group of first lien debt holders; (f) counsel to the *ad hoc* group of second and third lien noteholders and the debtor-in-possession lenders; (g) counsel to certain equity holders of Debtor Altegrity Holding Corp.; (h) the Internal Revenue Service; (i) the United States Attorney for the District of Delaware; (j) the United States Office of Personnel Management; (k) the Relator; (l) the United States; and (m) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

01:17471031.1

## **No Prior Request**

49.    No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of this page intentionally left blank.]*

01:17471031.1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the

relief requested herein, and (b) grant such other and further relief as is just and proper.

Dated:    August 10, 2015          */s/ Edmon L. Morton*
          Wilmington, Delaware    **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                   Edmon L. Morton (No. 3856)
                                   Joseph M. Barry (No. 4221)
                                   Ryan M. Bartley (No. 4985)
                                   Rodney Square
                                   1000 North King Street
                                   Wilmington, Delaware 19801
                                   Tel:    (302) 571-6600
                                   Fax:    (302) 571-1253
                                   Email: emorton@ycst.com
                                          jbarry@ycst.com
                                          rbartley@ycst.com

                                   -and-

                                   **DEBEVOISE & PLIMPTON LLP**
                                   M. Natasha Labovitz
                                   Jasmine Ball
                                   Craig A. Bruens
                                   919 Third Avenue
                                   New York, New York 10022
                                   Tel:    (212) 909-6000
                                   Fax:    (212) 909-6836
                                   Email: nlabovitz@debevoise.com
                                          jball@debevoise.com
                                          cabruens@debevoise.com

                                   *Co-Counsel for the Debtors and Debtors in Possession*

01:17471031.1