**Exhibit B**

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is entered into by and among the United States of America, acting through the United States Department of Justice, the United States Department of Labor, and the United States Office of Personnel Management ("**OPM**") (collectively, the "**United States**"), and Altegrity, Inc., Albatross Holding Company, LLC, Albatross Marketing and Trading, LLC, Altegrity Acquisition Corp., Altegrity Holding Corp., Altegrity Risk International LLC, Altegrity Security Consulting, Inc., CVM Solutions, LLC, D, D & C, Inc., Engenium Corporation, FDC Acquisition, Inc., HireRight Records Services, Inc., HireRight Solutions, Inc., HireRight Technologies Group, Inc., HireRight, Inc., John D. Cohen, Inc., KCMS, Inc., KIA Holding, LLC, Kroll Associates, Inc., Kroll Background America, Inc., Kroll Crisis Management Group, Inc., Kroll Cyber Security, Inc., Kroll Factual Data, Inc., Kroll Holdings, Inc., Kroll Inc., Kroll Information Assurance, Inc., Kroll Information Services, Inc., Kroll International, Inc., Kroll Ontrack Inc., Kroll Recovery LLC, Kroll Security Group, Inc., National Diagnostics, Inc., Ontrack Data Recovery, Inc., Personnel Records International, LLC, The Official Information Company, US Investigations Services, LLC ("**USIS**"), USIS International, Inc., and USIS Worldwide, Inc. (each, a "**Debtor**" and, collectively, the "**Debtors**") (hereafter collectively referred to as the "**Parties**"), through their authorized representatives.

## RECITALS

A.      On July 1, 2011, Blake Percival (the "**Relator**") filed a lawsuit against USIS on behalf of the United States under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-33 (the "**FCA**"), in the United States District Court for the Middle District of Alabama, Northern Division, under the caption, *United States ex rel. Blake Percival v. U.S. Investigations Services, LLC*, Civil Action No. 11-CV-527-WKW.

B.      On January 22, 2014, the United States filed a Complaint in Intervention in the Relator's lawsuit, asserting, among other things, that USIS presented false or fraudulent claims to the United States for payment or approval, and materially breached a contract with OPM by failing to perform quality

reviews on all reports of investigations as required by such contract. The United States' Complaint in Intervention is hereinafter referred to as the "**FCA Action**." The FCA Action sets forth certain factual allegations as to conduct that the United States contends gives rise to fraud under the False Claims Act, 31 U.S.C. §§ 3729-3733, et seq., and liability for breach of contract and common law fraud. Any conduct described in the FCA Action and alleged to have given rise to the claims asserted therein, for the period presented in the FCA Action, i.e., from March 2008 through September 2012 (including to the extent such conduct, if any, involved the participation of any of the Debtors or their employees) shall be referred to in this agreement as the "**Covered Conduct**." By order entered April 24, 2014, the United States District Court for the District of Alabama granted a motion of the United States to transfer the FCA Action to the United States District Court for the District of Columbia, where it is pending under Case No. 1:14-cv-00726-RMC.

C.      On February 8, 2015 (the "**Commencement Date**"), each of the Debtors filed a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), and their chapter 11 cases have been consolidated for procedural purposes and are being administered jointly as Case No. 15-10226 (LSS) (collectively, the "**Chapter 11 Cases**").

D.      On June 19, 2015, the United States filed an objection [Docket No. 654] (the "**Objection**") to confirmation of the *Joint Chapter 11 Plan of Altegrity, Inc. et al.* [Docket No. 532] (as revised, amended or supplemented from time to time, the "**Plan**") contending, among other things, that the United States may have claims arising from or relating to the FCA Action and the Covered Conduct, that such claims of the United States are not dischargeable against any of the Debtors and requesting additional time to file a non-dischargeability complaint against the Debtors in the Chapter 11 Cases.

E.      The Debtors contend that they have certain claims against the United States arising from, among other things, the Debtors' relationship with OPM and OPM's termination of two key contracts with USIS on September 9, 2014. These claims include, without limitation, alleged breach of contract claims, claims based on alleged violations of the Federal Acquisition Regulation or Contract Disputes

Act, pending requests for equitable adjustment, invoice claims, claims arising from any alleged breach of duty, constructive debarment, bad faith and/or taking of the Debtors' property.

F.       The Parties wish to resolve their differences with respect to all matters concerning or relating to the FCA Action, the Covered Conduct, the Objection, the Chapter 11 Cases and certain claims asserted against each other, and address other matters as provided herein, without further adjudication.

G.       This Agreement is neither an admission of liability by any Party nor a concession by any Party that its claims are not well-founded.  This Agreement represents a compromise of the contested positions of the Parties that is entered into solely for purposes of settlement.

