## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALTEGRITY, INC., *et al.*,[1]<br><br>                     Debtors. | Chapter 11<br><br>Case No. 15-10226 (LSS)<br><br>Jointly Administered |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER SECTION 1129 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3020 CONFIRMING DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## RECITALS

A.      On March 30, 2015, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Joint Chapter 11 Plan of Altegrity, Inc., et al.* [Docket No. 334] (the "**March 30 Plan**") and the *Disclosure Statement for the Joint Chapter 11 Plan of Altegrity, Inc. et al.* [Docket No. 335] (the "**March 30 Disclosure Statement**").

B.      On March 30, 2015, the Debtors filed the *Notice of Hearing to Consider Adequacy of Disclosure Statement* [Docket No. 336] (the "**Disclosure Statement Hearing Notice**"). The Disclosure Statement Hearing Notice was served by first class mail or overnight mail on the U.S. Trustee, all parties that, as of the filing of the Disclosure Statement Hearing

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Altegrity, Inc. (9985); Albatross Holding Company, LLC (2688); Albatross Marketing and Trading, LLC (8643); Altegrity Acquisition Corp. (1480); Altegrity Holding Corp. (1481); Altegrity Risk International LLC (6350); Altegrity Security Consulting, Inc. (5452); CVM Solutions, LLC (9526); D, D & C, Inc. (9552); Engenium Corporation (2269); FDC Acquisition, Inc. (2387); HireRight Records Services, Inc. (1944); HireRight Solutions, Inc. (8954); HireRight Technologies Group, Inc. (1660); HireRight, Inc. (5016); John D. Cohen, Inc. (1738); KCMS, Inc. (0085); KIA Holding, LLC (1333); Kroll Associates, Inc. (6880); Kroll Background America, Inc. (4830); Kroll Crisis Management Group, Inc. (3811); Kroll Cyber Security, Inc. (2393); Kroll Factual Data, Inc. (9911); Kroll Holdings, Inc. (4648); Kroll Inc. (1019); Kroll Information Assurance, Inc. (2283); Kroll Information Services, Inc. (2381); Kroll International, Inc. (1243); Kroll Ontrack Inc. (1650); Kroll Recovery LLC (7082); Kroll Security Group, Inc. (5514); National Diagnostics, Inc. (7132); Ontrack Data Recovery, Inc. (3148); Personnel Records International, LLC (0716); The Official Information Company (1805); US Investigations Services, LLC (9260); USIS International, Inc. (3617); and USIS Worldwide, Inc. (4258). The location of the Debtors' corporate headquarters is 600 Third Avenue, 4th Floor, New York, NY 10016.

Notice, had requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, and all of the Debtors' known creditors and equity interest holders. Affidavits evidencing this service were filed with the Bankruptcy Court on April 3, 2015, April 8, 2015, April 10, 2015, April 28, 2015 and April 30, 2015 [Docket Nos. 354, 365, 368, 369, 474 and 488].

C.       On March 30, 2015, the Debtors filed the *Debtors' Motion for Order Approving the Disclosure Statement and Granting Related Relief* [Docket No. 338].

D.       On April 14, 2015, the Debtors filed the *Debtors' Motion for Order (A) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (I) Approving Form and Manner of Solicitation Procedures, (II) Approving the Form and Notice of the Confirmation Hearing, (III) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (IV) Approving Forms of Ballots, (V) Establishing Deadline for Receipt of Ballots and (VI) Approving Procedures for Vote Tabulations; (B) Establishing Deadline and Procedures for Filing Objections to Confirmation of the Plan and (C) Granting Related Relief* [Docket No. 385].

E.       On May 12, 2015, the Debtors filed a revised *Joint Chapter 11 Plan of Altegrity, Inc., et al.* [Docket No. 515] (the "**May 12 Plan**") and a revised *Disclosure Statement for the Joint Chapter 11 Plan of Altegrity, Inc. et al.* [Docket No. 516] (the "**May 12 Disclosure Statement**").

F.       On May 12, 2015, the Debtors filed the *Notice of Filing Blacklines of the Debtors' Revised Joint Chapter 11 Plan of Altegrity, Inc., et al. and the Accompanying Disclosure Statement* [Docket No. 517], which contained a blackline of the May 12 Plan against the March 30 Plan (collectively, the "**May 12 Modifications**").

G.       On May 15, 2015, the Court entered an order [Docket No. 528] approving the adequacy of the Disclosure Statement (as defined below).

2

H.      On May 16, 2015, the Debtors filed a revised *Joint Chapter 11 Plan of Altegrity, Inc., et al.*, dated May 15, 2015 [Docket No. 532] (the "**May 15 Plan**") and a revised *Disclosure Statement for the Joint Chapter 11 Plan of Altegrity, Inc. et al.*, dated May 15, 2015 [Docket No. 533] (the "**Disclosure Statement**").

I.      On May 19, 2015, the Debtors filed the *Notice of Filing Blacklines of the Debtors' Further Revised Joint Chapter 11 Plan of Altegrity, Inc., et al. and the Accompanying Disclosure Statement* [Docket No. 542], which contained a blackline showing certain modifications to the May 12 Modifications (the "**May 15 Modifications**", and the March 30 Plan as modified by the May 12 Modifications and the May 15 Modifications, the "**Plan**").[2]

J.      On May 15, 2015, the Bankruptcy Court entered an order [Docket No. 529] (the "**Solicitation Procedures Order**") approving, among other things: (i) the Debtors' proposed procedures for soliciting votes to accept or reject the Plan, the manner of providing notice thereof and the tabulation of votes to accept or reject the Plan; (ii) the form and notice of the Confirmation Hearing; and (iii) procedures for filing objections to confirmation of the Plan.

K.      As required by the Solicitation Procedures Order, and as evidenced by an affidavit of service filed with the Bankruptcy Court on June 4, 2015 [Docket No. 590], the Debtors, through the Bankruptcy Court-approved noticing and voting agent, Prime Clerk LLC ("**Prime Clerk**"), timely mailed to holders, as of the Record Date (as defined in the Solicitation Procedures Order), of Claims in Class A4 (Operating Debtors Secured Second Lien Notes Claims), Class A5 (Operating Debtors Secured Third Lien Notes Claims), Class A7-a (Operating Debtors Unsecured Notes Claims), Class A7-b (Operating Debtors General Unsecured Claims),

---

[2]     Capitalized terms used but not otherwise defined in this Order (this "**Confirmation Order**") shall have the meanings ascribed to them in the Plan. Any capitalized term used herein that is not defined in the Plan or in this Confirmation Order, but that is defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

Class B4 (Liquidating Debtors Secured Second Lien Notes Claims), Class B5 (Liquidating Debtors Secured Third Lien Notes Claims), Class B6 (Liquidating Debtors Other Priority Claims) and Class B7 (Liquidating Debtors Unsecured Claims) (together, the "**Voting Classes**"), which classes are designated under the Plan as entitled to vote to accept or reject the Plan, solicitation packages (the "**Solicitation Packages**") containing copies of (a) written notice of (i) the Bankruptcy Court's approval of the Disclosure Statement, (ii) the deadline for voting on the Plan, (iii) notice of the date, time and place of the Confirmation Hearing (the **Confirmation Hearing Notice**"), and (iv) the deadline and procedures for filing objections to confirmation of the Plan; (b) the Plan; (c) the Disclosure Statement; and (d) a Ballot to vote to accept or reject the Plan and a ballot return envelope to be used to return a completed Ballot.

L.     As further required by the Solicitation Procedures Order, and as evidenced by the affidavit of service filed with the Bankruptcy Court on June 4, 2015 [Docket No. 590], the Debtors, through Prime Clerk, timely mailed to all holders of Claims and Interests not entitled to vote on the Plan, including, without limitation, holders, as of the Record Date, of (a) Unimpaired Claims in (i) Class A1 (Operating Debtors First Lien Credit Agreement Claims), (ii) Class A2 (Operating Debtors First Lien Notes Claims), (iii) Class A3 (Operating Debtors Lien Claims), (iv) Class A6 (Operating Debtors Other Priority Claims), (v) Class B1 (Liquidating Debtors First Lien Credit Agreement Claims), (vi) Class B2 (Liquidating Debtors First Lien Notes Claims) and (vii) Class B3 (Liquidating Debtors Lien Claims) that are deemed to accept the Plan, and (b) Impaired Claims in Class A8 (Altegrity, Inc. Junior Subordinated Notes Claims) and Interests in Class A10 (Interests in Altegrity Holding Corp.) that are deemed to reject the Plan, written notice of (i) the Bankruptcy Court's approval of the Disclosure Statement, (ii) the Confirmation Hearing Notice, (iii) the deadline and procedures for filing objections to confirmation of the Plan

4

and (iv) notice of non-voting status and election to opt out of certain third party release provisions (the "**Notice of Non-Voting Status**"). As further required by the Solicitation Procedures Order, the Debtors also caused the Confirmation Hearing Notice to be published in the national editions of *The Wall Street Journal*, the *San Francisco Chronicle*, *USA Today* and the *Los Angeles Times* on May 22, 2015, and in the Europe and Asia Edition of *The Wall Street* Journal on May 26, 2015. An affidavit of publication evidencing such publication notice was filed with the Bankruptcy Court on June 4, 2015 [Docket No. 588].

M.      Pursuant to the Solicitation Procedures Order, the voting deadline for the Voting Classes was 5:00 p.m. (prevailing Eastern Time) on June 19, 2015, unless such deadline was extended by the Debtors in accordance with an order of the Bankruptcy Court.

N.      On August 12, 2015, the Debtors filed the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of Altegrity, Inc. et al.* [Docket No. 811 ] attesting to, and certifying the method and results of, the ballot tabulation for the Voting Classes (the "**Voting Report**"). The voting results, as certified in the Voting Report, are reflected in the following chart:

| Debtor Name | Class | Class Description | Number Accepting % | Number Rejecting % | Amount Accepting % | Amount Rejecting % | Class Voting Result |
|---|---|---|---|---|---|---|---|
| Altegrity, Inc.* | A4 | Operating Debtors Secured Second Lien Notes Claims | 62 | 0 | $510,419,099.50 | $0.00 | ACCEPTS |
| | | | 100% | 0% | 100% | 0% | |
| Altegrity, Inc.* | A5 | Operating Debtors Secured Third Lien Notes Claims | 16 | 0 | $65,634,300.42 | $0.00 | ACCEPTS |
| | | | 100% | 0% | 100% | 0% | |

*Represents the result for the indicated class against all Debtors that have guaranteed the First Lien Notes, Second Lien Notes, Third Lien Notes and First Lien Credit Agreement, which includes all Debtors other than Altegrity Holding Corp.

5

| Debtor Name | Class | Class Description | Number Accepting % | Number Rejecting % | Amount Accepting % | Amount Rejecting % | Class Voting Result |
|---|---|---|---|---|---|---|---|
| Altegrity, Inc.* | A7-a | Operating Debtors Unsecured Notes Claims | 84 100% | 0 0% | $378,380,452.59 100% | $0.00 0% | ACCEPTS |
| Albatross Holding Company, LLC | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 1 100% | $0.00 0% | $1.00 100% | REJECTS |
| Albatross Marketing and Trading, LLC | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 1 100% | $0.00 0% | $1.00 100% | REJECTS |
| Altegrity Acquisition Corp. | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 1 100% | $0.00 0% | $1.00 100% | REJECTS |
| Altegrity Holding Corp. | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 3 100% | $0.00 0% | $3.00 100% | REJECTS |
| Altegrity Risk International LLC | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 1 100% | $0.00 0% | $1.00 100% | REJECTS |
| Altegrity Security Consulting, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 1 100% | $0.00 0% | $1.00 100% | REJECTS |
| Altegrity, Inc. | A7-b | Operating Debtors General Unsecured Claims | 118 77.12% | 35 22.88% | $2,816,398.88 59.50% | $1,916,857.02 40.50% | REJECTS |
| CVM Solutions, LLC | A7-b | Operating Debtors General Unsecured Claims | 5 83.33% | 1 16.67% | $285,442.87 99.999996% | $1.00 0.000004% | ACCEPTS |
| D, D & C, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 1 100% | $0.00 0% | $1.00 100% | REJECTS |
| Engenium Corporation | A7-b | Operating Debtors General Unsecured Claims | 0 0% | 1 100% | $0.00 0% | $1.00 100% | REJECTS |

| Debtor Name | Class | Class Description | Number Accepting % | Number Rejecting % | Amount Accepting % | Amount Rejecting % | Class Voting Result |
|---|---|---|---|---|---|---|---|
| FDC Acquisition, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 | 1 | $0.00 | $1.00 | REJECTS |
| | | | 0% | 100% | 0% | 100% | |
| HireRight Records Services, Inc. | A7-b | Operating Debtors General Unsecured Claims | 3 | 4 | $54,254.55 | $1,003.00 | REJECTS |
| | | | 42.86% | 57.14% | 98.18% | 1.82% | |
| HireRight Solutions, Inc. | A7-b | Operating Debtors General Unsecured Claims | 22 | 7 | $91,778.41 | $6,008.00 | ACCEPTS |
| | | | 75.86% | 24.14% | 93.86% | 6.14% | |
| HireRight Technologies Group, Inc. | A7-b | Operating Debtors General Unsecured Claims | 1 | 1 | $1,000.00 | $1.00 | REJECTS |
| | | | 50.00% | 50.00% | 99.90% | 0.10% | |
| HireRight, Inc. | A7-b | Operating Debtors General Unsecured Claims | 26 | 13 | $1,361,499.80 | $1,994,028.94 | REJECTS |
| | | | 66.67% | 33.33% | 40.57% | 59.43% | |
| KCMS, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 | 1 | $0.00 | $1.00 | REJECTS |
| | | | 0% | 100% | 0% | 100% | |
| KIA Holding, LLC | A7-b | Operating Debtors General Unsecured Claims | 1 | 1 | $1.00 | $1.00 | REJECTS |
| | | | 50.00% | 50.00% | 50.00% | 50.00% | |
| Kroll Associates, Inc. | A7-b | Operating Debtors General Unsecured Claims | 12 | 4 | $509,033.57 | $251,142.80 | ACCEPTS |
| | | | 75.00% | 25.00% | 66.96% | 33.04% | |
| Kroll Background America, Inc. | A7-b | Operating Debtors General Unsecured Claims | 6 | 1 | $96,965.57 | $1.00 | ACCEPTS |
| | | | 85.71% | 14.29% | 99.99999% | 0.00001% | |
| Kroll Crisis Management Group, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 | 1 | $0.00 | $1.00 | REJECTS |
| | | | 0% | 100% | 0% | 100% | |
| Kroll Cyber Security, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 | 1 | $0.00 | $1.00 | REJECTS |
| | | | 0% | 100% | 0% | 100% | |
| Kroll Factual Data, Inc. | A7-b | Operating Debtors General Unsecured Claims | 1 | 1 | $90,357.12 | $1.00 | REJECTS |
| | | | 50.00% | 50.00% | 99.99999% | 0.00001% | |
| Kroll Holdings, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 | 1 | $0.00 | $1.00 | REJECTS |
| | | | 0% | 100% | 0% | 100% | |

