IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> ALTEGRITY, INC., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 15-10226 (LSS) <br><br> (Jointly Administered) <br><br> **Re: Docket Nos. 871, 916, and 926** |

## MEMORANDUM OPINION[2]

The Official Information Company ("TOIC") and HireRight Solutions, Inc. ("HireRight," and collectively, the "Debtors") ask this Court to adjudicate the corporate income tax liability, if any, owed by them to the State of Oklahoma for the fiscal year ending September 30, 2011 even though they have a tax protest proceeding pending before the Oklahoma Tax Commission. The Debtors assert that the Court can determine the tax liability in a streamlined manner not available in the Oklahoma system because the Court can determine the constitutionality of the relevant tax statute as an initial matter while the Oklahoma Tax Commission cannot. In making this request, however, the Debtors ignore well-established law that a court – including this Court – should not rule on constitutional issues unless such adjudication is unavoidable. For this reason, and because this request does not further the purposes of 11 U.S.C. § 505(a), the Court will abstain from determining the Debtors' tax liability.

---

[1] The Debtors are as follows: Altegrity, Inc.; Albatross Holding Company, LLC; Albatross Marketing and Trading, LLC; Altegrity Acquisition Corp.; Altegrity Holding Corp.; Altegrity Risk International LLC; Altegrity Security Consulting, Inc.; CVM Solutions, LLC; D, D & C, Inc.; Engenium Corporation; FDC Acquisition, Inc.; HireRight Records Services, Inc.; HireRight Solutions, Inc.; HireRight Technologies Group, Inc.; HireRight, Inc.; John D. Cohen, Inc.; KCMS, Inc.; KIA Holding, LLC; Kroll Associates, Inc.; Kroll Background America, Inc.; Kroll Crisis Management Group, Inc.; Kroll Cyber Security, Inc.; Kroll Factual Data, Inc.; Kroll Holdings, Inc.; Kroll Inc.; Kroll Information Assurance, Inc.; Kroll Information Services, Inc.; Kroll International, Inc.; Kroll Ontrack Inc.; Kroll Recovery LLC; Kroll Security Group, Inc.; National Diagnostics, Inc.; Ontrack Data Recovery, Inc.; Personnel Records International, LLC; The Official Information Company; US Investigations Services, LLC; USIS International, Inc.; and USIS Worldwide, Inc.

[2] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. *See* Fed. R. Bankr.P. 7052.

I.  **BACKGROUND**

The Debtors are privately held information services companies that serve commercial and governmental entities. Collectively, the Debtors provide investigative and due diligence advisory services, employment background screening, and security services.

During the relevant tax period, TOIC owned 100% of HireRight and included HireRight in its Oklahoma consolidated corporate income tax return (the "Tax Return") for the fiscal year ending September 30, 2011 (the "Tax Year"). In 2010, HireRight sold (the "Sale") 100% of its outstanding membership interest in Explore Information Services, LLC ("Explore") for $520,000,000 and recognized a federal taxable gain of approximately $383,000,000 (the "Gain"). Explore was a single-member limited liability company and a disregarded entity for tax purposes; it did not have any employees in Oklahoma and its headquarters was located in Minnesota. In its Tax Return, TOIC excluded the Gain in calculating its taxable income under the belief that it was nonunitary income[3] that should be allocated away from Oklahoma because Explore's business was separate from the business run by HireRight and Explore was not domiciled in Oklahoma.

After an audit by its Compliance Division, the Oklahoma Tax Commission concluded that the Gain was apportionable unitary income subject to Oklahoma tax for the Tax Year. Accordingly, on August 23, 2012, the Oklahoma Tax Commission issued a proposed assessment of additional tax in the amount of $17 million plus penalties and interest in the amount of $1.7 million.

---

[3] In *Allied-Signal, Inc. v. Dir., Div. of Taxation*, the United States Supreme Court explained that due to the "complications and uncertainties in allocating the income of multistate businesses to the several States, we permit States to tax a corporation on an apportionable share of the multistate business carried on in part in the taxing State. That is the unitary business principle." 504 U.S. 768, 778 (1992).