To avoid the delay, uncertainty, inconvenience and expense of protracted litigation regarding the above matters, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.       Definitions.  The following terms have the meanings set forth in the recitals: Bankruptcy Code, Bankruptcy Court, Chapter 11 Cases, Commencement Date, Covered Conduct, Debtors, FCA, FCA Action, Objection, OPM, Parties, Plan, Relator, United States and USIS.  Each of the capitalized terms used but not defined herein has the definition in the Plan.  In addition, whenever the terms listed below are used in this Agreement, the following definitions shall apply:

a. "**Claim**" has the meaning provided in section 101(5) of the Bankruptcy Code.

b. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

c. "**ERISA**" means the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*.

d. "**Excluded Matters**" means (a) any civil, criminal or administrative liability or defense arising under Title 26 of the United States Code, (b) any civil, criminal or administrative liability or defense under federal environmental laws, (c) any liability to the United States (or its agencies) or

3

defense for any conduct other than (x) the Covered Conduct and (y) conduct that arises from or relates to the relationship of OPM with any of the Debtors, (d) any administrative regulatory remedies or defenses and (e) any criminal liability or defense.

f. "**Federal Contracts**" means any executory contracts or unexpired leases between the Debtors and the United States.

f. "**Liquidating Debtors**" means USIS, USIS International, Inc., USIS Worldwide, Inc. and John D. Cohen, Inc.

g. "**Non-Debtor ERISA Parties**" means any ERISA fiduciaries, parties in interest and knowing participants, in each case to the extent not a Debtor.

h. "**Released Parties**" means each of the Debtors and their chapter 11 estates, the Indenture Trustees, the First Lien Credit Agreement Agent, the Consenting Interest Holders, the First Lien Lenders (including the Consenting First Lien Term Loan Lenders), the holders of First Lien Notes (including the Consenting First Lien Creditors), the holders of Second Lien Notes (including the Consenting Second Lien Creditors), the holders of Third Lien Notes (including the Consenting Third Lien Creditors), the current and former members of the Ad Hoc Group of First Lien Creditors, the current and former members of the Ad Hoc Group of Second and Third Lien Creditors, the members of the Creditors' Committee, the holders of the 2015 Senior Notes, the holders of the 2016 Senior Subordinated Notes, the Disbursing Agents, the Collateral Agents, the First Lien Arrangers, the First Lien Issuing Banks, the Underwriters, and their respective present and former partners, employees, officers, directors, agents, attorneys, predecessors, successors, affiliates, heirs, executors, administrators and assigns, *provided, however*, that no former employees of USIS as of the date hereof are Released Parties under this Agreement.

2.    Debtors' Release of Claims.   Upon the Effective Date (as that term is defined in the Plan), in consideration for the undertakings by the parties set forth in this Agreement, the Debtors and their chapter 11 estates release and discharge the United States, its agencies, officers, agents, employees,

and servants from any and all Claims arising before the Effective Date from the Debtors' relationship with OPM, including, without limitation, any alleged breach of contract, any claims based on alleged violations of the Federal Acquisition Regulation or Contract Disputes Act, pending requests for equitable adjustment, invoice claims, claims arising from any alleged breach of duty, constructive debarment, bad faith and/or taking of the Debtors' property.   For the avoidance of doubt, the Debtors do not release the United States from (a) any Claims arising from the Debtors' relationship with, or the conduct by, any agencies of the United States other than OPM and (b) any Claims (or defenses) relating to the Excluded Matters.

3.    <u>United States' Release of Claims</u>.    Upon the Effective Date, in consideration for the undertakings by the parties set forth in this Agreement, the United States waives, releases and discharges the Released Parties from (a) any and all Claims arising before the Effective Date for the Covered Conduct that have been, are now, or could have been asserted in the FCA Action and (b) any other Claims arising on or before the Effective Date relating to the Debtors or their chapter 11 cases that arise from or relate to the relationship of OPM with any of the Debtors.   For the avoidance of doubt, the United States does not release the Released Parties from the Excluded Matters.   Any Claims related to the Excluded Matters shall be classified pursuant to and subject to the treatment set forth in and resolved pursuant to the Plan (to the extent applicable) and the Bankruptcy Code.

4.    <u>ERISA</u>.   The Confirmation Order shall contain the following language: "Notwithstanding any provision of the Plan (including, without limitation Section 9.3 of the Plan) or the Confirmation Order providing for the release of non-debtors, or any injunction on behalf of non-debtors, nothing in the Plan or the Confirmation Order shall (a) discharge or release any ERISA fiduciaries, parties in interest and knowing participants, in each case to the extent not a Debtor (the "**Non-Debtor ERISA Parties**") from any actions brought by the Secretary of Labor, United States Department of Labor (the "**Secretary**") pursuant to ERISA against Non-Debtor ERISA Parties, or (b) enjoin the Secretary from pursuing such actions against Non-Debtor ERISA Parties."