| Debtor Name | Class | Class Description | Number Accepting % | Number Rejecting % | Amount Accepting % | Amount Rejecting % | Class Voting Result |
|---|---|---|---|---|---|---|---|
| Kroll Inc. | A7-b | Operating Debtors General Unsecured Claims | 2 / 50.00% | 2 / 50.00% | $338,503.13 / 97.45% | $8,843.52 / 2.55% | REJECTS |
| Kroll Information Assurance, Inc. | A7-b | Operating Debtors General Unsecured Claims | 3 / 60.00% | 2 / 40.00% | $2,930.11 / 21.31% | $10,819.44 / 78.69% | REJECTS |
| Kroll Information Services, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 / 0% | 1 / 100% | $0.00 / 0% | $1.00 / 100% | REJECTS |
| Kroll International, Inc. | A7-b | Operating Debtors General Unsecured Claims | 0 / 0% | 1 / 100% | $0.00 / 0% | $1.00 / 100% | REJECTS |
| Kroll Ontrack Inc. | A7-b | Operating Debtors General Unsecured Claims | 21 / 91.30% | 2 / 8.70% | $966,015.73 / 85.31% | $166,402.60 / 14.69% | ACCEPTS |
| Kroll Recovery LLC | A7-b | Operating Debtors General Unsecured Claims | 0 / 0% | 1 / 100% | $0.00 / 0% | $1.00 / 100% | REJECTS |
| Kroll Security Group, Inc. | A7-b | Operating Debtors General Unsecured Claims | 1 / 50.00% | 1 / 50.00% | $1,232.66 / 99.92% | $1.00 / 0.08% | REJECTS |
| National Diagnostics, Inc. | A7-b | Operating Debtors General Unsecured Claims | 35 / 67.31% | 17 / 32.69% | $37,608.55 / 2.16% | $1,705,031.44 / 97.84% | REJECTS |
| Ontrack Data Recovery, Inc. | A7-b | Operating Debtors General Unsecured Claims | 1 / 50.00% | 1 / 50.00% | $1,900.00 / 99.95% | $1.00 / 0.05% | REJECTS |
| Personnel Records International, LLC | A7-b | Operating Debtors General Unsecured Claims | 0 / 0% | 1 / 100% | $0.00 / 0% | $1.00 / 100% | REJECTS |
| The Official Information Company | A7-b | Operating Debtors General Unsecured Claims | 0 / 0% | 1 / 100% | $0.00 / 0% | $1.00 / 100% | REJECTS |
| Altegrity, Inc.* | B4 | Liquidating Debtors Secured Second Lien Notes Claims | 62 / 100% | 0 / 0% | $510,419,099.50 / 100% | $0.00 / 0% | ACCEPTS |
| Altegrity, Inc.* | B5 | Liquidating Debtors Secured Third Lien Notes Claims | 16 / 100% | 0 / 0% | $65,634,300.42 / 100% | $0.00 / 0% | ACCEPTS |

| Debtor Name | Class | Class Description | Number Accepting % | Number Rejecting % | Amount Accepting % | Amount Rejecting % | Class Voting Result |
|---|---|---|---|---|---|---|---|
| US Investigations Services, LLC | B6 | Liquidating Debtors Other Priority Claims | 5 | 1 | $21,976.03 | $1.00 | ACCEPTS |
| | | | 83.33% | 16.67% | 99.99% | 0.01% | |
| US Investigations Services, LLC | B7 | Liquidating Debtors Unsecured Claims | 101 | 2 | $378,721,472.96 | $2,897.50 | ACCEPTS |
| | | | 98.06% | 1.94% | 99.999% | 0.001% | |
| USIS International, Inc. | B7 | Liquidating Debtors Unsecured Claims | 85 | 1 | $378,480,452.59 | $1.00 | ACCEPTS |
| | | | 98.84% | 1.16% | 99.9999997% | 0.0000003% | |
| John D. Cohen, Inc. | B7 | Liquidating Debtors Unsecured Claims | 84 | 1 | $378,380,452.59 | $1.00 | ACCEPTS |
| | | | 98.82% | 1.18% | 99.9999997% | 0.0000003% | |
| USIS Worldwide, Inc. | B7 | Liquidating Debtors Unsecured Claims | 85 | 1 | $378,380,453.59 | $1.00 | ACCEPTS |
| | | | 98.84% | 1.16% | 99.9999997% | 0.0000003% | |

O.       On August 12, 2015, the Debtors made further modifications to the Plan intended to address the formal and informal objections to the Plan (collectively, the "**Technical Modifications**").

P.       On June 16, 2015, June 19, 2015, July 24, 2015 and August 12, 2015, respectively, the Debtors filed the *Plan Supplement in Connection with the Debtors' Joint Chapter 11 Plan* [Docket No. 641], the *First Supplement to the Plan Supplement in Connection with the Debtors' Joint Chapter 11 Plan* [Docket No. 663], the *Second Supplement to the Plan Supplement in Connection with the Debtors' Joint Chapter 11 Plan* [Docket No. 765] and the *Third Supplement to the Plan Supplement in Connection with the Debtors' Joint Chapter 11 Plan* [Docket No. 813] (including all exhibits thereto and as amended, modified, or supplemented from time to time, collectively, the "**Plan Supplement Documents**"), which included, as exhibits thereto, draft forms, signed copies or summaries of material terms of the following documents

9

relating to the Plan and/or to be executed, delivered, assumed and/or performed in connection with the consummation of the Plan on the Effective Date:

| Exhibit | Plan Supplement Document |
|---------|--------------------------|
| A-1 | Implementation / Transaction Steps to Establish New Altegrity |
| A-2 | Post-Emergence Structure Chart |
| B-1 | Form of By-Laws for New Altegrity |
| B-2 | Form of Certificate of Incorporation for New Altegrity |
| B-3 | Form of New Altegrity Shareholders Agreement |
| B-4 | Board of Directors of New Altegrity |
| B-5 | Officers of New Altegrity |
| B-6 | Form of By-Laws for Altegrity Holding Corp. |
| B-7 | Form of Certificate of Incorporation for Altegrity Holding Corp. |
| C-1 | Form of Limited Liability Company Agreement for Primary Operating Debtors |
| C-2 | Form of Limited Liability Company Agreement for Other Debtors |
| C-3 | Board of Directors of Reorganized Debtors other than New Altegrity |
| C-4 | Officers of Reorganized Debtors other than New Altegrity |
| D | Number of Shares of New Common Stock of New Altegrity and Altegrity Holding Corp. Initially Issued and Outstanding |
| F-1 | Commitment Letter and Form of New Revolving Credit Facility Agreement |
| F-2 | Form of New Guarantee and Collateral Agreement |
| F-3 | Form of New Intercreditor Agreement |
| G-1 | Form of Notes Supplemental Indenture |
| G-2 | Form of Notes Issued Pursuant to the Notes Supplemental Indenture |
| H-1 | First Lien Credit Agreement Amendment |
| H-2 | First Lien Notes Third Supplemental Indenture |
| I-1 | Oversight Committee Members |
| I-2 | Oversight Committee Operating Procedures |
| J-1 | Claims Resolution Committee Members |
| J-2 | Claims Resolution Committee Operating Procedures |
| K-1 | Specified Claims Oversight Committee Members |
| K-2 | Specified Claims Oversight Committee Operating Procedures |

| L | Treatment of Intercompany Claims in Class A9 |
|---|---|
| M | D&O Insurance Tail Coverage Terms |
| N-1 | Operating Debtors Executory Contracts and Unexpired Leases to be Rejected |
| N-2 | Operating Debtors Executory Contracts and Unexpired Leases to be Assumed or Assumed and Assigned |
| O | Liquidating Debtors Executory Contracts and Unexpired Leases to be Assumed or Assumed and Assigned |
| P-1 | Form of Operating Debtors Notice of Proposed Assumption or Assumption and Assignment |
| P-2 | Form of Operating Debtors Notice of Rejection |
| P-3 | Form of Liquidating Debtors Notice of Rejection |
| Q | Retained Causes of Action, Claims, Obligations and Liabilities |
| R | Form of Letter Agreement |

All such materials comply with the terms of the Plan, and the filing and notice of such Plan Supplement Documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order and no other or further notice is or shall be required.

Q.    Pursuant to the Solicitation Procedures Order, the deadline to file objections to the Plan was 4:00 p.m. (prevailing Eastern Time) on June 19, 2015 unless such deadline was extended by the Debtors. A total of 15 objections to confirmation of the Plan (each, a "**Confirmation Objection**") were filed with the Bankruptcy Court, which were filed by the following parties:    (i) the Texas Comptroller of Public Accounts [Docket No. 650]; (ii) the United States [Docket No. 654]; (iii) Carrie Wirt [Docket No. 655]; (iv) the Tennessee Department of Revenue [Docket No. 656]; (v) the Louisiana Department of Revenue [Docket No. 657]; (vi) the United States Trustee [Docket No. 671], (vii) the so-called "Bus Driver Plaintiffs" [Docket No. 673], (viii) Oracle America, Inc. [Docket No. 658], (ix) Banc of America Leasing & Capital LLC [Docket No. 661], (x) CBCInnovis, Inc. and FD Holdings, LLC [Docket

11

No. 676], (xi) Fairfield Property Associates, LLC [Docket No. 678], (xii) Verizon Communications Inc. [Docket No. 683], (xiii) Salesforce.com [Docket No. 685], (xiv) LexisNexis [Docket No. 725] and (xv) Liberty Mutual Insurance Company [Docket No. 733].

R.     On August 12, 2015, the Debtors filed the following in support of confirmation of the Plan: (a) the *Debtors' Memorandum of Law in Support of and in Response to Objections to Confirmation of the Joint Chapter 11 Plan of Altegrity, Inc., et al.* [Docket No. 814] (the "**Confirmation Memorandum**"); (b) the *Declaration of Kevin McShea In Support of Confirmation of the Joint Chapter 11 Plan of Altegrity, Inc., et al.* [Docket No. 809] (the "**McShea Declaration**"); and (c) the *Declaration of Lloyd Sprung in Support of Confirmation of the Joint Chapter 11 Plan of Altegrity, Inc., et al.* [Docket No. 810] (the "**Sprung Declaration**").

S.     The Confirmation Hearing was held before the Bankruptcy Court on August 14, 2015.

NOW, THEREFORE, based upon the Bankruptcy Court's review of the Plan, the Disclosure Statement, the Confirmation Memorandum, the McShea Declaration, the Sprung Declaration and the Voting Report and upon all of the evidence proffered or adduced and the arguments of counsel made at ~~or in connection with~~ the Confirmation Hearing, ~~the record of these Chapter 11 Cases,~~ and the record made at the Confirmation Hearing, ~~and upon all the proceedings heretofore had in these Chapter 11 Cases,~~ and after due deliberation thereon and good and sufficient cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law:

12

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### IT IS HEREBY FOUND AND DETERMINED THAT:

1.      <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157,</u> <u>1334(a), 1408 and 1409)</u>.  The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.      <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.  As set forth below, the Debtors have met that burden.

3.      <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the ~~docket in these Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at or in connection with the hearings held before this Bankruptcy Court during these Chapter 11 Cases, including, without limitation, the~~ hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

4.      <u>Transmittal and Mailing of Materials; Adequate and Sufficient Notice</u>.  The Solicitation Packages, Notice of Non-Voting Status and the Confirmation Hearing Notice

were transmitted and served, and the Confirmation Hearing Notice was published, in compliance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and such transmittal, service and publication was adequate and sufficient, and no other or further notice is or shall be required. Adequate and sufficient notice and publication of the Confirmation Hearing, the Solicitation Procedures Order, and the dates and deadlines provided for in the Solicitation Procedures Order was given in compliance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice or publication is or shall be required. All parties in interest in these Chapter 11 Cases had a full and fair opportunity to appear and be heard at the Confirmation Hearing and no other or further notice is or shall be required. *except as provided in Rider A.*

5. <u>Technical Modifications to the Plan and the Plan Supplement</u>. The Technical Modifications and the technical modifications to the Plan Supplement [Docket No. 812 ] filed with the Bankruptcy Court on August 12, 2015 (collectively, the "**Modifications**") comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The filing and service of the Modifications and the description of the Modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of the Chapter 11 Cases. The Plan, as modified by the Modifications, constitutes the "Plan" and the Plan Supplement, as modified by the Modifications, constitutes the "Plan Supplement". The Modifications are neither material nor do they adversely change the treatment of any holders of Claims and Interests under the Plan that voted to accept the plan, do not require the re-solicitation of any of the Voting Classes, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019. In accordance with section 1127 of

14

the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Modifications.  No holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications.

6.     Voting Results.  As described more fully in the Voting Report, Classes A4, A5, A7-a, B4, B5, B6, B7 for all Debtors voted to accept the Plan and Class A7-b, with respect to certain Debtors[4] (collectively, the "**Accepting Class A7-b Creditors**"), voted to accept the Plan.  Class A7-b with respect to certain other Debtors[5] (collectively, the "**Rejecting Class A7-b Creditors**") voted to reject the Plan.  *See* Voting Report, Exhibit A.

7.     Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)     Proper Classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to DIP Claims, Administrative Claims, Priority Wage Claims, Priority Tax Claims, Claims for Accrued Professional Compensation and statutory fees due and owing to the U.S. Trustee, which need not be classified under the Plan, the Plan designates twenty (20) Classes of Claims and Interests in the Debtors.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in such Class.  Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and therefore the Plan does not unfairly discriminate

---

[4]     Holders of Class A-7b Claims at the following Debtors voted to accept the Plan: CVM Solutions, LLC; HireRight Solutions, Inc.; Kroll Associates, Inc.; Kroll Background America, Inc.; and Kroll Ontrack Inc.