On December 5, 2012, TOIC and HireRight timely filed a protest (the "Protest") with the Oklahoma Tax Commission disputing the assessment (the "Tax Dispute"), thereby initiating a proceeding (the "Tax Proceeding"). In their letter submission, they argued that the Oklahoma Tax Commission erred in its assessment by treating the Gain as apportionable income from the sale of assets used in a unitary business conducted in Oklahoma. TOIC and HireRight reasoned that the gain was properly allocable outside of Oklahoma because the gain was from nonunitary property that had a situs outside of Oklahoma. In the alternative, TOIC and HireRight asserted that if the gain is appportionable income, TOIC is entitled to a deduction from its Oklahoma taxable income for the amount of the Gain because it is a qualifying gain under Okla. Stat. tit. 68, § 2358(D)(1).[4] TOIC and HireRight further argued that Okla. Stat. tit. 68 § 2358(D)(2)(a)[5] ("Section 2358(D)(2)(a)") violates the Commerce Clause of the United States Constitution because it limits the availability of the deduction to transactions involving Oklahoma companies, defined as "an entity whose primary headquarters have been located in Oklahoma for at least

---

[4] 68 O.S. § 2358(D)(1) provides in relevant part:
> [T]he taxable income of any corporation . . . shall be further adjusted for qualifying gains receiving capital treatment. Such corporations . . . shall be allowed a deduction from Oklahoma taxable income for the amount of qualifying gains receiving capital treatment earned by the corporation . . . during the taxable year and included in the federal taxable income of such corporation . . . .

[5] 68 O.S. § 2358(D)(2)(a) provides in relevant part:
> (1) the sale of real property or tangible personal property located within Oklahoma that has been directly or indirectly owned by the corporation, estate or trust for a holding period of at least five (5) years prior to the date of the transaction from which such net capital gains arise,
> (2) the sale of stock or on the sale of an ownership interest in an Oklahoma company, limited liability company, or partnership where such stock or ownership interest has been directly or indirectly owned by the corporation, estate or trust for a holding period of at least three (3) years prior to the date of the transaction from which the net capital gains arise, or
> (3) the sale of real property, tangible personal property or intangible personal property located within Oklahoma as part of the sale of all or substantially all of the assets of an Oklahoma company, limited liability company, or partnership where such property has been directly or indirectly owned by such entity owned by the owners of such entity, and used in or derived from such entity for a period of at least three (3) years prior to the date of the transaction from which the net capital gains arise . . . .

three (3) uninterrupted years prior to the date of the transaction from which the net capital gains arise[.]"[6]

In 2013, the Tax Proceeding was progressing. The Oklahoma Tax Commission propounded discovery and TOIC fully responded. But then, the parties agreed to stay the Tax Proceeding pending the outcome of *CDR Sys. Corp. v. Okla. Tax Comm'n*,[7] a tax dispute then pending in the Oklahoma Supreme Court challenging the constitutionality of Section 2358(D)(2)(a) on the same grounds asserted by the Debtors. On April 22, 2014, the Oklahoma Supreme Court, in a five-four decision, upheld the constitutionality of Section 2358(D)(2)(a) holding that the statute does not discriminate against interstate commerce, and even if the Dormant Commerce Clause applies, "the deduction does not facially discriminate against interstate commerce."[8] Soon after the *CDR* decision was handed down, the Oklahoma Tax Commission and TOIC filed a joint status report in the Tax Proceeding indicating that the parties arrived at a joint stipulation of facts.

During the pendency of the Tax Proceeding and before any substantive rulings by the presiding administrative law judge (the "ALJ"), on February 8, 2015, the Debtors filed voluntary chapter 11 petitions in this Court. The Oklahoma Tax Commission filed a proof of claim against TOIC in the amount of $24,710,008 asserting a $1.7 million general unsecured claim and a $23 million priority unsecured claim under 11 U.S.C. § 507(a)(8). On August 14, 2015, the Court confirmed the Debtors' chapter 11 plan (the "Plan"), and on September 1, 2015, the Debtors filed a notice of the occurrence of the Plan's effective date. The Plan provides for payment in full of all priority tax claims.[9]

---

[6] 68 O.S. § 2358(D)(2)(c).
[7] 339 P.3d 848 (Okla. 2014) (5-4 decision).
[8] *Id.* at 859.
[9] D.I. 532, Section 2.2.

On August 27, 2015, the Debtors filed their Motion for an Order (A) Setting a Hearing to Determine the Amount of the Oklahoma State Income Tax Liability of Certain Debtors, (B) Establishing a Briefing Schedule in Support of the Tax Determination Hearing and (C) Staying Current Tax Proceeding (the "Section 505 Motion").[10]  The Oklahoma Tax Commission timely filed an objection to the Section 505 Motion asserting that (i) the Court must defer to the Oklahoma Tax Commission, which has primary jurisdiction to determine the tax dispute; (ii) the constitutional issues are not ripe for decision as the Debtors did not claim the deduction on the Tax Return having allocated the Gain away from Oklahoma, and in any event (iii) the Court should abstain from hearing the Tax Dispute.  On September 17, 2015, the Court heard oral argument and took the matter under advisement.