5.      <u>Executory Contacts and Unexpired Leases</u>.   The assumption by the Debtors of the Federal Contracts pursuant to the Plan and the Confirmation Order shall not alter, waive or modify any right of the United States to consent, or withhold consent, to such purported assumption.   The Debtors shall comply with applicable non-bankruptcy law and follow the customary procedures of the applicable United States agencies or departments in connection with the assumption of any such Federal Contract, and notwithstanding anything contrary in the Plan, the United States shall retain the right to contest any stated cure amounts as part of such procedures.   The United States and the Debtors agree to use their reasonable best efforts to provide any necessary consents to the Debtors' assumption of any Federal Contract before the Effective Date.   Any purported assumption of any Federal Contract with the United States by the Debtors shall become effective only upon the consent of the United States.   Notwithstanding any prior filing relating to the Plan, none of the Liquidating Debtors shall assume any executory contract with the United States.   All Federal Contracts with the Liquidating Debtors shall be deemed rejected under the Plan on the Effective Date.   For the avoidance of doubt, upon rejection of any Federal Contract, the Debtors shall be relieved of all obligations relating to such contract, including all close-out obligations under the Federal Acquisition Regulations.   Any Claims against the Liquidating Debtors relating to or arising from the rejection of any Federal Contract, including Claims relating to the non-performance of any close-out obligations, not released pursuant to paragraph 3 herein shall be treated as prepetition Claims and resolved in accordance with the Plan and the Bankruptcy Code.

6.      The Debtors waive and shall not assert any defenses the Debtors may have to any criminal prosecution or administrative action relating to the Covered Conduct that such action is precluded by the Double Jeopardy Clause in the Fifth Amendment of the Constitution or by the Excessive Fines Clause in the Eighth Amendment of the Constitution.   Nothing in this paragraph or any other provision of this Agreement shall preclude the Debtors from asserting any other defenses they may have.   Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

7.    <u>Cooperation</u>.  Subject to compliance with federal law and consistent with applicable *Touhy* regulations, OPM agrees to cooperate with the Debtors in their defense or other treatment of (a) Claims arising under the Worker Adjustment and Retraining Notification Act, including those alleged in the legal proceeding captioned *Karaniewsky v. US Investigations Services, LLC*, Case No. 14-CV-01344-AJS (W.D. Pa.) or the adversary proceeding captioned *Karaniewsky, et al. v. Altegrity, Inc., et al.*, Adv. Proc. No. 15-50204 (LSS) and (b) Claims arising out of or related to the September 16, 2013 shootings at the Washington Navy Yard.  For the purposes of this provision, cooperation shall only require OPM to use its reasonable efforts to respond to appropriate requests for knowledgeable OPM witnesses and/or affidavits attesting to facts within the knowledge of OPM witnesses at the request of USIS or its counsel in each case.

8.    <u>Withdrawal of the Objection and Approval of this Agreement</u>.  Upon execution of this Agreement by the Parties, the United States agrees to (a) withdraw the Objection, (b) not object to the Plan with respect to the issues raised in the Objection, (c) use reasonable efforts to support approval of this Agreement by the Bankruptcy Court and (d) upon approval by the Bankruptcy Court, seek a dismissal of the FCA Action with prejudice, in each case on an expedited basis.  Notwithstanding the foregoing obligations in this paragraph, (1) the parties acknowledge that this Agreement does not resolve, and the United States reserves its right to if necessary pursue, its previously asserted objection as to government data in the Debtors' possession, custody or control, provided that the parties are separately engaged in discussions regarding a resolution to such objection and will continue those discussions in good faith; and (2) the Objection shall be deemed a timely assertion of the United States' right of setoff or recoupment with respect to (a) debts that may be owed by the United States to any of the Debtors (b) Claims by the United States against the Debtors based on the Excluded Matters or not otherwise released or waived herein.  For the avoidance of doubt, no Claims released or expressly waived herein shall be available for purposes of setoff or recoupment by the Debtors or the United States, including against Claims not released herein.  The Debtors shall retain their rights to contest any asserted setoff and recoupment rights.

9.    <u>Joint Stipulation</u>.  Promptly after approval of this Agreement by the Bankruptcy Court, the United States shall sign and file in the FCA Action pursuant to Rule 41(a)(1) a Stipulation of Dismissal dismissing the FCA Action with prejudice upon the occurrence of the Effective Date.  It is expressly understood that this Agreement does not address or affect claims of the Relator for a percentage of the FCA proceeds from the United States or claims for reasonable expenses, attorneys' fees, costs and claims for retaliation from USIS related to or arising under the FCA Action.