[5]     Holders of Class A-7b Claims at the following Debtors voted to reject the Plan: Altegrity, Inc.; Albatross Holding Company, LLC; Albatross Marketing and Trading, LLC; Altegrity Acquisition Corp.; Altegrity Holding Corp.; Altegrity Risk International LLC; Altegrity Security Consulting, Inc.; D, D & C, Inc.; Engenium Corporation; FDC Acquisition, Inc.; HireRight Records Services, Inc.; HireRight Technologies Group, Inc.; HireRight, Inc.; KCMS, Inc.; KIA Holding, LLC; Kroll Crisis Management Group, Inc.; Kroll Cyber Security, Inc.; Kroll Factual Data, Inc.; Kroll Holdings, Inc.; Kroll Inc.; Kroll Information Assurance, Inc.; Kroll Information Services, Inc.; Kroll International, Inc.; Kroll Recovery LLC; Kroll Security Group, Inc.; National Diagnostics, Inc.; Ontrack Data Recovery, Inc.; Personnel Records International, LLC; and The Official Information Company.

15

among holders of Claims or Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article III of the Plan specifies that Classes A1, A2, A3, A6, B1, B2 and B3 are unimpaired under the Plan, and specifies the treatment of Claims in those Classes, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article III of the Plan designates Classes A4, A5, A7-a, A7-b, A8, A10, B4, B5, B6 and B7 as impaired under the Plan (collectively, the "**Impaired Classes**"), and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)    Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtors for each Claim or Interest in a particular Class unless the holder of a particular Claim or Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, as the case may be, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    Implementation of Plan (11 U.S.C. § 1123(a)(5)).  In compliance with section 1123(a)(5) of the Bankruptcy Code, Article V and various other provisions of the Plan set forth the means for implementation of the Plan, which means are adequate and proper. All documents necessary to implement the Plan, including, without limitation, those contained in the Plan Supplement and all other relevant and necessary documents, have been developed and negotiated in good faith and at arms' length and, subject to and upon the occurrence of the Effective Date, shall be valid, binding and enforceable agreements and not be in conflict with any federal or state law.

(vi)    Charter Provisions (11 U.S.C. § 1123(a)(6)).  In compliance with section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtors' Corporate Governance Documents, as applicable, prohibit the issuance of nonvoting equity interests, so long as, and to the extent that, the issuance of nonvoting securities is prohibited.

(vii)    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).  Pursuant to Section 5.9 of the Plan, the identity of the members of the board of directors of New Altegrity and of each of the other Reorganized Debtors and the nature and compensation for any director who is an "insider" under section 101(31) of the Bankruptcy Code were disclosed and filed with the Bankruptcy Court as part of the Plan Supplement.  Upon the occurrence of the Effective Date, the new board of New Altegrity will consist of five directors designated by the holders of a majority of the New Common Stock.  The provisions of the Plan for the selection of directors and officers of the Reorganized Debtors are consistent with the interests of creditors and equity holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii)    Additional Plan Provisions (11 U.S.C. § 1123(b)).  The provisions of the Plan are appropriate and consistent with the provisions of the Bankruptcy Code.

(ix)     Impairment/Unimpairment of Classes of Claims and Equity Interests (§ 1123(b)(1)).  Pursuant to Article III of the Plan, Class A4 (Operating Debtors Secured Second Lien Notes Claims), Class A5 (Operating Debtors Secured Third Lien Notes Claims), Class A7-a (Operating Debtors Unsecured Notes Claims), Class A7-b (Operating Debtors General Unsecured Claims), Class A8 (Altegrity, Inc. Junior Subordinated Notes Claims), Class A10 (Interests in Altegrity Holding Corp.), Class B4 (Liquidating Debtors Secured Second Lien Notes Claims), Class B5 (Liquidating Debtors Secured Third Lien Notes Claims), Class B6 (Liquidating Debtors Other Priority Claims) and Class B7 (Liquidating Debtors Unsecured Claims) are impaired; and Class A1 (Operating Debtors First Lien Credit Agreement Claims), Class A2 (Operating Debtors First Lien Notes Claims), Class A3 (Operating Debtors Lien Claims), Class A6 (Operating Debtors Other Priority Claims), Class B1 (Liquidating Debtors First Lien Credit Agreement Claims), Class B2 (Liquidating Debtors First Lien Notes Claims and Class B3 (Liquidating Debtors Lien Claims) are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code, as provided herein, in the Plan and in the Plan Supplement.

(x)     Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  Section 6.1 of the Plan provides for the assumption of all executory contracts and unexpired leases of the Operating Debtors as of the Effective Date, unless such executory contract or unexpired lease: (1) was assumed or rejected previously by the Debtors pursuant to a Final Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an executory contract or unexpired lease to be rejected pursuant to the Plan Supplement before the Effective Date.  Section 6.1 of the Plan further provides for the rejection of all executory contracts and unexpired leases of the Liquidating Debtors as of the Effective Date, unless such executory contract or unexpired lease: (1) was assumed or rejected previously by the Debtors pursuant to a Final Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan Supplement before the Effective Date.

(xi)     Cure of Defaults (11 U.S.C. § 1123(d)).  Section 6.3 of the Plan provides for satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All cure amounts have been or will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

(xii)     Bankruptcy Rules 3016(a) and (b).  The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.  The filing of the Disclosure Statement with the Clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

8. Debtors' Compliance with the Applicable Provisions of the Bankruptcy

Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(i) the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

(ii) the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Bankruptcy Court; and

(iii) the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

9. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code. The Debtors, the Ad Hoc Group of First Lien

Creditors, the First Lien Credit Agreement Agent, the First Lien Notes Trustee, the Collateral

Agents, the Ad Hoc Group of Second and Third Lien Creditors, the Consenting Interest Holders,

the Indenture Trustees, the Creditors' Committee and their respective counsel and advisors

participated in good faith in negotiating, at arms' length, the Plan and the contracts, instruments,

releases, agreements and documents related to or necessary to implement, effectuate and

consummate the Plan, including, without limitation, the Plan Supplement Documents. Each of

the Debtors, the Ad Hoc Group of First Lien Creditors, the First Lien Credit Agreement Agent,

the First Lien Notes Trustee, the Collateral Agents, the Consenting Junior Lien Creditors, the

Consenting Interest Holders, the Indenture Trustees, the Creditors' Committee and their

respective counsel and advisors also participated in good faith in each of the actions taken to

bring about, and in satisfying each of the conditions precedent to, confirmation and

consummation of the Plan. The Debtors' good faith is evidenced from the record of the Chapter

~~11 Cases, including, among other things,~~ the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, the formulation of the Plan and all related pleadings, exhibits, ᴀnd statements and comments regarding confirmation of the Plan. ~~and other proceedings held in these Chapter 11 Case~~s. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of effecting a reorganization of the Debtors.

10.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Except for certain fees and expenses payable under or approved pursuant to the Order Authorizing the Debtors to Assume the Restructuring Support Agreement [Docket No. 208], or the Final DIP Order, or incurred by the Claims Resolution Committee or the Disbursing Agents, any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

11.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. Exhibits B-4, B-5, C-3 and C-4 to the Plan Supplement disclose the identities and affiliations of the individuals proposed to serve, as of the Effective Date, as directors or officers of the Reorganized Debtors. The appointment of such individuals to such positions is consistent with the interests of holders of Claims and Interests and public policy, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

12.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors' business operations are not subject to rate regulation by any governmental regulatory commission;

therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable to confirmation of the Plan and these Chapter 11 Cases.

13.     Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis attached as Exhibit D to the Disclosure Statement and the other evidence proffered or adduced at or in connection with the Confirmation Hearing in support of the Plan (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of a Claim or Interest in an Impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

14.     Acceptance by the Requisite Classes of Creditors and Interest Holders (11 U.S.C.§ 1129(a)(8)).  Classes A4, A5, A7-a, A7-b, B4, B5, B6 and B7 are the only Impaired Classes entitled to vote on the Plan. As evidenced in the Voting Report, Classes A4, A5, A7-a, B4, B5, B6, B7 and the Accepting Class A7-b Creditors voted to accept the Plan, and the Rejecting Class A7-b Creditors voted to reject the Plan.  Classes A1, A2, A3, A6, B1, B2 and B3 are unimpaired under the Plan, and therefore are deemed to have accepted the Plan.  The Plan provides that holders of Claims and Interests in Classes A8 and A10 will not receive any distribution or retain any property on account of such Claims or Interests, as the case may be, and these Classes are therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (collectively, the "**Deemed Rejecting Classes**").  Notwithstanding that section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to all Classes,

*Subject to the provisions of paragraph 119 hereof*

through section 1129(b) of the Bankruptcy Code, the Plan may be confirmed over the nonacceptance of the Rejecting Class A7-b Creditors and the Deemed Rejecting Classes.

15.   Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)).   The Plan's treatment of DIP Claims, Administrative Claims, Priority Wage Claims, Priority Tax Claims, Claims for Accrued Professional Compensation and statutory fees due and owing to the U.S. Trustee satisfies section 1129(a)(9) of the Bankruptcy Code.

16.   Acceptance By at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). As evidenced by the Voting Report, Classes A4, A5, A7-a, B4, B5, B6 and B7, which are Impaired Classes, along with the Accepting Class A7-b Creditors, voted to accept the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider. Consequently, section 1129(a)(10) of the Bankruptcy Code is satisfied.

17.   Feasibility (11 U.S.C. § 1129(a)(11)).   The Debtors have established by a preponderance of the evidence that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, other than the orderly wind-down of the Liquidating Debtors as provided by the Plan. To satisfy their burden under section 1129(a)(11) of the Bankruptcy Code, as set forth in the Sprung Declaration, the Debtors, among other things, prepared and included the financial projections attached as Exhibits E-1 and E-2 to the Disclosure Statement (the "**Financial Projections**"), and obtained additional financing commitments through the New Revolving Credit Facility. The Financial Projections and the Sprung Declaration, along with the other evidence proffered or adduced at or in connection with the Confirmation Hearing, support the finding that the Debtors will have sufficient liquidity to meet their obligations arising under the Plan or otherwise. The Bankruptcy Court finds that the Financial Projections and the evidence proffered or adduced at or in

connection with the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that the Plan is feasible and confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, other than the orderly wind-down of the Liquidating Debtors as provided by the Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

18.    Payment of Certain Fees (11 U.S.C. § 1129(a)(12)). Section 2.5 of the Plan provides that the Debtors or Reorganized Debtors, as applicable, shall pay all outstanding U.S. Trustee Fees for each of the Reorganized Debtors when due in the ordinary course, until such time as the Bankruptcy Court enters (i) a final decree in such Reorganized Debtor's Chapter 11 Case, (ii) a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or (iii) a Final Order dismissing such debtor's Chapter 11 Case. Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

19.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Pursuant to Section 5.11 of the Plan, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law. Therefore, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

20.    Domestic Support Obligations; Unsecured Claims Against Individual Debtors; Transfers by Non-Profit Organization (11 U.S.C. § 1129(a)(14)-(16)). None of the Debtors have domestic support obligations, are individuals, or are nonprofit organizations; therefore, sections 1129(a)(14)-(16) of the Bankruptcy Code are not applicable to confirmation of the Plan and these Chapter 11 Cases.

21.     Valuation. Pursuant to the valuation analyses set forth in the Disclosure Statement as supported by the Sprung Declaration, the enterprise value of the Debtors is insufficient to support a distribution to holders of Interests in Altegrity Holding Corp. under absolute priority principles.

22.     Confirmation of Plan Over Non-Acceptance of Certain Impaired Classes (11 U.S.C. §1129(b)). The classification and treatment of Claims and Interests in the Plan is proper pursuant to section 1122 of the Bankruptcy Code and does not discriminate unfairly pursuant to section 1129(b)(1) of the Bankruptcy Code notwithstanding that the Rejecting Class A7-b Creditors and the Deemed Rejecting Classes (collectively, the "**Rejecting Classes**") rejected or were deemed to reject the Plan. Based on the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Plan is fair and equitable and does not discriminate unfairly with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no holder of any claim or interest of the Debtors that is junior to the claims of the Rejecting Classes is receiving or retaining any property under the Plan on account of such junior claims or interests and the holders of Claims against the Debtors that are senior to the claims of the Rejecting Classes are receiving distributions, the value of which is less than 100% of the Allowed amount of their Claims.[6] Accordingly, the requirements of section 1129(b)(1) and (b)(2) of the Bankruptcy Code are satisfied with respect to the Rejecting Classes, and the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to the Rejecting Classes. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129(b) of the Bankruptcy Code.

---

[6]   For the purpose of maintaining the existing corporate structure of the Debtors and the Reorganized Debtors and the administrative convenience associated therewith, certain Intercompany Claims, Interests in Subsidiary Debtors that are Operating Debtors and Interests in Liquidating Debtors will continue in place following the Effective Date.

23.     Only One Plan (11 U.S.C. §1129(c)).    Other than the Plan (including previous versions thereof which were subsequently amended), no other plan has been filed in the Chapter 11 Cases.  As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

24.     Purpose of the Plan (11 U.S.C. §1129(d)).    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the requirements of section 5 of the Securities Act, and there has been no filing by any governmental unit asserting any such attempted avoidance, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

25.     Satisfaction of Confirmation Requirements.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

26.     Good Faith Solicitation and Participation (11 U.S.C. § 1125(e)).    Based upon the record before the Bankruptcy Court, the Debtors have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Plan securities offered and sold under the Plan, and therefore will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the New Common Stock offered and sold under the Plan or the AHC Common Stock distributed pursuant to the Plan.

*The Debtors' entry into*

27. <u>Executory Contracts and Unexpired Leases</u>. The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption or rejection of executory contracts and unexpired leases as contemplated by the Plan, including without limitation, the provisions relating to adequate assurance of future performance. The evidence supporting adequate assurance of future performance proffered or adduced by the Debtors at, or prior to, or in the McShea Declaration filed in connection with, the Confirmation Hearing, is reasonable, persuasive, credible, and accurate, and has not been controverted by other evidence.