## II.  DISCUSSION

### A.  The Court Has Jurisdiction Over The Tax Dispute

Before examining whether grounds exist to abstain, the Court must first determine whether it has jurisdiction over the Tax Dispute.[11]  A court that lacks jurisdiction over a matter cannot abstain from deciding the same matter.[12]

Section 505(a)(1) authorizes bankruptcy courts to adjudicate a debtor's tax liability:

> the court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.[13]

---

[10] D.I. 871.  In a footnote, the Debtors state that the Tax Motion also constitutes an objection to the Tax Claim under section 502(a) and Federal Rule of Bankruptcy Procedure 3007.
[11] *In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir. 2003) ("The District Court was correct to address the jurisdictional issue before reviewing the Bankruptcy Court's abstention decision.  As the District Court properly noted, 'a court that lacks jurisdiction over a matter cannot abstain' from deciding that matter.") (quoting *In re Cody, Inc.*, 281 B.R. 182, 189 (S.D.N.Y. 2002)).
[12] *In re Cody*, 338 F.3d at 94.
[13] 11 U.S.C. § 505(a)(1) (emphasis supplied).

While there are exceptions set forth in the statute, the Court of Appeals for the Third Circuit has "consistently interpreted § 505(a) as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims."[14] No party has suggested, nor could they, that the tax issue here falls into the exceptions stated in section 505(a)(2).[15] Accordingly, the Court finds that it has jurisdiction to determine the Debtors' corporate income tax liability.

### B. The Court Will Exercise Its Discretion Under Section 505(a)(1) And Abstain From Hearing The Tax Dispute

#### 1. The Court will abstain from hearing the Tax Dispute because hearing the Section 505 Motion does not further the purposes of section 505(a) nor the administration of the case

While section 505(a)(1) provides the jurisdictional nexus to decide the Tax Dispute, it also vests the Court with discretion to abstain from determining a tax liability.[16] Because, however, matters brought under section 505(a) are "core" proceedings,[17] a bankruptcy court should exercise its discretionary authority to abstain sparingly.[18] "The exercise of such discretion . . . must be informed by the purpose underlying the statute."[19]

The legislative history of section 505 reveals two primary reasons for its promulgation. First, section 505 is meant to help a debtor obtain a prompt resolution of a tax claim, which if left

---

[14] *In re Custom Distrib. Servs. Inc.*, 224 F.3d 235, 239-40 (3d Cir. 2000); *see Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 924 (3d Cir. 1990).

[15] 11 U.S.C. § 505(a)(2) (providing that a court cannot determine a tax adjudicated by a tribunal of competent jurisdiction prepetition, certain tax refunds, and taxes arising in connection with ad valorem taxes if the applicable nonbankruptcy period for challenge has expired).

[16] *E.g., In re New Haven*, 225 F.3d at 288 ("[B]ased on the plain language of the statute, its legislative history, and relevant case law, we interpret the verb 'may' in 11 U.S.C. § 505(a)(1) as vesting the bankruptcy court with discretionary authority to redetermine a debtor's taxes.").

[17] *See In re Indianapolis Downs, LLC*, 462 B.R. 104, 114 (Bankr. D. Del. 2011) ("The general rule is that if a matter falls within a bankruptcy court's 'core' jurisdiction, then the court should decide it."); *ANC Rental Corp. v. Cnty. of Allegheny (In re ANC Rental Corp.)*, 316 B.R. 153, 157 (Bankr. D. Del. 2004) (holding that a debtor's claim brought under section 505 is a core proceeding); *see also* 28 U.S.C. § 1334(b); 28 U.S.C. § 157(b)(2).

[18] *See In re Indianapolis Downs*, 462 B.R. at 114; *In re ANC Rental Corp.*, 316 B.R. at 157.

[19] *In re New Haven Projects Ltd. Liab. Co.*, 225 F.3d 283, 288 (2d Cir. 2000); *In re Kohl*, 397 B.R. 840, 845 (Bankr. N.D. Ohio 2008) (discretionary abstention is appropriate where the policies underlying section 505 are not furthered).

to another forum, could result in delaying the administration of the bankruptcy case.[20] Second, section 505 protects "creditors from dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest."[21] In this regard, section 505 acts as a safeguard to the creditor body by providing a debtor a forum to challenge a tax debt even when prepetition the debtor failed to timely contest the tax liability under applicable state law.[22]

Here, resolving the Tax Dispute in this Court does not further the primary purposes underlying section 505. Adjudication of the Tax Dispute before the Oklahoma Tax Commission would neither delay the administration of the bankruptcy case nor protect creditors from dissipation of the estate's assets via an uncontested tax assessment. The Plan has been confirmed and gone effective. And, the Debtors are, and have been, contesting the tax assessment in an appropriate forum since 2012.