10.    <u>Effectiveness of Agreement</u>.  Except as provided in paragraph 8 of this Agreement, which shall be effective upon execution, the terms and conditions of this Agreement shall not be effective until all of the following conditions precedent have been satisfied: (a) each Party has executed this Agreement, (b) the Agreement has been approved by an order of the Bankruptcy Court and (c) either the Relator has consented to this Agreement or the Parties have obtained a determination by the requisite court that the Agreement is fair, adequate and reasonable under all the circumstances pursuant to 31 U.S.C. § 3730(c)(2)(B).  Upon satisfaction of all such conditions precedent, this Agreement shall become immediately effective without any further action by the Parties.

11.    <u>Costs and Expenses</u>.  Except as otherwise provided in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

12.    <u>Voluntary Agreement</u>.  Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

13.    <u>Governing Law</u>.  The law governing this Agreement shall be federal law, including the Bankruptcy Code and, to the extent applicable in absence of federal law, New York law.  The Bankruptcy Court (or, upon withdrawal of the Bankruptcy Court's reference, the United States District Court for the District of Delaware) shall retain jurisdiction over the subject matter of this Agreement and the Parties for the duration of the performance of the terms and provisions of this Agreement.

14.    <u>Rule of Construction</u>.  This Agreement shall be deemed to have been drafted by all of the Parties and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

15.    <u>Entire Agreement</u>.  This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by a writing signed by all Parties.

16.    <u>Third Party Beneficiaries</u>.  This Agreement is intended for the benefit of the Parties hereto and no other person or entity, except for the Released Parties, shall be a third party beneficiary hereof or have any rights hereunder.

17.    <u>Authorization</u>.  The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18.    <u>Counterparts and Signatures</u>.  This Agreement may be executed in identical counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.  Facsimile or electronic signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

19.    <u>Binding Effect</u>.  This Agreement is binding upon, and shall inure to the benefit of, the United States and the Debtors and their legal successors and assigns.

20.    <u>Disclosure</u>.  All Parties consent to the disclosure of this Agreement, and information about this Agreement, to the public.

*[The remainder of this page is left blank intentionally]*

THE UNDERSIGNED PARTIES ENTER INTO THIS AGREEMENT:

FOR THE UNITED STATES OF AMERICA:

Date: _August 10, 2015_          By: _____

Date: _August 10, 2015_          By: _____

Date:                            By: _____

Dated:  August 10, 2015

Altegrity Holding Corp.

By:
Name:    Jeffrey S. Campbell
Title:     Senior Vice President and
              Chief Financial Officer

Altegrity Acquisition Corp.

By:
Name:    Jeffrey S. Campbell
Title:     Senior Vice President and
              Chief Financial Officer

Altegrity, Inc.

By:
Name:    Jeffrey S. Campbell
Title:     President and Chief Financial Officer

Altegrity Security Consulting, Inc.
CVM Solutions, LLC
D, D & C, Inc.
Engenium Corporation
FDC Acquisition, Inc.
HireRight Records Services, Inc.
     (f/k/a USIS Records Services, Inc.)
HireRight Solutions, Inc.
     (f/k/a USIS Commercial Services, Inc.)
HireRight, Inc.
HireRight Technologies Group, Inc.
John D. Cohen, Inc.
KCMS, Inc.
Kroll Associates, Inc.
Kroll Background America, Inc.
Kroll Crisis Management Group, Inc.
Kroll Cyber Security, Inc.
Kroll Factual Data, Inc.
Kroll Holdings, Inc.
Kroll Inc.
Kroll Information Assurance, Inc.
Kroll Information Services, Inc.
Kroll International, Inc.
Kroll Ontrack Inc.
Kroll Security Group, Inc.
National Diagnostics, Inc.
Ontrack Data Recovery, Inc.
The Official Information Company
USIS International, Inc.
USIS Worldwide, Inc.

By: _____
Name:  Andrew E. Grimmig
Title:    Assistant Secretary

KIA Holding, LLC
Kroll Recovery, LLC
Altegrity Risk International LLC
     (f/k/a Altegrity Risk Consulting and Solutions, Inc.)
US Investigations Services, LLC

By: _____
Name:  Andrew E. Grimmig
Title:    Assistant Secretary

Albatross Holding Company, LLC
By:  Kroll Associates, Inc., its Sole Member

By: _____
Name:   Andrew E. Grimmig
Title:    Assistant Secretary


Albatross Marketing & Trading, LLC
By:  Albatross Holding Company, LLC
By:  Kroll Associates, Inc., its Sole Member

By: _____
Name:   Andrew E. Grimmig
Title:    Assistant Secretary


Personnel Records International, LLC
By:  National Diagnostics, Inc., its Sole
Member

By: _____
Name:   Andrew E. Grimmig
Title:    Assistant Secretary