28. <u>The New Revolving Credit Facility and the New Revolving Credit Facility Documents</u>. The ~~terms and conditions of~~ the New Revolving Credit Facility, and any security agreements and similar instruments with respect to collateral securing any interest or property in connection with the New Revolving Credit Facility and all other documents or instruments entered into in connection with the New Revolving Credit Facility, including, without limitation, the Commitment Letter and Form of New Revolving Credit Facility Agreement attached as Exhibit F-1 to the Plan Supplement, the Form of New Guarantee and Collateral Agreement attached as Exhibit F-2 to the Plan Supplement and the Form of New Intercreditor Agreement (the "**New Intercreditor Agreement**") attached as Exhibit F-3 to the Plan Supplement (collectively, the "**New Revolving Credit Facility Documents**"), is ~~are fair and reasonable and are~~ approved. The New Revolving Credit Facility is an essential element of the Plan and entry into and consummation of the transactions contemplated by the New Revolving Credit Facility Documents is in the best interests of the Debtors, the Estates, and holders of Claims and Interests and is approved in all respects. The Debtors have exercised reasonable business judgment in connection with the New Revolving Credit Facility and have provided sufficient and adequate notice thereof. The proposed terms thereunder have been negotiated in good faith and at arms'

length, are supported by reasonably equivalent value and fair consideration and are fair and reasonable. The New Revolving Credit Facility Documents shall each, subject to the occurrence of the Effective Date, be valid, binding, and enforceable against the Debtors, the Reorganized Debtors, and their affiliates, ~~and do not conflict with the terms of the Plan or this Confirmation Order or any applicable laws~~. The Debtors or the Reorganized Debtors, as applicable, are authorized, without further notice to or action, order, or approval of this Bankruptcy Court or any other Person, to enter into and fully perform their obligations under the New Revolving Credit Facility consistent with the New Revolving Credit Facility Documents, and execute and deliver all agreements, documents, instruments, and certificates relating to the New Revolving Credit Facility and to incur and pay all fees and expenses and all other obligations required to be paid in connection therewith as and when they come due under the terms of the New Revolving Credit Facility Documents. Upon execution and delivery, the New Revolving Credit Facility Documents shall become effective in accordance with their respective terms and conditions. The guarantees, mortgages, pledges, Liens and other security interests, and all other consideration granted pursuant to or in connection with the New Revolving Credit Facility or the New Revolving Credit Facility Documents are or will be (as the case may be) and are hereby deemed to be granted in good faith, for good and valuable consideration and for legitimate business purposes as an inducement to the Lenders (as defined in the New Revolving Credit Facility Agreement) to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance or recharacterization and shall not subject the Lenders or the Agents (each as defined in the New Revolving Credit Facility Agreement) to any liability by reason of incurrence of such obligation

*The Debtors' entry into*

or grant of such Liens, guarantees or security interests under applicable federal or state law, including, but not limited to, successor or transferee liability.

29. <u>Letter Agreement</u>. ~~The terms and conditions of~~ the Letter Agreement among the Debtors, the First Lien Lenders and the First Lien Credit Agreement Agent, to be dated on or before the Effective Date (the "**Letter Agreement**"), in substantially the form attached to the Plan Supplement as Exhibit R, ~~are fair and reasonable and are~~ *is* approved. The Letter Agreement shall be valid, binding, and enforceable against the Debtors and the Reorganized Debtors, the First Lien Lenders and the First Lien Credit Agreement Agent in accordance with its respective terms and conditions. The Debtors or the Reorganized Debtors, as applicable, are authorized, without further notice to or action, order, or approval of this Bankruptcy Court or any other Person, to enter into and fully perform their obligations under the Letter Agreement, and execute and deliver all agreements, documents, instruments and certificates relating to the Letter Agreement.

30. First Lien Lenders holding more than 90 percent of the aggregate principal balance of the Loans and L/C Exposure (as defined in the First Lien Credit Agreement) (which First Lien Lenders constitute "Required Lenders", as defined in the First Lien Credit Agreement) have expressly consented to the confirmation of the Plan, the entry of this Confirmation Order and the relief ~~provided herein.~~ *The Debtors' entry into*

31. <u>The New Second Lien Notes and the New Second Lien Notes Documents</u>. ~~The terms and conditions of each of~~ the New Second Lien Notes Documents, including the New Second Lien Notes, in substantially the form attached to the Plan Supplement as Exhibits G-1 and G-2, ~~are fair and reasonable and are~~ *is* approved. Each holder of Second Lien Notes is deemed to consent to the New Second Lien Notes Documents attached to the Plan Supplement as

Exhibits G-1 and G-2.  The New Second Lien Notes and the New Second Lien Notes Documents shall each, subject to the occurrence of the Effective Date, be legal, valid, binding, authorized and enforceable against the Debtors, the Reorganized Debtors, and their affiliates, as applicable, and do not conflict with the terms of the Plan or this Confirmation Order or any applicable laws. The Debtors or the Reorganized Debtors, as applicable, the Second Lien Notes Trustee, as applicable, and the Second Lien Notes Collateral Agent, as applicable, are authorized, without further notice to or action, order, or approval of this Bankruptcy Court or any other Person, to enter into and, subject to the occurrence of the Effective Date, fully perform their obligations under the New Second Lien Notes Documents, and execute and deliver all agreements, documents, instruments, and certificates relating to the New Second Lien Notes or the New Second Lien Notes Documents and to incur and pay all fees and expenses and all other obligations required to be paid in connection therewith as and when they come due under the terms of the New Second Lien Notes Documents.  Subject to the occurrence of the Effective Date, upon execution and delivery, the New Second Lien Notes and New Second Lien Notes Documents shall become effective in accordance with their respective terms and conditions.

32.     Reinstatement.  On the Effective Date, (A) all First Lien Indebtedness shall be Reinstated in accordance with its terms (including as amended by the First Lien Debt Amendments) and sections 1123(b)(1) and 1124 of the Bankruptcy Code and (i) no Default or Event of Default (each as defined in the First Lien Notes Indenture) shall have occurred and be continuing, (ii) no Default or Event of Default (each as defined in the First Lien Credit Agreement) shall have occurred and be continuing, and (iii) unless the First Lien Issuing Banks (as defined in the First Lien Credit Agreement) or the First Lien Credit Agreement Agent shall otherwise agree in writing, the Debtors or the Reorganized Debtors, as applicable, shall deliver

to the First Lien Issuing Banks cash collateral with respect to all outstanding Letters of Credit and the Obligations (as defined in the First Lien Credit Agreement) thereunder and related thereto with cash or deposit account balances in an amount equal to 103 percent of the L/C Exposure (as defined in the First Lien Credit Agreement), (B) no default interest, prepayment premiums, make-whole payments, penalties or other premiums shall be due in respect of any First Lien Indebtedness including, without limitation, pursuant to (i) Section 2.07 of the First Lien Credit Agreement, (ii) Section 2.12, 2.13(d) and 2.16 of the First Lien Credit Agreement or (iii) Section 602 of the First Lien Notes Indenture, (C) the First Lien Loan Documents, the First Lien Notes Indenture, the First Lien Notes, the Note Security Documents (as defined in the First Lien Notes Indenture), the First Lien Credit Agreement Amendment and the Letter Agreement (collectively, the "**First Lien Documents**") shall continue to constitute legal, valid, binding and authorized obligations of the Debtors and Reorganized Debtors, as applicable, enforceable in accordance with their terms, and (D) all Liens and security interests granted pursuant to the Note Security Documents (as defined in the First Lien Notes Indenture) or the Security Documents (as defined in the First Lien Credit Agreement) shall continue to be valid, legal, binding and enforceable perfected Liens on, and perfected security interests in, the collateral granted thereunder, in accordance with the terms of the First Lien Documents, and are hereby deemed to be granted in good faith, for fair consideration, reasonably equivalent value and for legitimate business purposes as an inducement to the Lenders (as defined in the First Lien Credit Agreement) to extend credit thereunder, (E) the Commitments, including without limitation the Revolving Credit Commitments, the Swingline Commitments and the L/C Commitments (each, as defined in the First Lien Credit Agreement) shall be of no further force or effect, and the lenders under the First Lien Credit Agreement and the First Lien Credit Agreement Agent shall

be under no obligation to extend Revolving Loans, Swingline Loans, Letters of Credit (each, as defined in the First Lien Credit Agreement), including by permitting the renewal or extension of Letters of Credit that are or were outstanding under the First Lien Credit Agreement as of the Petition Date, and (F) the Debtors or the Reorganized Debtors, as applicable, are authorized, without further notice to or action, order, or approval of this Bankruptcy Court or any other Person (i) to fully perform their obligations under the First Lien Documents, (ii) to execute and deliver all agreements, documents, instruments, and certificates relating to the reinstatement of First Lien Indebtedness contemplated hereby, and (iii) to incur and pay all fees and expenses and all other obligations required to be paid in connection therewith as and when they come due under the terms of the First Lien Documents. Notwithstanding anything herein to the contrary, the Court's retention of jurisdiction pursuant to this Confirmation Order or the Plan shall not govern the enforcement or adjudication of any rights or remedies relating to or arising in connection with the First Lien Indebtedness.

33.     Releases by the Debtors.     The release and discharge of all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities (other than the post-Effective Date obligations of any Released Party under the Plan or any document, instrument or agreement executed to implement the Plan, and any Cause of Action, obligation or liability expressly preserved by the Plan or the Plan Supplement) as set forth in Section 9.2 of the Plan (the "**Debtor Releases**") represents a valid exercise of the Debtors' business judgment. Pursuing any such claims against the Released Parties is not in the best interests of the Debtors' various constituencies as the costs involved likely would outweigh any potential benefits from pursuing such claims.     In addition, the Released Parties provided good and valuable consideration in exchange for the Debtor Releases – including services, funding and amendments

30

and undertakings to decelerate significant claims, as the case may be – and otherwise facilitated the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

34.     Releases of the Released Parties by the Debtors are critically important and necessary to the success of the Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders and reflects and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan.  Each of the Released Parties afforded value to the Debtors and aided in the reorganization process.  The Released Parties played an integral role in the formulation and implementation of the Plan.  The Plan reflects the settlement and resolution of several complex issues, and the Debtor Releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.

35.     In approving the Debtor Releases based on the record and the facts and circumstances of the Chapter 11 Cases, the Bankruptcy Court hereby determines that the Debtor Releases are:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by the Debtor Releases; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, the Estates or any other person or entity seeking to exercise the rights of the Debtors' Estates to assert any claim released by the Debtor Releases against any of the Released Parties.

36.     Releases by Holders of Claims and Interests.  ~~The circumstances of the Chapter 11 Cases render~~ The release of all claims, interests, obligations, rights, suits, damages,

31

*which are ~~deemed to be~~ consensual —*

Causes of Action, remedies and liabilities against the Debtors, the Reorganized Debtors and the

Released Parties as set forth in Section 9.3 of the Plan (the "**Third-Party Releases**") *are* ~~(critical to~~

~~the success of the Plan.  The Released Parties have made substantial contributions to the Plan by~~

~~providing direct benefits to the Estates.  The efforts of the Debtors' officers and directors were~~

~~indispensable to administering these cases and operating the Debtors' businesses while under~~

~~extremely difficult circumstances.   The First Lien Credit Agreement Agent, the First Lien~~

~~Lenders (including the Consenting First Lien Term Lenders), the holders of the First Lien Notes~~

~~(including the Consenting First Lien Creditors), the holders of the Second Lien Notes (including~~

~~the Consenting Second Lien Creditors) and the holders of the Third Lien Notes (including the~~

~~Consenting Third Lien Creditors), the Collateral Agents, the Indenture Trustees and the DIP~~

~~Lenders also made significant contributions to these Chapter 11 Cases, including through the~~

~~granting of the consensual use of cash collateral, providing much needed post-petition financing~~

~~that allowed the Debtors' operations to continue through the pendency of these Chapter 11~~

~~Cases, granting extensions under the Restructuring Support Agreement and agreeing to waivers~~

~~under the DIP Loan Agreement to facilitate a settlement with the United States, and the~~

~~development of the consensual Plan (that includes funding a distribution to holders of the~~

~~Operating Debtors General Unsecured Claims in Class A7-b, agreeing to amendments pre-~~

~~petition that provided for the reinstatement of debt without question of whether a significant~~

~~make-whole would be triggered or other such obligations would be due, agreeing to waive~~

~~sizable deficiency claims, consenting to the conversion of the post-petition financing into new~~

~~post-emergence junior lien financing to fund the ongoing business operations), among others.~~

~~The Consenting Interest Holders made significant contributions to these Chapter 11 Cases~~

~~including by facilitating the commencement of the Chapter 11 Cases, foregoing any distribution~~

32

~~in respect of their equity interest in the Debtors and entering into the Restructuring Support~~ ~~Agreement. As a result of the compromises made by the parties to the Restructuring Support~~ ~~Agreement, the Debtors are in a position to provide a recovery to holders of General Unsecured~~ ~~Claims, which would not have been possible in a liquidation undertaken pursuant to chapter 7 of~~ ~~the Bankruptcy Code.~~ Under the Plan, the Third-Party Releases are given by each holder of a Claim or an Interest (except each holder of a Claim or an Interest that validly exercised the opt out election set forth in Section 9.3 of the Plan as set forth on **Exhibit C)** ~~in consideration for~~ ~~the obligations of the Debtors and the Reorganized Debtors, the distributions made pursuant to~~ ~~the Plan, and other contracts, instruments, releases, agreements, or documents executed and~~ ~~delivered in connection with the Plan.~~ Consensual

37.    In approving the Third-Party Releases, the Bankruptcy Court hereby determines, based upon the record ~~and the facts and circumstances of the Chapter 11 Cases,~~ that the Third-Party Releases are: ~~(a) in exchange for the good and valuable consideration provided~~ ~~by the Released Parties; (b) a good faith settlement and compromise of the claims released by the~~ ~~holders of Claims and Interests granting the Third-Party Releases pursuant to the terms of the~~ ~~Plan; (c) in the best interests of the Debtors, the Estates and all holders of Claims and Interests;~~ ~~(d) fair, equitable, reasonable and necessary to the Debtors' reorganization; (e) given and made~~ given and made after notice and opportunity for hearing; and (f) except with respect to each holder of a Claim or an Interest that validly exercised the opt out election set forth in Section 9.3 of the Plan, a bar to any of the holders of Claims and Interests granting the Third-Party Releases from asserting any claims released by the Third-Party Releases against any of the Released Parties.