As importantly, the central premise of the Section 505 Motion fails because the Court is not in a position to more efficiently adjudicate the Tax Claim than the ALJ. The Debtors take the position that the Court can streamline the process by addressing the constitutional issues first unlike the Oklahoma regulatory scheme where constitutional issues can only be addressed on appeal to the Oklahoma courts after the non-constitutional issues are adjudicated by the ALJ.[23] The fundamental flaw with these arguments is that the Court must decide the constitutional challenge last.

---

[20] *In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001).
[21] *City Vending of Muskogee,* 898 F.2d at 125 (internal citation and quotation marks omitted); *see In re Luongo*, 259 F.3d at 330 (commenting that section 505(a) permits a debtor, on behalf of the creditor body, to contest the validity and amount of a tax claim where prepetition there was no challenge to the tax).
[22] *See, e.g., In re New Haven*, 225 F.3d at 286; *In re Custom Distrib.*, 224 F.3d at 240; *In re Piper Aircraft Corp.*, 171 B.R. 415, 418 (Bankr. S.D. Fla. 1994).
[23] Section 505 Motion, ¶¶ 21-22.

It is axiomatic that a court should avoid ruling on constitutional issues when possible.[24] "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."[25] The United States Supreme Court unequivocally holds that the doctrine of constitutional avoidance requires federal courts to only decide questions of a constitutional nature when absolutely necessary.[26] And, there is not an exception to the constitutional avoidance doctrine when the constitutional claim can more quickly resolve all matters before the court.[27] Thus, contrary to the Debtors' assumption that the Court would address the constitutional challenge first, the non-constitutional claims—namely, the unitary business, apportionment, and penalty issues—must be decided before ruling on the constitutionality of Section 2358(D)(2)(a).[28] As the Oklahoma Tax Commission observed, if the Debtors are correct that they conducted a nonunitary business, there would be no capital gain recognition in Oklahoma and thus no need to address the constitutionality of the Oklahoma statute. Because dispositive non-constitutional based defenses may be present, the Debtors' streamlined approach to resolve the Tax Claim does not exist.

Additionally, the Debtors appear to be using section 505(a)(1) as a collateral attack vehicle rather than for its designed purpose. Prepetition, the Debtors and the Oklahoma Tax Commission agreed to stay the Tax Proceeding pending the *CDR* decision. To the Debtors' dismay, the Oklahoma Supreme Court upheld the constitutionality of Section 2358(D)(2)(a) and

---

[24] *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions.").
[25] *Spector Motor Service v. McLaughlin*, 323 U.S. 101, 105 (1944).
[26] *E.g.*, *Clinton v. Jones*, 520 U.S. 681, 690 (1997) ("[W]e have often stressed the importance of avoiding the premature adjudication of constitutional questions."); *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").
[27] *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1474 (9th Cir. 1994).
[28] *Jean v. Nelson*, 472 U.S. 846, 854 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.") (internal citation and quotation marks omitted).

the Debtors were left in a forum with unfavorable precedent. Instead of challenging the *CDR* decision through appropriate channels in Oklahoma, the Debtors decided to file the Section 505 Motion and seek adjudication here. At the hearing on the Section 505 Motion, the Debtors candidly admitted that it was unlikely that they would have filed the Section 505 Motion had the *CDR* decision gone the other way. This concession, coupled with the agreement with the Oklahoma Tax Commission to hold the Tax Proceeding in abeyance pending the *CDR* decision, undermines the Debtors' position that this Court is a more efficient forum for resolving the Tax Dispute. The Debtors can obtain a prompt decision in the Oklahoma system, it just may not be the one they want.