38.    Exculpation.  The exculpation provisions set forth in Section 9.4 of the Plan (the "**Exculpation**") are also essential to the Plan.  The record in the Chapter 11 Cases fully

supports the Exculpation, and the Exculpation is appropriately tailored to protect the Exculpated Parties from inappropriate litigation. The Exculpation shall have no effect on the liability of any Entity that results from any act or omission that constitutes gross negligence or willful misconduct (including fraud); provided, however, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

39.   Injunctions. The injunction provisions set forth in Section 9.6 of the Plan (the "**Injunction**") are essential to the Plan and are necessary to preserve and enforce the Debtors' discharge provided for herein and in the Plan, the Debtor Releases, the Third-Party Releases, and the Exculpation, and are appropriately tailored to achieve that purpose. (which are consensual)

40.   Each of the Debtor Releases, the Third-Party Releases, the Exculpation and the Injunction: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 157(b)(1), 157(b)(2), 1334(a), 1334(b), and 1334(d) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012; (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions upon which the Plan is based; (d) confers material benefits on, and is in the best interests of, the Debtors, the Estates, and their creditors and equity interest holders; (e) is critical to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (f) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, and other applicable law; and (g) is fair, equitable, reasonable, and necessary to the Debtors' reorganization. *The third party releases are consensual.* Based upon the record of the Chapter 11 Cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the

34

Debtor Releases, ~~the Third-Party Releases~~, the Exculpation, and the Injunction are consistent with the Bankruptcy Code and applicable law.

41.     The Global Settlement.  The Plan represents and incorporates a global settlement among the Debtors, the Consenting First Lien Creditors, the Consenting Junior Lien Creditors, the Consenting Interest Holders, the members of the Creditors' Committee, each applicable holder of the 2015 Senior Notes and each applicable holder of the 2016 Senior Subordinated Notes and plaintiffs Thomas Karaniewsky and Angela Rodriguez (the "**WARN Plaintiffs**") in the putative class action against Debtor US Investigations Services, LLC (such settlement, the "**Global Settlement**").  The Global Settlement: (i) represents a sound exercise of the Debtors' business judgment; (ii) was negotiated in good faith and at arms' length; (iii) is a good faith settlement and compromise; (iv) is in the best interests of the Debtors and their Estates; and (v) is fair, equitable, and reasonable under the circumstances of the Chapter 11 Cases.  Pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution and other benefits provided under the Plan, upon the Consummation, the provisions of the Plan shall constitute a good-faith compromise and full and final settlement of all Claims, Interests and controversies resolved pursuant to the Plan and the Global Settlement, including, without limitation, any and all Claims, including Priority Wage Claims, that could have been brought against the Operating Debtors and their estates, on account of, relating to, or arising in connection with, any class or individual WARN Claims.  Based on the evidence proffered, adduced, and/or presented at the Confirmation Hearing, neither the Creditors' Committee nor any member of the Creditors' Committee has in any capacity objected to or otherwise opposed the Confirmation of the Plan within the meaning of Section 3.3 (p)(v), (q)(v), or (s)(iv) of the Plan.

*Subject to applicable laws*

42.  <u>Retention of Jurisdiction.</u> The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan as provided for herein.

## DECREES

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

43.  <u>Findings of Fact; Conclusions of Law.</u>  The Findings of Fact and Conclusions of Law herein constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

44.  *The Debtors' entry into* <u>Confirmation.</u>  The Plan, a copy of which is annexed hereto as **Exhibit A**, is hereby CONFIRMED under and pursuant to section 1129 of the Bankruptcy Code, as set forth herein. The Plan Supplement Documents ~~and each of the provisions thereof are hereby~~ *is* approved. The terms of the Plan (subject to any further modifications pursuant to the terms of the Plan) are hereby approved. The terms of the Plan, the Plan Supplement and any exhibits thereto are incorporated by reference into this Confirmation Order.  Such documents and the Senior Priority Documents and New Second Lien Notes Documents are an integral part of, this Confirmation Order, and shall be effective and binding as of the Effective Date, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

45.  <u>Resolution of Confirmation Objections.</u>  All parties have had a full and fair opportunity to litigate all issues raised by the Confirmation Objections, or which might have been raised, and the Confirmation Objections have been fully and fairly litigated.  As presented

at the Confirmation Hearing, the consensual resolution of certain Confirmation Objections as provided for herein satisfies all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, is in the best interest of the Debtors and their estates, and is supported by the record of the Confirmation Hearing, and therefore is hereby approved. Any Confirmation Objections or any other responses and reservation of rights with respect to confirmation of the Plan not previously resolved, resolved herein, or withdrawn are hereby overruled as set forth herein and on the record of the Confirmation Hearing.

46.    Record Closed. The record of the Confirmation Hearing is hereby closed.

47.    Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent. The provisions of the Plan and this Confirmation Order, including the Findings of Fact and Conclusions of Law set forth herein, are nonseverable and mutually dependent.

48.    Plan Classification Controlling. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to, or returned by, the holders of Claims in the Voting Classes (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, and (iii) shall not be binding on the Debtors, their estates, or the Reorganized Debtors. The classification scheme of the Plan and the treatment of all Claims and Interests as provided thereunder are hereby approved. For the avoidance of doubt, for the purposes of the distributions to be made under the Plan, the payment of any payment in kind interest due on January 1, 2015 under either of the Second Lien Notes Indenture or the Third Lien Notes Indenture shall be deemed to have been made. The holders of Class B4 Claims are

37

hereby conclusively deemed to waive and release any and all Second Lien Avoidance Action

Liens with respect to the Specified Avoidance Actions, and the holders of Class B5 Claims are

hereby conclusively deemed to waive and release any and all Third Lien Avoidance Action Liens

with respect to the Specified Avoidance Actions. The holders of Second Lien Notes Deficiency

Claims, Third Lien Notes Deficiency Claims, and Waived Liquidating Debtors Intercompany

Claims, in each case in Class B7, are hereby conclusively deemed to waive any and all

distributions on account of such claims in Class B7 to the extent such distributions represent

Specified Litigation Claims, Specified Avoidance Actions or the proceeds thereof.

49.    Binding Effect. Except as otherwise provided in section 1141(d)(3) of the

Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the

Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or Interest and

such holders' respective successors and assigns, whether or not the Claims or Interests of such

holders are Impaired under the Plan and whether or not such holders have voted to accept the

Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the

Debtors. _Implementation steps necessary for consummation of the Plan taken prior to entry of this Order are hereby authorized._

50.    Debtor-in-Possession Transactions. ~~All transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date up to the Effective Date are hereby approved and ratified.~~

51.    The Global Settlement. The Global Settlement is in the best interests of

the Debtors, their Estates, and the holders of Claims and Interests and is fair, equitable and

reasonable under the circumstances of these Chapter 11 Cases. Accordingly, the terms and

conditions of the Global Settlement are hereby approved pursuant to section 1123(b) of the

Bankruptcy Code and Bankruptcy Rule 9019.

52.    Vesting of Assets.   On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, all property in each Estate and all Causes of Action (except those released pursuant to the releases by the Debtors in Section 9.2 of the Plan) shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens granted to secure the New Revolving Credit Facility Agreement and Liens securing claims arising under or related to the First Lien Loan Documents, the First Lien Notes Indenture, the First Lien Notes, and related documents executed in connection therewith, the New Second Lien Notes and the New Second Lien Notes Documents). On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules other than restrictions expressly imposed by the Plan. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, upon the Effective Date, all of the rights of the Liquidating Debtors to the Specified Litigation Claims and the Specified Avoidance Actions, including all rights, power, standing, attorney-client privilege, and authority necessary to litigate, protect, conserve, abandon, dispose of, settle, transfer, sell, assign, encumber and otherwise liquidate the Specified Litigation Claims, shall vest in the applicable Reorganized Debtor free and clear of all Liens, Claims, charges or other encumbrances. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the assets of the Liquidating Debtors that were not, at the time of the Petition Date, subject to a valid security interest, including but not limited to the

Specified Avoidance Actions and the Specified Litigation Claims, shall at all times remain free and clear of all Liens.

53.    <u>Retention of Causes of Action/Reservation of Rights</u>.  Except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases by the Debtors provided by <u>Section 9.2</u> of the Plan), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may, subject to the terms of the Plan, pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against such Entity.  Except with respect to Causes of Action as to which the Debtors or Reorganized Debtors have released any Person or Entity on or before the Effective Date (including pursuant to the releases by the Debtors contained in the Plan or otherwise), the Debtors or Reorganized Debtors, as applicable, shall retain all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

54.    <u>Authorization to Pay Obligations Under Debtor-in-Possession Financing Agreement</u>.  Holders of Allowed DIP Claims shall receive, on the Effective Date, as indefeasible payment in full and final satisfaction of the Allowed DIP Claims, New Second Lien Notes with a face amount equal to the Allowed amount of their DIP Claims against the Debtors.  Subject to Section 5.7 of the Plan, the Second Lien Notes Indenture shall remain outstanding following the

Effective Date to allow for the New Second Lien Notes to be issued, outstanding and governed thereunder and under the New Second Lien Notes Documents, and all liens, security and ancillary documents related thereto shall remain in full force and effect with respect to such New Second Lien Notes; provided that the assets of the Liquidating Debtors and the assets in the Operating Debtors General Unsecured Claims Pool shall not secure the New Second Lien Notes. On the Effective Date, the First Priority Adequate Protection Liens shall be terminated and of no further force or effect.

55.     Continued Corporate Existence.   Except as otherwise provided in the Plan, in the Corporate Governance Documents or elsewhere in the Plan Supplement, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Reorganized Debtor is incorporated or formed. Each Reorganized Debtor, in its discretion, may take such action as permitted by applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, but not limited to, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor, or its subsidiary or affiliate; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name and/or corporate form of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's case on the Effective Date or any time thereafter, and any such action taken in accordance with the Transaction Steps provided in the Plan Supplement prior to or following entry of this Confirmation Order is hereby approved; provided that the foregoing shall not authorize the Debtors to modify or amend the Senior Priority Documents, including the First

41

*The Debtors' entry into*

Lien Loan Documents, the First Lien Notes or the First Lien Notes Indenture, except in accordance with their terms.

56.     Approval of the New Revolving Credit Facility and the New Revolving Credit Facility Documents.[9] ~~The~~ New Revolving Credit Facility and the New Revolving Credit Facility Documents ~~are~~ *is* hereby approved.  On the Effective Date, each of the Reorganized Debtors is authorized to enter into the New Revolving Credit Facility Agreement and complete the transactions contemplated by the New Revolving Credit Facility in order to provide funding to the Reorganized Debtors' business operations, and the Debtors shall be authorized to execute and deliver those documents necessary or appropriate to obtain the New Revolving Credit Facility, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization or approval of any person.  Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders, directors, members or partners of any of the Reorganized Debtors, the Reorganized Debtors are authorized to enter into and implement the New Revolving Credit Facility and to execute and deliver the New Revolving Credit Facility Documents and to take all other actions and execute, deliver, record and file all other such agreements, documents, instruments, financing statements, mortgages, releases, applications, reports and any changes, additions and modifications thereto in connection with the consummation of the transactions contemplated by the New Revolving Credit Facility, including, without limitation, the making of such filings, or the recording of any security interests, as may be required by the New Revolving Credit Facility and the New Revolving Credit Facility Documents.  Each of the New Revolving Credit Facility Documents, once executed, shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto,

enforceable in accordance with its terms. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, any other Plan document or this Confirmation Order (the "**Plan Documents**") (excluding, however, the New Revolving Credit Facility Documents), this Confirmation Order or applicable non-bankruptcy law, pursuant to section 1123(a)(5) of the Bankruptcy Code, upon execution and delivery, subject to the occurrence of the Effective Date, the New Revolving Credit Facility Documents shall create valid, perfected and first priority Liens on, and security interests in, all of the Debtors' and Reorganized Debtors' assets which secure the First Lien Indebtedness, in each case to the extent provided by the New Revolving Credit Facility Documents, including the New Intercreditor Agreement, and this Confirmation Order shall be sufficient and conclusive evidence of the first priority, perfection and validity of such Liens, pledges and security interests without the need for any further action including, without limitation, the filing or recording of any financing statements or other documents that may otherwise be required under federal or state law in any jurisdiction.

~~The Debtors' entry into~~ 57.     Approval of The New Second Lien Notes and the New Second Lien Notes Documents. The New Second Lien Notes Documents and the New Second Lien Notes ~~are~~ is hereby approved. On the Effective Date, the New Second Lien Notes and the New Second Lien Notes Documents shall each be valid, binding, and enforceable against the Debtors, the Reorganized Debtors, and their affiliates, as applicable, subject to the New Intercreditor Agreement. The Debtors or the Reorganized Debtors, as applicable, the Second Lien Notes Trustee, as applicable, and the Second Lien Notes Collateral Agent, as applicable, are authorized, without further notice to or action, order, or approval of this Bankruptcy Court or any other Person, to enter into and, subject to the occurrence of the Effective Date, fully perform their obligations under the New Second Lien Notes Documents, and execute and deliver all

agreements, documents, instruments, and certificates relating to the New Second Lien Notes or the New Second Lien Notes Documents and to incur and pay all fees and expenses and all other obligations required to be paid in connection therewith as and when they come due under the terms of the New Second Lien Notes Documents. Subject to the occurrence of the Effective Date, upon execution and delivery, the New Second Lien Notes and the New Second Lien Notes Documents shall become effective in accordance with their respective terms and conditions.