Section 505(a) is not meant to be used in this fashion. Rather, the intent behind section 505(a) is to mitigate delaying the administration of a bankruptcy case and to protect dissipation of estate assets.[29] These twin goals are not furthered by the Court hearing the Tax Dispute.[30] Abstaining and thereby allowing the Tax Proceeding to move forward will not unduly delay the administration of this bankruptcy case because the Debtors' Plan has been confirmed.[31] The Plan provides for full payment of allowed priority tax claims, and the Debtors acknowledge they have sufficient liquidity to pay the Tax Claim. Importantly, this is not a case where liquidating certain tax claims is necessary to structure a plan of reorganization.[32] Moreover, the Debtors have timely contested the tax assessment, and the Tax Proceeding is currently pending. The Debtors therefore have an available forum to contest the validity and amount of the Tax Claim.[33]

---

[29] *City Vending of Muskogee*, 898 F.2d at 125.
[30] *See In re Onondaga Plaza Maint. Co., Inc.*, 206 B.R. 653, 656-57 (Bankr. N.D.N.Y. 1997) (commenting that it is incumbent upon a court to "assure itself that the legislative purpose for drafting [section 505] . . . is met").
[31] *See In re ANC Rental*, 316 B.R. at 159.
[32] *See Indianapolis Downs*, 462 B.R. at 115.
[33] *In re Cable & Wireless USA, Inc.*, 331 B.R. 568, 575 (Bankr. D. Del. 2005).

### 2. The traditional abstention analysis also militates in favor of abstention

In addition to considering the two-fold purpose of section 505, courts analyze a nonexclusive list of six factors in determining whether to abstain under section 505(a):

> 1) the complexity of the tax issue; 2) the need to administer the bankruptcy case in an orderly and efficient manner; 3) the burden on the bankruptcy court's docket; 4) the length of time required for trial and decision; 5) the asset and liability structure of the debtor; 6) the prejudice to the debtor and the potential prejudice to the taxing authority.[34]

An additional inquiry a court should consider, and which carries dispositive import, is the availability of an alternative forum; without an available forum, abstention is inappropriate.[35]

Regarding factors one and four, adjudicating the Tax Claim would involve complex tax analysis and a somewhat lengthy trial. The Court agrees with the Oklahoma Tax Commission that the Debtors downplay the intricacies of the tax issues. As noted by the Debtors, the Court would have to examine the business differences between HireRight and Explore, and the elements of Explore's business operation that resulted in the realization of income to HireRight. The unitary business argument alone would likely require factual inquiries into the centralization of management, the existence of functional integration among the companies, and the economies of scale between HireRight and Explore.[36] The Oklahoma Tax Commission observes that state law challenges to the Tax Claim will require ample evidence, multiple witnesses, significant discovery, and possibly expert witnesses. Furthermore, although time for a hearing is not necessarily indicative of complexity, it is noteworthy that the Debtors expect the hearing for the state law and constitutional challenge to take up to four days. The Court also highly doubts that

---

[34] *In re ANC Rental*, 316 B.R. at 159.
[35] *In re Cable & Wireless*, 331 B.R. at 575. *Cf. Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997) ("Abstention can exist only where there is a parallel proceeding in state court. That is, inherent in the concept of abstention is the presence of a pendant state action in favor of which the federal court must, or may, abstain.").
[36] Section 505 Motion, ¶ 33.

Section 2358(D)(2)(a) involves a straightforward constitutional analysis that can be decided "quickly." The nine justices of the Oklahoma Supreme Court were deeply divided on whether Section 2358(D)(2)(a) violates the Commerce Clause. The first and fourth factors, therefore, weigh in favor of abstention.

The second and sixth factors also counsel in favor of abstention. As noted above, there is not a need to expeditiously resolve the Tax Dispute to ensure an efficient and orderly administration of the Debtors' bankruptcy cases. The Plan has been confirmed, the Tax Claim has been provided for in the Plan, the Plan has gone effective, and the Debtors have sufficient liquidity to pay the Tax Claim. Unlike a situation where a tax claim would impact a debtor's plan of reorganization,[37] the circumstances before this Court represent merely a debtor's desire to obtain certainty on a tax obligation. Additionally, the Court does not find that the Debtors would be significantly prejudiced by the Court abstaining because they timely challenged the Oklahoma Tax Commission's assessment and can proceed before the ALJ. As already stated, the Debtors are not prejudiced by proceeding before the ALJ, which cannot hear the constitutional challenge to Section 2358(D)(2)(a), because there is not a truncated process available to the Debtors in this Court that would obviate the need to first consider the Debtors' non-constitutional based defenses.

---

[37] *See In re Indianapolis Downs*, 462 B.R. at 115.

### III. CONCLUSION

For all these reasons, the Court will deny the Section 505 Motion and abstain from determining the Debtors' tax liability. An appropriate order will enter.[38]

Dated: January 14, 2016

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[38] Because the Court is exercising its discretion to abstain for the reasons discussed, the Court is not ruling on the Oklahoma Tax Commission's other arguments.