58.     Reinstatement. On the Effective Date, (A) all First Lien Indebtedness shall be Reinstated in accordance with its terms (including as amended by the First Lien Debt Amendments) and sections 1123(b)(1) and 1124 of the Bankruptcy Code and (i) no Default or Event of Default (each as defined in the First Lien Notes Indenture) shall have occurred and be continuing (ii) no Default or Event of Default (each as defined in the First Lien Credit Agreement) shall have occurred and be continuing, and (iii) unless the First Lien Issuing Banks (as defined in the First Lien Credit Agreement) or the First Lien Credit Agreement Agent shall otherwise agree in writing, the Debtors or the Reorganized Debtors, as applicable, shall deliver to the First Lien Issuing Banks cash collateral with respect to all outstanding Letters of Credit and the Obligations (as defined in the First Lien Credit Agreement) thereunder and related thereto with cash or deposit account balances in an amount equal to 103 percent of the L/C Exposure (as defined in the First Lien Credit Agreement, (B) no default interest, prepayment premiums, make-whole payments, penalties or other premiums shall be due in respect of any First Lien Indebtedness including, without limitation, pursuant to (i) Section 2.07 of the First Lien Credit Agreement, (ii) Section 2.12, 2.13(d) and 2.16 of the First Lien Credit Agreement or (iii) Section 602 of the First Lien Notes Indenture, (C) the First Lien Documents shall continue to constitute legal, valid, binding and authorized obligations of the Debtors and Reorganized

44

Debtors, as applicable, enforceable in accordance with their terms, and (D) all Liens and security interests granted pursuant to the Note Security Documents (as defined in the First Lien Notes Indenture) or the Security Documents (as defined in the First Lien Credit Agreement) shall continue to be valid, legal, binding and enforceable perfected Liens on, and perfected security interests in, the collateral granted thereunder, in accordance with the terms of the Senior Priority Documents, and are hereby deemed to be granted in good faith, for good and valuable consideration and for legitimate business purposes as an inducement to the Lenders (as defined in the First Lien Credit Agreement) to extend credit thereunder, (E) the Commitments, including without limitation the Revolving Credit Commitments, the Swingline Commitments and the L/C Commitments (each, as defined in the First Lien Credit Agreement) shall be of no further force or effect, and the lenders under the First Lien Credit Agreement and the First Lien Credit Agreement Agent shall be under no obligation to extend Revolving Loans, Swingline Loans, Letters of Credit (each, as defined in the First Lien Credit Agreement), including by permitting the renewal or extension of Letters of Credit that are or were outstanding under the First Lien Credit Agreement as of the Petition Date, (F) the Debtors or the Reorganized Debtors, as applicable, are authorized, without further notice to or action, order, or approval of this Bankruptcy Court or any other Person (i) to fully perform their obligations under the Senior Priority Documents, (ii) to execute and deliver all agreements, documents, instruments, and certificates relating to the reinstatement of First Lien Indebtedness contemplated hereby, and (iii) to incur and pay all fees and expenses and all other obligations required to be paid in connection therewith as and when they come due under the terms of the First Lien Documents, and (G) pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders, directors, members or partners of any of the

45

Reorganized Debtors, the Reorganized Debtors are authorized to take all other actions and execute, deliver, record and file all other such agreements, documents, instruments, financing statements, mortgages, releases, applications, reports and any changes, additions and modifications thereto in connection with the consummation of the transactions contemplated by the Senior Priority Documents, including, without limitation, the making of such filings, or the recording of any security interests, as may be required by the First Lien Documents.

59.    As set forth in Exhibit A-1 to the Plan Supplement, the Real Estate (as defined therein) transferred pursuant to the structuring steps set forth in Exhibit A-1 to the Plan Supplement shall continue to secure the First Lien Indebtedness and Altegrity Holding Corp. shall execute any mortgages and other documentation reasonably necessary to continue a perfected senior priority security interest in the Real Estate on behalf of the holders of such First Lien Indebtedness, provided that any such mortgage shall provide that all other assets securing any obligations under the First Lien Notes Indenture and the First Lien Credit Agreement must have been liquidated and applied against such obligations before the First Lien Credit Agreement Agent or the First Lien Notes Collateral Agent may enforce the Real Estate Lien or in any way foreclose or collect upon the Real Estate.

60.    Securities to be Issued Pursuant to the Plan.  On the Effective Date, New Altegrity shall issue New Common Stock for distribution in accordance with the terms of the Plan and shall reserve New Common Stock for the New Incentive Plan.  On the Effective Date, Altegrity Holding Corp. shall issue AHC Common Stock for distribution in accordance with the terms of the Plan.  All of the shares of New Common Stock and AHC Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable.  The New Altegrity Shareholders Agreement shall be deemed to be valid, binding and enforceable in

accordance with its terms, and all recipients of New Common Stock pursuant to the Chapter 11 Plan shall be deemed to be bound thereby, in each case without the need for execution by any party thereto other than New Altegrity. Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders or directors of any of the Reorganized Debtors, the Reorganized Debtors are authorized to perform all tasks necessary and to execute and deliver all documents, agreements and instruments necessary or appropriate to issue the New Common Stock and AHC Common Stock.

61.    Notwithstanding any other contrary provision of the Plan or this Confirmation Order, the Second Lien Notes Indenture (as modified pursuant to Section 5.3(c) of the Plan) shall remain outstanding following the Effective Date to allow for the New Second Lien Notes to be issued, operative and governed thereunder, and all liens, security and ancillary documents related thereto (including but not limited to all Note Security Documents and the Senior Intercreditor Agreement (each as defined in the Second Lien Notes Indenture)) shall remain in full force and effect with respect to such New Second Lien Notes; provided that the Liquidating Debtors shall be deemed released as guarantors under the Second Lien Notes Indenture.

62.    Exemption from Registration Requirements. The Bankruptcy Court finds and concludes that, in accordance with section 1145(a) of the Bankruptcy Code, the offering, issuance and distribution of the New Common Stock, AHC Common Stock and New Second Lien Notes under the Plan is authorized as of the Effective Date without further act or action by any person, unless required by provision of applicable law, regulation, order or rule. Therefore, the offering, issuance and distribution of such securities are exempt from the provisions of Section 5 of the Securities Act, including the registration requirements of the Securities Act, and

any other applicable federal law and any state or local law requiring registration for offer, issuance, distribution or sale of a security or registration or licensing of an issuer of, underwriter of or broker dealer in such securities. None of the Debtors is an underwriter within the meaning of section 1145(b) of the Bankruptcy Code. All such securities to be issued shall be freely transferable by the initial recipients thereof (i) except for any such securities received by an underwriter thereof within the meaning of section 1145(b) of the Bankruptcy Code and (ii) subject to any transfer restrictions under applicable securities laws contained in the terms of such securities themselves or any transfer restrictions contained in the Certificate of Incorporation for New Altegrity and the New Altegrity Shareholders Agreement.

63. Exemption from Certain Taxes and Fees. To the fullest extent permitted by applicable law, (1) the issuance, transfer, conversion, contribution, distribution or exchange of notes or debt or equity securities under the Plan; (2) the creation, modification, consolidation or recording of any mortgage, deed of trust, lien or other security interest; (3) the making or assignment of any lease or sublease; (4) any restructuring transaction authorized by the Plan; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under or pursuant to the Plan, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and appropriate state or local governmental officials or agents are hereby directed and deemed to be directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers

48

of property without the payment of any such tax or governmental assessment. All recording and filing officers and clerks wherever located are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, any mortgage, deed of trust or other instrument of transfer related to the transactions described herein without payment of any stamp tax or similar tax. The Debtors are hereby authorized to deliver a notice or short form of this Confirmation Order to any state recording officer to the effect that such officer must accept for filing such security interests without charging any stamp tax or other similar tax or fee within the scope of section 1146(a) of the Bankruptcy Code.

64.    Cancellation of Existing Securities and Agreements. On and after the Effective Date, except as otherwise specifically provided for in the Plan, the First Lien Debt Amendments or the New Second Lien Notes Documents: (a) the obligations of the Debtors under the 2015 10.50% Senior Notes, 2015 12.00% Senior Notes, 2016 Senior Subordinated Notes, DIP Loan Agreement, Junior Subordinated Notes, Second Lien Notes, Third Lien Notes, and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except for such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan), shall be cancelled as to the Debtors and the Debtors shall not have any continuing obligations thereunder, (b) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors shall be

49

released and discharged and (c) the Second Lien Notes Supplemental Documents shall be deemed cancelled and of no further force and effect. The holders of or parties to such cancelled instruments, securities and other documentation shall have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights expressly provided for pursuant to the Plan; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, that any such Indenture or agreement that governs the rights of the holder of a Claim or the rights of an Indenture Trustee shall continue in effect solely for purposes of (a) allowing holders of Second Lien Notes Claims, Third Lien Notes Claims and DIP Claims (as applicable) to receive distributions under the Plan as provided herein, (b) allowing the applicable Indenture Trustees, if applicable, to make distributions under the Plan as provided herein and perform such other necessary functions with respect thereto, if any, and deduct therefrom such compensation, fees and expenses due thereunder or incurred in making such distributions, (c) allowing the applicable Indenture Trustees to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and (d) permitting the applicable Indenture Trustees to maintain or assert any right, including, without limitation any Charging Lien they may have against distributions under the applicable Indentures to recover unpaid fees and expenses (including the fees and expenses of their counsel, agents and advisors) of the applicable Indenture Trustees.

65.      Cancellation of Certain Existing Securities and Agreements.      As a condition precedent to receiving any distribution on account of any Note with respect to a Claim that is Impaired under the Plan, each record holder of any such Note shall be deemed to have surrendered such Notes or other documentation underlying such Note and all such surrendered

50

Notes and other documents shall be deemed to be cancelled in accordance with Section 5.7 of the Plan as of the Effective Date. The Debtors' entry into

66.     Plan Supplement Documents. The forms, terms and provisions of each of
                                                              is
the Plan Supplement Documents are hereby approved. The Plan Supplement Documents shall be deemed incorporated into the Plan by reference and are a part of the Plan as if set forth in full therein. On or prior to the Effective Date, but subject to the occurrence of the Effective Date, the Debtors and other signatories to the Plan Supplement Documents are hereby authorized to execute and deliver each of the Plan Supplement Documents, in substantially the respective forms included in the Plan Supplement, including such changes thereto as are consistent with the Plan and, after consultation with the First Lien Notes Trustee, the First Lien Notes Collateral Agent and the First Lien Credit Agreement Agent, in form and substance reasonably acceptable to the Debtors, the Consenting First Lien Creditors, the Creditors' Committee, the Consenting Interest Holders and the Consenting Junior Lien Creditors and, with respect to the New Second Lien Notes, the New Second Lien Notes Documents, and any modifications or amendments to the Second Lien Notes Indenture, the Second Lien Notes Trustee and the Second Lien Notes Collateral Agent. Subject to the occurrence of the Effective Date, each of the Plan Supplement Documents, once executed, shall constitute a legal, valid binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms (except as enforceability may be limited by any bankruptcy or insolvency proceeding filed by any party thereto subsequent to the date of the execution of such document).

67.     Designation of Directors Approved.    On the Effective Date, the initial board of directors of each of the Reorganized Debtors shall consist of those individuals identified in the Plan Supplement, and such directors shall be deemed elected and authorized to serve as

51

directors of each of the Reorganized Debtors pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents. Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court, the Reorganized Debtors or their security holders. The members of the board of directors of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Debtors or the Reorganized Debtors on or after the Effective Date, and each such member will be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date.

68. <u>Designation or Continuation in Office of Officers Approved</u>. The designation or continuation in office as officers of the Reorganized Debtors of each of the individuals identified in the Plan Supplement is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy. Such officers hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court or the Reorganized Debtors.

69. <u>Distributions Under the Plan</u>. All distributions under the Plan shall be made in accordance with the Plan and such methods of distribution are hereby approved.

70. <u>Disputed Claims</u>. The provisions of Article VIII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are hereby approved. Upon the entry of this Confirmation Order, the Debtors (before the Effective Date), with the approval of the Consenting Junior Lien

Creditors, or (on or after the Effective Date) the Reorganized Debtors (with respect to all Reorganized Debtors other than the Liquidating Debtors) and the Plan Administrator (with respect to the Liquidating Debtors), as applicable, shall have the authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under, and in accordance with the terms of, the Plan.

71.    <u>Authorizations</u>.    Any action under the Plan or this Confirmation Order taken by, to be taken by, or required of, the Debtors or the Reorganized Debtors prior to entry of this Confirmation Order and thereafter, including, without limitation, the adoption or amendment of certificates of incorporation, by-laws, limited liability company agreements or limited partnership agreements, the issuance of securities and instruments, the selection of officers or directors, or any other transaction described or contained in the Plan Supplement, shall be deemed to have been, and shall be, authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

72.    <u>Governmental Approvals</u>.    Each federal, state, commonwealth, local, foreign or other governmental agency is hereby ~~directed and~~ authorized to accept any and all documents, mortgages, deeds of trust, security filings, financing statements and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any federal, state, commonwealth, local, foreign or other governmental agency with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

73.    Executory Contracts and Unexpired Leases.

(i)    General Treatment.    All of the Operating Debtors' executory contracts and unexpired leases shall be deemed assumed as of the Effective Date unless (a) such executory contract or unexpired lease is identified as an executory contract or unexpired lease to be rejected prior to the Effective Date or (b) previously expired or terminated pursuant to its own terms.    All of the Liquidating Debtors' Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date unless (a) such executory contract or unexpired lease is identified as an executory contract or unexpired lease to be assumed or assumed and assigned prior to the Effective Date or (b) previously expired or terminated pursuant to its own terms. Notwithstanding the foregoing, (a) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (b) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall, once treatment is determined by a Final Order, be treated as determined by such Final Order of the Bankruptcy Court resolving such motion as of the Effective Date; and (c) all executory contracts and unexpired leases that are identified to be rejected, assumed or assumed and assigned pursuant to the Plan Supplement and such cure amounts as identified on the Cure Schedule attached hereto as **Exhibit B** prior to the Effective Date shall be treated as determined by a Final Order of the Bankruptcy Court as of the Effective Date.    Subject to the occurrence of the Effective Date, this Confirmation Order shall constitute approval of the assumptions and rejections described in Section 6.1 of the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code; provided, however, that notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, shall

retain the right to alter, amend, modify or supplement the list of executory contracts and unexpired leases identified in the Plan Supplement at any time before the Effective Date. Each of the executory contracts and unexpired leases assumed pursuant to Section 6.1 of the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law. The parties to such executory contracts or unexpired leases to be assumed pursuant to the Plan were afforded with good and sufficient notice of such assumption and an opportunity to object and be heard. For the avoidance of doubt, the Cure Schedule attached hereto as **Exhibit B**, if inconsistent with the Plan Supplement, is intended and shall be deemed to supersede the cure provided for such contracting party in the Plan Supplement. *Pre-petition Claims in the Plan (applicable Class under the Plan.*

*Except as pursuant to the Plan* (ii)    Rejection Damages Claims. All Allowed Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as ~~General Unsecured Claims to the extent such Claims are against one or more of the Operating Debtors or Liquidating Debtors Unsecured Claims to the extent such Claims are against one or more of the Liquidating Debtors.~~ All such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Debtors, the Reorganized Debtors or their respective properties or interests in property. **In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan or this Confirmation Order results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, shall be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates or their property unless a proof of claim is filed with the Bankruptcy**

*notice of entry*

Court and served upon counsel for the Debtors and the Reorganized Debtors on or before the date that is thirty (30) days after ~~the date of entry~~ of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection (the "Rejection Damages Bar Date").

              (iii)    <u>Cure Amounts</u>.  Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease, any monetary defaults arising under each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the applicable Cure Amount set forth on Exhibit N-2 or Exhibit O to the Plan Supplement or as set forth on the Cure Schedule attached hereto as **Exhibit B** (or in such other order of the Bankruptcy Court authorizing the assumption of such executory contract or unexpired lease pursuant to the Plan) in Cash on, or as soon as reasonably practicable after, the later of (a) the Effective Date and (b) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision), or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree.  Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption. The non-Debtor counterparties to the contracts and unexpired leases assumed pursuant to the Plan or otherwise are barred from disputing the Cure Amounts and/or asserting any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or *pending resolution or adjudication of any unresolved pending cure and assumption objections.*

otherwise from the Debtors, their Estates, or the Reorganized Debtors. ~~Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.~~ Notwithstanding anything to the contrary in the Plan Documents, to the extent that an objection to the assumption of an executory contract or unexpired lease, proposed Cure Amount, "adequate assurance of future performance," or other issues related to assumption of executory contracts and unexpired leases shall have been filed within fifteen (15) days of service of notice of intent to assume or reject, and properly served on the Debtors with respect to the assumption of any contract or lease, then any Cure Dispute that was not scheduled for a hearing by the Bankruptcy Court on or before the date of the Confirmation Hearing shall be scheduled for a later date as may be determined by the Bankruptcy Court. Following resolution of a Cure Dispute by Final Order of the Bankruptcy Court, the contract or lease shall be deemed assumed effective as of the Effective Date, provided, however, that the Debtors reserve the right to reject any such contract or lease following entry of a Final Order of the Bankruptcy Court resolving any such Cure Dispute, by filing a notice indicating such rejection within five (5) Business Days of the entry of such Final Order.

(iv)    Pre-Effective Date Amendments to Executory Contracts and Unexpired Leases. Prior to assuming any executory contracts and unexpired leases as provided for herein and in the Plan, pursuant to section 363(b) of the Bankruptcy Code, the Debtors (i) are authorized, in their discretion, to enter into any amendments and modifications to such executory contracts and leases, and (ii) are authorized and empowered to take any and all steps and to perform such other and further actions as are necessary to carry out, effectuate, or otherwise enforce the terms, conditions and provisions of any such amendments and modifications, without

57

further notice to or action, order, or approval of the Bankruptcy Court. Unless otherwise specified on Exhibit N-1, N-2 or O to the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other documents is listed on Exhibit N-1, N-2 or O to the Plan Supplement.

(v)    Restrictions on Assignment Void.    Any executory contract or unexpired lease assumed or assumed and assigned shall remain in full force and effect to the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 541(c)(1) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment, including based on any change of control provision. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease, terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition thereof on any such transfer or assignment (including on account of any change of control provision), constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

(vi)    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, nothing in the Plan shall impair, impede, limit, augment, or impact the rights, obligations, claims, or defenses of each of CBCInnovis, Inc. ("**CBC**"), FD Holdings, LLC ("**FDH**"), Kroll Factual Data, Inc., Altegrity, Inc., and/or Kroll, Inc. (collectively, the "**KFD**

**Sale Parties**") with respect to that certain Escrow Agreement entered into as of January 20, 2015 by and between Kroll Factual Data, Inc., FD Holdings LLC and JPMorgan Chase Bank, N.A. (the "**Escrow Agreement**") creating and maintaining an escrow fund (the "**Escrow Fund**") in accordance with that certain Asset Purchase Agreement by and among the KFD Sale Parties; such rights to include, but not be limited to, the right of CBC and/or FDH to assert claims against the Escrow Fund for the liabilities identified in Claim Nos. 978, 1003, and 1083 filed in Case No. 15-10226; Claim Nos. 999, 1089, 1002 filed in Case No. 15-10251; and Claim Nos. 1131, 992, and 1134 filed in Case No 15-10249.

      (vii)    Notwithstanding anything in the Plan or this Confirmation Order or any other documents filed, executed or to be executed in connection with confirmation or the effectiveness of the Plan or any other prior order of the Bankruptcy Court, proof of claim number 1147 ("**Claim 1147**") shall remain a pending claim against the Debtors and the Reorganized Debtors notwithstanding the assumption on the Effective Date of the Class Action Settlement Agreement by and among Plaintiff Spencer Hoyt, on behalf of himself and the members of the Settlement Class and HireRight, Inc., in Case No.: 3:13-cv-01432-BAS-BML, filed on January 30, 2015 [Docket No. 119-3] in the United States District Court for the Southern District of California (the "**Hoyt Settlement Agreement**").  Claim 1147 shall only be disallowed and expunged upon final approval of the Hoyt Settlement Agreement by the United States District Court for the Southern District of California or another court of competent jurisdiction and full consummation of all obligations under the Hoyt Settlement Agreement including but not limited to payment of all amounts set forth in the Hoyt Settlement Agreement.  For the avoidance of doubt, if the Hoyt Settlement Agreement is voided or rescinded pursuant to its terms, then Claim 1147 shall be subject to the claims allowance process in the Chapter 11 Cases.

74.    <u>Government Data</u>. Any government data or records in the Debtors' or Reorganized Debtors' possession or custody, including information acquired through contracts or agreements with the Department of Homeland Security ("**DHS**") or any of its components, including Customs and Border Protection ("**CBP**"), or with the Office of Personnel Management on behalf of DHS or its components (the "**Government Data**"), is not the Debtors' or Reorganized Debtors' property.

75.    Absent either a further court order or an agreed written protocol among the Debtors or Reorganized Debtors, as applicable, and DHS and CBP, the Debtors and Reorganized Debtors:

(i)    shall not destroy, sell, transfer, duplicate, or otherwise dispose of any Government Data; and

(ii)    shall continue to preserve any Government Data.

76.    DHS and its components (including CBP) are seeking appropriate preservation and/or disposition of their data. Accordingly, the Debtors and Reorganized Debtors shall negotiate in good faith with DHS and CBP on a protocol for the ultimate turnover or disposition of the Government Data. DHS and CBP, on the one hand, and the Debtors and Reorganized Debtors, on the other hand, may implement any agreed protocol without further court order. If DHS/CBP and the Debtors/Reorganized Debtors are unable to agree on a protocol following good-faith negotiations, either the United States on behalf of DHS/CBP or the Debtors/Reorganized Debtors, as applicable, may move for a court order from the Bankruptcy Court (as to which none of DHS, CBP, the Debtors and the Reorganized Debtors shall contest jurisdiction or move to have the dispute heard in an alternate forum or venue) to implement a protocol regarding Government Data.

77.    <u>Settlement Agreement</u>.    Nothing in the Plan or this Confirmation Order shall in any way limit or affect the rights or obligations of any party to the Settlement Agreement among the Debtors and the United States of America, dated August 10, 2015, as provided therein.

78.    <u>Compensation and Benefit Programs</u>.    The Debtors, including their officers, directors and employees, are authorized to take any and all actions necessary to implement Sections 5.10 and 5.11 of the Plan and any such actions shall be deemed appropriate and taken in good faith as necessary to give effect to Sections 5.10 and 5.11 of the Plan, and neither the Debtors, their officers, directors or employees, shall have any responsibility or liability to any person or entity arising from any such actions.

79.    <u>Contracts and Leases Entered Into After the Petition Date</u>.    The provisions governing contracts and leases entered into after the Petition Date set forth in Section 6.6 of the Plan are hereby approved.

80.    <u>Insurance Policies</u>.    The provisions governing Insurance Policies set forth in Section 6.7 of the Plan are hereby approved.

81.    Notwithstanding anything to the contrary in the Plan, this Confirmation Order, any documents filed, executed or to be executed in connection with Confirmation or the effectiveness of the Plan or any other Order of the Bankruptcy Court, any and all obligations of the Debtors' Insurer(s) or the Reorganized Debtors' Insurer(s) to fund any amounts under any agreement assumed by the Debtors or the Reorganized Debtors as applicable shall remain in full force and effect and nothing in the Plan, this Confirmation Order, any documents filed, executed or to be executed in connection with Confirmation or the effectiveness of the Plan or any other

Order of the Bankruptcy Court shall in any way discharge, alter, modify, eliminate, release, limit, impair or diminish such obligations.

82.     Notwithstanding anything to the contrary in the Plan Documents, nothing in the Plan Documents (including any provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers under any insurance policy issued by Liberty Mutual Insurance Company or its affiliates (collectively, "**Liberty**"), Travelers Indemnity Company and certain of its property and casualty insurance company affiliates (collectively, "**Travelers**") or Continental Casualty Company (together with Liberty and Travelers, the "**Insurers**") for the benefit of the Debtors or their affiliates or any related agreements (collectively, the "**Insurance Agreements**") or under any applicable non-bankruptcy law, including without limitation the Insurers' rights to draw on letters of credit issued for the Insurers' benefit or to apply escrowed amounts held by the Insurers, the Insurers' rights of setoff and recoupment, and the Insurers' rights to handle, control, direct and approve settlement of claims covered by the Insurance Agreements.  The rights and obligations of the insureds and the insurers under the Insurance Agreements shall be determined under the applicable Insurance Agreements, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and any applicable non-bankruptcy law.

83.     Employment Agreements.     Notwithstanding anything in the Plan or herein, including any provision that purports to be preemptory or supervening, the Debtors shall reject any employment contracts or management incentive plans that include any provisions requiring payments or benefits upon a change of control as a result of the consummation of the Plan; provided that the Operating Debtors may assume such contracts or incentive plans if the

Debtors or the Operating Debtors either (i) obtain a written waiver of such payments or benefits prior to any such assumption or (ii) obtain a written consent to such assumption from the Consenting Junior Lien Creditors.

84. <u>Approval of Discharge, Injunctions, Releases, and Exculpation and Limitation of Liability Set Forth In the Plan</u>. In light of all of the circumstances and ~~the record in these Chapter 11 Cases, including, without limitation,~~ the evidence proffered or adduced at or in connection with the Confirmation Hearing, the Confirmation Memorandum, the McShea Declaration and the Sprung Declaration, each of the discharge, injunction, release, and exculpation and limitation of liability provisions set forth in Article IX of the Plan are hereby approved as being: (i) within the jurisdiction of the Bankruptcy Court to approve under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions embodied by and incorporated in the Plan; (iv) beneficial to, and in the best interests of, the Debtors, their Estates and their creditors; (v) critical to the overall objectives of the Plan; and (vi) consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and all other applicable provisions of the Bankruptcy Code; *or (vii) consensual.*

85. **Discharge. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and this Confirmation Order (including with respect to Claims and Liens Reinstated pursuant to the Plan), the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or**

63

unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.  Except as otherwise provided in the Plan or this Confirmation Order, any default by the Debtors or their [Lien] Affiliates with respect to any Claim, or Interest [that] [Reinstated pursuant to the Plan to the] existed before or on account of the [extent such default] filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan or this Confirmation Order.

86.    **Injunction**.  Except as otherwise expressly provided in the Plan or this Confirmation Order (including with respect to Claims and Liens Reinstated pursuant to the Plan), from and after the Effective Date, to the extent of the releases and exculpation granted in Article IX of the Plan, the Releasing Parties shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other

proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to Article IX of the Plan.  Except as otherwise expressly provided in this Confirmation Order, the Plan, the Plan Supplement or related documents, or for obligations issued pursuant to the Plan, all Entities who have held, hold or may hold Claims or Interests that have been released pursuant to Sections 9.2 or 9.3 of the Plan, or discharged pursuant to Section 9.5 of the Plan or are subject to exculpation pursuant to Section 9.4 of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such entities on account of or in connection with or with respect to any such Claims or Interests; and (iv) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released, settled or discharged pursuant to the Plan. ~~B~~y accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the injunctions set forth herein and Section 9.6 of the Plan.

87.    <u>Releases by the Debtors</u>.  Except as otherwise provided in the Plan or this Confirmation Order, the releases in Section 9.2 of the Plan are hereby approved.

Except with respect to any party that validly opted out of the Releases in Section 9.3 of the Plan,

88.    **Releases by Certain Holders of Claims.  Except as otherwise provided in the Plan or this Confirmation Order, the releases in Section 9.3 of the Plan are hereby approved.**

89.    **Exculpation and Limitation of Liability.    Except as otherwise provided in the Plan or this Confirmation Order, the exculpations and limitations of liability in Section 9.4 of the Plan are hereby approved.**

Intentionally Omitted.

90.    ~~Injunction Related to Releases and Exculpation.  Except as otherwise provided in the Plan or this Confirmation Order, the injunction in Section 9.6 of the Plan is hereby approved.~~

91.    Notwithstanding any provision of the Plan (including, without limitation Section 9.3 of the Plan) or this Confirmation Order providing for the release of non-debtors, or any injunction on behalf of non-debtors, nothing in the Plan or the Confirmation Order shall (a) discharge or release any Employee Retirement Income Security Act ("**ERISA**") fiduciaries, parties in interest and knowing participants, in each case to the extent not a Debtor (the "**Non-Debtor ERISA Parties**") from any actions brought by the Secretary of Labor, United States Department of Labor (the "**Secretary**") pursuant to ERISA against Non-Debtor ERISA Parties, or (b) enjoin the Secretary from pursuing such actions against Non-Debtor ERISA Parties.

92.    Continuation of the Automatic Stay.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, under the Plan or this Confirmation Order, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

93.   **Bar Date for Administrative Claims.**   Except for Administrative Claims of governmental units as provided in section 503(b)(1)(D) of the Bankruptcy Code or as otherwise provided in Section 2.1 or Section 13.4 of the Plan or the Final DIP Order, requests for payment of, and proof of, Administrative Claims (other than (i) 503(b)(9) Claims (which claims, for the avoidance of doubt, shall remain subject to the Bar Date previously established by the Court for such claims), (ii) Administrative Claims that have been Allowed on or before the Effective Date, (iii) Administrative Claims of Governmental Units not required to be filed pursuant to section 503(b)(1)(D) of the Bankruptcy Code and (iv) Administrative Claims on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court) must be filed with the Bankruptcy Court and served on the Reorganized Debtors and their counsel, the Claims and Noticing Agent, and the U.S. Trustee no later than forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date").   Such proof of Administrative Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Claim and if the Administrative Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim. Failure to file and serve such proof of such Administrative Claim timely and properly shall result in the Administrative Claim being (a) forever barred and estopped from asserting such Administrative Claims against the Debtors, their respective Estates, assets or properties and (b) forever enjoined from commencing or continuing any action to collect,

*Absent further order of the court,*

offset, recoup or otherwise recover such Administrative Claims against the Debtors, their respective Estates, assets or properties, in each case without the need for further action, order or approval of or notice to the Bankruptcy Court. Such Administrative Claims shall be deemed forever compromised, settled, and released as of the Effective Date. *as to which no valid claim has been filed,*

94.    Treatment of Administrative Claims.  Except with respect to DIP Claims provided for pursuant to Section 2.4 of the Plan and Administrative Claims that are Claims for Accrued Professional Compensation, and except to the extent that a holder of an Allowed Administrative Claim and the applicable Debtor or Reorganized Debtor agrees to less favorable treatment to such holder, each holder of an Allowed Administrative Claim shall be paid in full, in Cash, on the later of: (a) the Effective Date or as soon as reasonably practicable thereafter; (b) the first Business Day after the day that is ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim; (c) the date or dates agreed to by the Debtors and the Holder of the Allowed Administrative Claim; and (d) the date such Allowed Administrative Claim becomes due and payable by its terms or as soon thereafter as is practicable.  All accrued or outstanding (x) Professional Fees (as defined in the Restructuring Support Agreement), including all restructuring, transaction, or success fees, (y) Professional Fees (as defined in paragraph 13(c) of the Final DIP Order), and (z) Fees and Expenses (each as defined in the Restructuring Support Agreement) shall be paid in full in cash on the Effective Date.

95.    Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive one of the following treatments: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day

after the date that is ten (10) Business Days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in not less than annual installment payments commencing not later than the date of the following calendar year which coincides with the month and the day on which the Confirmation Order is entered and continuing not later than the same date each subsequent calendar year thereafter over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code (with any interest to which the holder of such Priority Tax Claim may be entitled, calculated in accordance with section 511 of the Bankruptcy Code); or (c) such other treatment as may be agreed upon by such holder and the Debtors, with the approval of the Consenting First Lien Creditors and Consenting Junior Lien Creditors, which approval shall not be unreasonably withheld, or otherwise determined upon an order of the Bankruptcy Court. For the avoidance of doubt, once resolved, disputed Priority Tax Claims will be treated as Allowed Priority Tax Claims due and payable on the Effective Date pursuant to the prior sentence. All Allowed Priority Tax Claims that arose after the Petition Date but are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due. All distributions on account of Allowed Priority Tax Claims shall be made by the Reorganized Debtors.

96.    Notwithstanding any other provision of the Plan or this Confirmation Order, nothing in Section 9.2 or Section 9.3 of the Plan discharges, releases or otherwise enjoins any state taxing authority from pursuing any Person (as defined by 11 U.S.C. § 101(41)) or party that is not a Debtor, provided that as long as the Debtors or the Reorganized Debtors have paid all amounts that are due and owing that are not disputed, such state taxing authorities shall not pursue any non-Debtor parties.

97.    Claims for Accrued Professional Compensation.    Any Professional or other Entity seeking allowance by the Bankruptcy Court of a Claim for Accrued Professional Compensation for services rendered before the Effective Date shall file and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules and the Interim Compensation Order or other order of the Bankruptcy Court its application for final allowance of such Claim for Accrued Professional Compensation no later than the Administrative Claims Bar Date.    Objections to any Claims for Accrued Professional Compensation must be filed and served on the Reorganized Debtors, the Creditors' Committee, the U.S. Trustee and the requesting party no later than seventy-five (75) days after the Effective Date.

98.    Professional Fee Escrow.    On the Effective Date, pursuant to Section 2.1(b)(iii) of the Plan, the Debtors shall establish and fund the Professional Fee Escrow.    Funds held in the Professional Fee Escrow shall not be considered property of the Debtors' Estates or property of the Reorganized Debtors, but shall revert to the Reorganized Debtors after all Accrued Professional Compensation Claims allowed by the Bankruptcy Court have been paid in full.    The Professional Fee Escrow shall be held in trust for the Professionals and for no other parties until all Accrued Professional Compensation Claims Allowed by the Bankruptcy Court have been paid in full.    Accrued Professional Compensation owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court.

99.    Payment of U.S. Trustee Fees.    The Debtors shall pay in full, in Cash, any fees due and owing to the U.S. Trustee, including quarterly fees payable under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 (if any), pursuant to and as set forth in Section 2.5 of the Plan.    Pursuant to Section 2.5 of the Plan, on and after the Effective

Date, the Plan Administrator shall (a) pay the applicable U.S. Trustee fees for each of the Reorganized Debtors when due in the ordinary course, until such time as the Bankruptcy Court enters (i) a final decree in such Reorganized Debtor's Chapter 11 Case, (ii) a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (iii) a Final Order dismissing such debtor's Chapter 11 Case, and (b) be responsible for the filing of consolidated post-Confirmation quarterly status reports with the Bankruptcy Court; provided that the Plan Administrator shall be reimbursed from assets of the Liquidating Debtors (including any assets in the Liquidating Debtors Unsecured Claims Distribution Pool or as otherwise permitted under the Senior Priority Documents) for amounts paid on behalf of the Liquidating Debtors.

100.    Repurchase Offer.  The repurchase offer required by Section 5.3(b) of the Plan shall be implemented pursuant to documentation reasonably acceptable to the Consenting First Lien Lenders, and such repurchase offer shall not be modified or withdrawn by the Debtors or the Reorganized Debtors, as applicable, prior to its consummation, except as otherwise agreed by the Consenting First Lien Holders in their sole discretion.

*Intentionally Omitted.*

101.    ~~No Post-Effective Date Amendment to Claims; Late-Filed Claims.  From and after the Effective Date, no Claim may be filed to increase or assert additional claims not reflected in an already filed Claim (or Claim scheduled, unless superseded by a filed Claim, on the applicable Debtor's schedules of assets and liabilities filed in the Chapter 11 Cases) asserted by such claimant and any such Claim shall be deemed disallowed and expunged in its entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors or the Reorganized Debtors unless the claimant has obtained the Bankruptcy Court's prior approval to file such amended or increased Claim.  Any Claims filed after the Bar Date, the~~

71

Administrative Claims Bar Date, the Rejection Damages Bar Date, or the Government Bar Date, as applicable, shall be deemed disallowed and expunged in their entirety without further notice to or action, order, or approval of the Bankruptcy Court or any action being required on the part of the Debtors, the Reorganized Debtors, or Plan Administrator unless the Person or entity wishing to file such untimely Claim has received Bankruptcy Court authority to do so.

102.   Dissolution of Creditors' Committee.   On the Effective Date, the Creditors' Committee shall dissolve, except the Creditors' Committee will remain intact with respect to any pending litigation or contested matter to which the Creditors' Committee is a party, any appeals filed regarding Confirmation, the resolution of any substantial contribution applications and the resolution of applications for Accrued Professional Compensation. On the Effective Date, subject to the prior sentence, the members of the Creditors' Committee shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

103.   No Change in Ownership or Control.   In accordance with the Senior Priority Documents (as amended by the First Lien Debt Amendments), pursuant to and in accordance with Section 5.5 of the Plan, consummation of the transactions set forth in the Plan shall not constitute a change in ownership or control, as defined in any agreement, contract, or document of the Debtors, including any employment or other employee benefit agreement or plan in effect on the Effective Date.

104.   Future Plan Modifications.   Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights, with the consent of the Creditors' Committee, the Consenting Junior Lien Creditors, the Consenting First Lien Creditors and the Consenting Interest Holders, and subject to the

Restructuring Support Agreement, to alter, amend or modify the Plan with respect to any or all Debtors, one or more times, after Confirmation, and, to the extent necessary, and with the consent of the Creditors' Committee, the Consenting Junior Lien Creditors and the Consenting First Lien Creditors, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan.

105.    Effect of Failure of Conditions.  The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in Article X of the Plan may be waived at any time by the Debtors, with the consent of the Creditors' Committee (solely as to conditions 10.1(1), 10.1(2), 10.2(2), 10.2(3), 10.2(5) 10.2(7) and 10.2(8) of the Plan), the Consenting Junior Lien Creditors, the Consenting First Lien Creditors, the Consenting Interest Holders and (solely to the extent required by the Plan) the Second Lien Notes Trustee and the Second Lien Notes Collateral Agent; provided, however, that the Debtors may not waive entry of the Confirmation Order.  If the Consummation of the Plan does not occur or this Confirmation Order is vacated, the Plan shall be null and void in all respects, this Confirmation Order shall be of no further force or effect, no distributions under the Plan shall be made, the Debtors and all holders of Claims and Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence,  nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in

any manner the rights of the Debtors, any holders of Claims or Interests or any other Entity; or

(3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holders

or any other Entity in any respect.

106. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(c) and 1142 of the

Bankruptcy Code and notwithstanding entry of this Confirmation Order and the occurrence of

the Effective Date, on and after the Effective Date, the Bankruptcy Court shall *to the extent permitted by applicable law,* retain exclusive

jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or

related to the Chapter 11 Cases for, among other things, the purposes set forth in Article XII of

the Plan. Notwithstanding anything herein to the contrary, the Court's retention of jurisdiction

pursuant to this Confirmation Order or the Plan shall not govern the enforcement or adjudication

of any rights or remedies relating to or arising in connection with the First Lien Indebtedness or

the New Second Lien Notes.

107. <u>Resolution of Confirmation Objections</u>. The Debtors have resolved

certain of the Confirmation Objections. To the extent that any of the Confirmation Objections

have not been resolved, they are overruled.

108. <u>Resolution of Cure Objections</u>. The Cure Schedule attached hereto as

**Exhibit B** sets forth resolutions to certain of the Cure Objections. Certain of the other Cure

Objections have been adjourned for later hearing. To the extent that any of the Cure Objections

have not been resolved or adjourned for later hearing, they are overruled.

109. <u>Termination of Challenge Period</u>. Upon the occurrence of the Effective

Date, the *Stipulation and Order Tolling the Creditors' Committee Challenge Period* [Docket No.

660] (the "**Tolling Stipulation**") shall terminate in accordance with its terms, and the Challenge

Period (as defined in the Final DIP Order) and the Extended Challenge Period (as defined in the

Tolling Stipulation) shall expire, and the stipulations, admissions, findings and releases contained in the Final DIP Order shall be binding on the Debtors' estates and all parties in interest.

110.    Notice of Confirmation and Effective Date and Related Deadlines. On or before five (5) Business Days after the occurrence of the Effective Date (the "**Notice of Confirmation and Effective Date Service Deadline**"), the Reorganized Debtors shall mail, or cause to be mailed, to all known holders of claims and equity interests, all parties having filed notices of appearance and requests for notice in these cases pursuant to Bankruptcy Rule 2002, all parties to executory contracts and unexpired leases with the Debtors, and all other parties in interest in the Chapter 11 Cases, including the U.S. Trustee, a notice substantially in the form attached hereto as **Exhibit D** (the "**Notice of Confirmation and Effective Date**"), that informs such parties of (i) the entry of this Confirmation Order, (ii) the occurrence of the Effective Date, (iii) the occurrence of the various bar dates established in the Plan and this Confirmation Order, including, without limitation, the Administrative Claims Bar Date and the Rejection Damages Bar Date, and (iv) such other matters as the Reorganized Debtors deem appropriate; provided, however, that such notice need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address," "forwarding order expired," or any similar reason unless prior to the Notice of Confirmation and Effective Date Service Deadline the Debtors or the Reorganized Debtors have been informed in writing by such Person of that Person's new mailing address. The Notice of Confirmation and Effective Date described herein is adequate and appropriate under the particular circumstances of the confirmation of the

Plan, the entry of this Confirmation Order, the occurrence of the Effective Date, and the various bar dates established in the Plan and this Confirmation Order, including, without limitation, the Administrative Claims Bar Date and the Rejection Damages Bar Date, and no other or further notice is necessary or required pursuant to Bankruptcy Rules 3020(c) and 2002(f) or any other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules.

111.   References to Plan Provisions.  The terms of the Plan are an integral part of this Confirmation Order and are incorporated herein by reference.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not in any manner whatsoever affect, diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that entry of this Confirmation Order constitutes approval and confirmation of the Plan in its entirety.

112.   Confirmation Order Controlling.  The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.  Upon and after the Effective Date, except as expressly stated herein, this Confirmation Order, the Plan and the other Plan Documents shall not amend, modify, supplement or affect the Senior Priority Documents.  The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent; provided that, without limiting the effect of Reinstatement of indebtedness provided hereunder (including pursuant to paragraphs 32 and 58 hereof) and by the Plan, in the event of

any inconsistency between this Confirmation Order or the Plan, on the one hand, and the Senior Priority Documents, on the other hand, the Senior Priority Documents (as amended by the First Lien Debt Amendments) shall control.

113.    Separate Confirmation Order. This Confirmation Order shall be a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case.

*Intentionally Omitted*

114.    ~~Reversal. If any of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to written notice of such order by the Debtors. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, all documents relating to the Plan and any amendments or modifications to the foregoing.~~

115.    Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1102 and 1127 of the Bankruptcy Code.

116.    Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such

agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the jurisdiction of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

117.   Time.   The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

118.   Applicable Non-Bankruptcy Law.   Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and the Plan Supplement Documents and the Senior Priority Documents (as amended by the First Lien Debt Amendments) and the New Second Lien Notes Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

119.   Immediately Effective Order.   Notwithstanding Bankruptcy Rules 3020(e), 6004(h) and 7062 (and notwithstanding any other applicable provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary), this Confirmation Order shall be effective and enforceable immediately upon entry.   → Rider A

120.   Headings.   The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

Dated: August 14, 2015
Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE