# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 15-10226 (LSS) |
| ALTEGRITY, INC., *et al.*, [1] |  |
|  | Jointly Administered |
| Debtors. | Re: D.I. 1220 |

## Memorandum

Before the Court is Alfred Barr's filing titled Interested Party Motion to Lift Automatic Stay or in the Alternative to Annul or Modify the Automatic Stay for HireRight Solutions Inc. ("Barr Motion").[2] Mr. Barr is proceeding *pro se*.[3] The reorganized debtors filed an objection to the Barr Motion,[4] and Mr. Barr filed a memorandum of law in support of his motion.[5] At a hearing on September 21, 2016, both parties agreed to proceed by way of argument in the first instance to determine whether the matter could be disposed of on undisputed facts.[6] Accordingly, on November 9, 2016—a date agreed to by the parties—I

---

[1] The Debtors in these cases included Altergrity, Inc. and HireRight Solutions, Inc. (collectively, "Debtors")

[2] D.I. 1220.

[3] Because Mr. Barr is proceeding *pro se*, I will construe the Barr Motion liberally. At the same time, I will address only arguments actually presented. *Boyd v. Russo*, 536 Fed. App'x 203, 205 n.1 (3d Cir. 2013) (per curiam).

[4] Reorganized Debtors' Objection to Motion of Alfred Barr to Lift the Automatic Stay or in the Alternative to Annul or Modify the Automatic Stay for HireRight Solutions, Inc. ("HireRight Objection"), D.I. 1245.

[5] 11 U.S.C. § 362(b)(4) Memorandum of Law in Support of Petitioner's Motion for an Order for Relief from Automatic Stay and Evidence in Support ("Barr Memorandum of Law"). D.I. 1278.

[6] Tr., Sept. 21, 2016, D.I. 1259.

heard argument on the Motion; no evidence was taken.[7] Nonetheless, I have reviewed each

filing, including the exhibits attached to them. And, I have also reviewed and considered

Mr. Barr's post-hearing filing titled 11 U.S.C. § 362(b)(4) Judicial Notice of Code of Federal

Regulations To Be Considered.[8] This is my ruling on the Barr Motion.

*Background*

### A. The Bankruptcy Filing

HireRight Solutions Inc. ("HireRight" or "Debtor"), together with certain of its

affiliates, filed voluntary bankruptcy petitions under chapter 11 of title 11 of the United

States Code on February 8, 2015. HireRight is a "leading provider of employment

background screening, drug/health screening and employment eligibility solutions."[9] On

February 25, 2015, a committee of unsecured creditors was appointed.[10]

HireRight filed its bankruptcy schedules on March 20, 2015.[11] Debtor listed Mr. Barr

on its Schedules as a general unsecured creditor holding a contingent, unliquidated and

disputed claim.[12] Also on March 20, 2015, I entered an order establishing April 30, 2015, as

the last date by which all creditors were to file proofs of claim with the claims agent.[13] The

docket reflects that Mr. Barr was served with notice of the bar date.[14] He did not file a proof

of claim.[15]

---

[7] Hr'g Tr., Nov. 9, 2016, D.I. 1285.
[8] D.I. 1284.
[9] Declaration of Jeffrey Campbell, President and Chief Financial Officer of Altegrity, Inc., in
Support of Chapter 11 Petitions and First Day Pleadings ¶ 6, D.I. 15.
[10] D.I. 127.
[11] D.I. 240 (the "Schedules").
[12] D.I. 305 Ex. F-4, at 1.
[13] D.I. 238.
[14] D.I. 359 Ex. F, at 5.
[15] Hr'g Tr., Nov. 9, 2016 25:24–26:8.

On August 14, 2015, I entered an order (the "Confirmation Order") confirming the Amended Joint Chapter 11 Plan of Altegrity, Inc., et al. (the "Plan").[16] The Plan constituted a separate chapter 11 plan of reorganization for each debtor. Under the Plan, holders of general unsecured claims against the Operating Debtors (which includes HireRight) receive their pro rata share of $1,250,000 in cash. Recoveries for this class were projected to be 11.9% based on the Debtors' estimated midpoint amount of allowed claims excluding amounts for litigation claims, contract damages claims or other contingent or unliquidated claims.[17] The Plan went effective on August 31, 2015. The docket reflects that Mr. Barr was served with notice of the confirmation hearing,[18] and the effective date of the Plan.[19]

### B. Mr. Barr's prepetition litigation

Mr. Barr is a truck driver. On December 31, 2012, Mr. Barr filed a complaint with the Regional Administrator, Occupational Safety and Health Administration ("OSHA") under the employee protection provisions of Section 405 of the Surface Transportation Assistance Act ("STAA") against CTL Transportation, Inc. and Comcar Industries, Inc. (the "STAA Action"). In the complaint, Mr. Barr alleges that CTL and Comcar terminated his employment as a truck driver in retaliation for expressing safety concerns, refusing to drive unsafe vehicles and complaining about hours of service.[20]

---

[16] D.I. 835 (Confirmation Order attaching Plan as Exhibit A).
[17] Disclosure Statement for the Joint Chapter 11 Plan of Altegrity, Inc., et al., D.I. 516, at 9.
[18] D.I. 565 Ex. A, at 56.
[19] D.I. 921 Ex. C, at 21.
[20] The complaint was not provided. The history of this matter is found in *Barr v. CTL Transportation, LLC*, 2014-STA-00022, ALJ's Denial of Motions for Summary Judgment/Decision (Dep't of Labor Sept. 3, 2014) ("ALJ 9/3/14 Decision"), Barr Memorandum of Law Ex. C.

The filing of the complaint automatically triggered an investigation by the Secretary of Labor, through OSHA.[21] In a letter dated November 22, 2013, OSHA advised Mr. Barr that, after investigation, the Secretary of Labor found "that there is no reasonable cause to believe that Respondent [CTL] violated STAA." The Secretary made multiple findings in support of his conclusion, and dismissed Mr. Barr's complaint.[22] In this letter, OSHA advised Mr. Barr of his right to file objections to the Secretary's findings and request a hearing before an administrative law judge. OSHA also advised Mr. Barr that the Department of Labor would not represent any party in that hearing, but rather it would be an adversarial proceeding presided over by an administrative law judge. Mr. Barr apparently exercised his right to take exception to the findings made by OSHA, and a September 9, 2014 hearing date was initially set.[23]

In the meantime, on February 13, 2013, Mr. Barr emailed an amended complaint to OSHA which sought relief against not only CTL, but HireRight.[24] The amended complaint generally describes a series of actions taken by CTL against Mr. Barr, including a retaliatory firing, false reporting to HireRight and the failure to correct information. But, it also includes an allegation of blacklisting by both CTL and HireRight.[25] The Administrative

---

[21] Investigation, 29 C.F.R. § 1978.104.

[22] November 22, 2013 Letter of Dep't of Labor, OSHA, Atlanta Reg'l Div to Alfred Barr ("11/22/13 Letter"), HireRight Objection Ex. C. At argument, Mr. Barr asserted that the local office violated its policy in sending this letter and complained that the investigation was deficient in multiple ways. Hr'g Tr., Nov. 9, 2016 28:2–29:10. But, there is nothing in his submissions to support Mr. Barr's contention, and, this finding is also noted subsequently in the ALJ 9/3/14 Decision.

[23] February 13, 2013 Letter of Alfred Barr to Dep't of Labor, OSHA, Atlanta Reg'l Div., HireRight Objection Ex. B. *See also* ALJ 9/3/14 Decision.

[24] *Id.*

[25] ALJ 9/3/14 Decision 2–3. Blacklisting is "when an individual or a group of individuals acting in concert disseminates damaging information that affirmatively prevents another person from finding employment." *Timmons v. CRST Dedicated Services, Inc.*, 2014 WL 4966171, at *3 (Dep't of Labor Admin. Review Bd. Sept. 29, 2014).

Review Board has recognized that blacklisting, in response to an employee engaging in protected activity, may be a basis for relief under the STAA.[26]

HireRight objected to being designated a respondent in the STAA Action. HireRight argued, among other things, that: (i) as HireRight did not have an employment relationship with Mr. Barr, it has no liability under the STAA and thus is not a proper respondent; (ii) the factual inaccuracies in Mr. Barr's declaration preclude a finding of blacklisting; (iii) the addition of HireRight as a respondent is unnecessary to prevent prejudicing the public interest or Mr. Barr's rights; and (iv) any remedy against HireRight lies under the Fair Credit Reporting Act and not the STAA.[27] The administrative law judge assigned to the case ("ALJ") rejected HireRight's arguments and approved the addition of HireRight as a respondent in the action. In doing so, the ALJ found that HireRight was a proper respondent based on the language of the regulations promulgated under the STAA, and also because of HireRight's "unique position as a consumer reporting agency in the trucking industry."[28] Specifically, the ALJ stated:

> In that capacity, HireRight makes available to prospective employers the work histories and driving records of thousands of commercial truck drivers. While HireRight may be storing and disseminating driver information provided by former employers in order that prospective employers may satisfy their statutory requirement to investigative [sic] the driving records of potential drivers, its products certainly have the capacity to affect the pay, terms, and privileges of employment for commercial truck drivers.[29]

HireRight also moved for summary judgment on similar grounds, which the ALJ denied.

---

[26] *See id.*

[27] *Barr v. CTL Transportation, LLC*, 2014-STA-00022, ALJ's Approval of HireRight Solutions, Inc., as Named Respondent & Continuance Order, at *3 (Dep't of Labor Mar. 31, 2014), HireRight Objection Ex. D.

[28] *Id.* at *6.

[29] *Id.*

When HireRight filed its bankruptcy petition, it notified the ALJ.  The ALJ recognized the applicability of the automatic stay, and determined, in the interest of judicial economy, to hold the entire proceeding in abeyance pending the completion of the bankruptcy case.[30]  HireRight later notified the ALJ of the discharge it received by operation of the Confirmation Order and section 1141 of the Bankruptcy Code, and requested that the complaint be dismissed on that basis.  In response, on June 29, 2016, the ALJ issued an Order to Show Cause[31] why the case should not be dismissed as to HireRight and provided parties with thirty days in which to respond.  Mr. Barr sought, and received, an extension of time to respond to the Order to Show Cause.  He also filed the instant motion.

*Discussion*

In the Barr Motion, Mr. Barr seeks relief so that he may proceed with litigation.  His filings are somewhat inconsistent with respect to the proceedings he seeks to continue to prosecute, but he mentions four: (i) the STAA Action; (ii) litigation before the United States District Court for the District of Columbia styled *U.S. v. HireRight Solutions, Inc.*, Civil Action No. 12-1313 resulting in a stipulated final judgment on August 28, 2012 (the "Federal Trade Commission Lawsuit");[32] (iii) *U.S. Department of Transportation v. CTL Transportation, LLC*, No. 2014-1485; and (iv) an as-yet unfiled action that Mr. Barr seeks to bring in the United States District Court for the Middle District of Florida under various theories.[33]

---

[30] *Barr v. CTL Transportation, LLC*, 2014-STA-00022, ALJ's Order to Show Cause Why Complainant's Action Against HireRight Solutions Should not be Dismissed and Order Holding Case in Abeyance Against Remaining Respondents Lifted (Dep't of Labor June 26, 2016), Barr Motion Ex. E.

[31] *Id.*

[32] Stipulated Final Judgment and Order for Civil Penalties, Permanent Injunction, and Other Equitable Relief, Barr Memorandum of Law Ex. B.

[33] Barr Motion 10–11.

I have two preliminary observations.  First, while Mr. Barr's papers and the

argument, to some extent, mention the four pieces of litigation just listed, only the STAA

Action merits discussion.  I will not grant relief from the discharge injunction with respect to

the Federal Trade Commission Lawsuit as Mr. Barr was not a party to that suit, and the

civil docket for this case reflects that it was terminated on August 29, 2012.[34]  Mr. Barr has

cited no law that suggests that he may appear and/or re-open that action.  Similarly, I will

not grant Mr. Barr relief from the discharge injunction with respect to the matter involving

the U.S. Department of Transportation to which Mr. Barr is not a party.  Further, I will not

grant relief from the discharge injunction to permit Mr. Barr to file a case not yet filed.

Second, I am treating the Barr Motion as a request for relief from the discharge

injunction to proceed with litigation.[35]  As the Confirmation Order was entered on

August 14, 2015, and HireRight was granted a discharge, the automatic stay is no longer in

place.[36]  The question, therefore, is whether Mr. Barr should be granted relief from the

discharge injunction to pursue the STAA Action.[37]

---

[34] *U.S. v. HireRight Solutions, Inc.*, Civ. No. 12-1313 (D.D.C. Aug. 28, 2012) (Docket).
[35] Consistent with this treatment, in connection with the *In Forma Pauperis* Motion, I determined that no fee was required because the current motion should be treated as a motion for relief from the discharge injunction, not a motion for relief from the stay. Tr. 14:13–20, Sept. 21, 2016. The Debtor treated the motion in the same manner. *See* HireRight Objection 2 n.4. *See In re Gibellino-Schultz*, 446 B.R. 733, 738–739 (Bankr. E.D. Pa. 2011) ("Rather than have the parties undergo [unnecessary] time and expense, and with their consent, I shall treat the instant motion as having sought relief from the scope of section 524(a)(2)."). Some courts have held that the court cannot grant relief from the discharge injunction, but can only construe it. *See, e.g., Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546 (B.A.P. 9th Cir. 2002). For purposes of this decision, the distinction does not make a difference as I am denying the relief sought as to all "claims" held by Mr. Barr and finding that the discharge injunction does not apply as to relief sought that is not a "claim."
[36] 11 U.S.C. § 362(c)(2)(C).
[37] While not clear that Mr. Barr made this request, in this context I would not grant Mr. Barr relief from the discharge injunction in order to recover a monetary judgment outside of the bankruptcy distribution process.

Mr. Barr makes several arguments in support of his request, but they boil down to two. His primary argument is that he should be permitted to continue with the STAA Action because it is a police or regulatory action conducted by a governmental agency pursuant to 11 U.S.C. § 362(b)(4), and as such should go forward. His secondary argument is that he should be granted relief from the discharge injunction for "cause."

HireRight contends that, as Mr. Barr did not file a proof of claim in the bankruptcy case, Mr. Barr is not entitled to any monetary recovery against HireRight because any debt has been discharged, therefore no relief should be granted. HireRight also contends that the STAA Action is not a governmental agency's exercise of its police or regulatory powers, but rather private litigation being prosecuted by Mr. Barr before the ALJ. HireRight also asks me to find that the STAA Action should not go forward because there is no effective relief that Mr. Barr can obtain in that litigation as HireRight is merely a "middleman" who facilitates background investigations, not the drafter of any employment history.

Two of these arguments are easily dispensed with. First, I conclude that the STAA Action does not fall within the police powers exception of section 362(b)(4). This section excepts from the reach of the automatic stay the commencement or continuation of actions "by a *governmental unit* . . . to enforce *such governmental unit's . . . police and regulatory power.*"[38] The term "governmental unit" means: "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a

---

[38] 11 U.S.C. § 362(b)(4) (emphasis added). *See also Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 388 (3d Cir. 1987) ("[Section 362(b)(4)] exempts from the automatic stay equitable actions *brought by state and federal agencies* to correct violations of regulatory statutes enacted to promote health and safety" (emphasis added)).

State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government."[39]

Mr. Barr does is not a governmental unit, and his individual claims in the STAA Action seeking monetary damages are not on behalf of any governmental unit.[40] And, while Mr. Barr insists that an investigation is being conducted by a governmental agency in the STAA Action, nothing in the documents he submitted supports this statement. Rather, the documents submitted, in particular the 11/22/13 Letter and the ALJ 9/3/14 Decision, show that governmental involvement in the investigation has concluded, and that the government—through the Office of Administrative Law Judges—is now acting as an adjudicatory body.[41] The ALJ confirms this in his Order to Show Cause when he writes that no statutory exception to the operation of the automatic stay exists in the STAA Action noting that this exception "does not apply to STAA cases where the employee is the sole prosecuting party."[42] The only reading of this statement is that Mr. Barr, and not the government, is alone in prosecuting the action against HireRight, a conclusion supported by

---

[39] 11 U.S.C. § 101(27). Assuming that the party seeking to fall within the exception is a governmental unit, then courts apply one of two objective tests to determine whether the exception applies—the pecuniary interest test or the public policy test. The pecuniary interest test "asks whether the governmental proceeding relates principally to the protection of the government's pecuniary interest in the debtor's property, rather than to its public policy interest in the general safety and welfare. In the former situation, the action is not exempt from the stay." The public policy test determines "whether the government seeks to 'effectuate public policy' or 'adjudicate private rights.'" *In re The Fairchild Corp.*, 2009 WL 4546581, at *4 (Bankr. D. Del. Dec. 1, 2009).
[40] *Cf. U.S. ex rel. Minge v. Hawker Beechcraft Corp. (In re Hawker Beechcraft, Inc.)*, 515 B.R. 416 (S.D.N.Y. 2014) (discussing *U.S. ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 290 (E.D.N.Y. 2006)) (Southern District of New York has recognized that individual *qui tam* relators under the False Claims Act "are not a domestic governmental unit and thus cannot invoke certain statutory privileges reserved to such governmental units, including the 'police power' exception to the automatic stay under 11 U.S.C. § 362(b)(4).").
[41] *See generally* 11/22/13 Letter.
[42] Order to Show Cause 2 n.2. The ALJ further states that, "The Secretary of Labor must have a prosecutorial role for the exemption to apply," citing to *Davis v. United Airlines, Inc.*, 2003 WL 21269147 (Dep't of Labor Admin. Review Bd. May 30, 2003), which in turn cites to an order from the Secretary of Labor, *Torres v. Transcon*, No. 90-STA-29 (Dep't of Labor Sec'y Jan. 30, 1991).

each document supplied by both parties. Accordingly, an argument based on section 362(b)(4) does not support the relief Mr. Barr seeks.

Second, I decline to deny the Barr Motion based on the argument that HireRight has been improperly kept in the STAA Action or that Mr. Barr cannot receive effective relief against HireRight in the STAA Action. The ALJ has considered and rejected both of these arguments in his decisions approving the joinder of HireRight as a respondent and denying summary judgment. I will not second guess those decisions, assuming I could.

But, HireRight's argument that Mr. Barr should be denied relief from the discharge injunction to pursue the STAA Action because he has not filed a proof of claim merits consideration. As HireRight points out, paragraph 85 of the Confirmation Order reflects the discharge provided to a reorganizing debtor under section 1141(d) of the Bankruptcy Code. Section 1141(d) of the Bankruptcy Code provides that the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation" whether or not a proof of claim based on that debt is filed, and regardless of whether the holder of such claim has accepted the plan.[43] Further, section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor . . . ."[44] Mr. Barr did not file a proof of claim by the Bar Date. As such, he is not entitled to share in distributions from the estate.[45] There is no reason to liquidate any monetary damages against HireRight or for HireRight to defend litigation which results in a

---

[43] 11 U.S.C. § 1141(d).
[44] 11 U.S.C. § 524(a)(2).
[45] Fed. R. Bankr. P. 3003(c)(2); *In re Acevedo*, 441 B.R. 428, 435 (Bankr. S.D.N.Y. 2010).

monetary judgment.  To the extent that Mr. Barr is seeking to recover on a claim, there is simply nothing left for the ALJ to decide in the STAA litigation.[46]

The question, therefore, is whether Mr. Barr is asserting a claim in the STAA Litigation.  The term "claim" is defined in the Bankruptcy Code as:

> (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[47]

If the relief Mr. Barr seeks in the STAA Action can be reduced to a "right to payment" he has claims which have been discharged in this bankruptcy case; if not, the relief Mr. Barr seeks is not necessary because the discharge does not prevent continuation of the STAA Action.  In performing this analysis, the court looks at each cause of action separately.[48]

Because the amended complaint in the STAA Action is more directed to actions taken by CTL, at argument I asked both Mr. Barr and HireRight what relief was being sought by way of the amended complaint.  Their answers were less than enlightening.  But, it appears that the relief includes back pay, reinstatement, the cessation of distribution of a DAC Report containing false information, referral to the Department of Justice and an

---

[46] *Cf. In re Londrigan*, 2014 WL 4384368, at *8 (Bankr. C.D. Ill. Sept. 3, 2014) (After receiving his discharge, debtor sought to continue an appeal in state court from a Financial Industry Regulatory Authority ("FINRA") arbitration decision.  Ruling that the debtor's license could not be affected by the adverse finding in the FINRA arbitration, the court denied the debtor's request for relief from the discharge injunction (originally brought as a motion for relief from stay) because "[t]he debtor/creditor relationship between [the debtor and the creditor] was fully resolved by the issuance of the Debtor's discharge and the resulting discharge injunction.  There is simply nothing left to litigate in the state court.").

[47] 11 U.S.C. § 101(5).

[48] *See In re Kaiser Aluminum Corp.*, 386 Fed.App'x. 201, 203–05 (3d Cir. 2010) (citing *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 303 (3d Cir. 1999)).

investigation.[49]  These types of remedies are available under the STAA.  Appropriate remedies include reinstatement of employment, back pay, compensatory damages, punitive damages up to $250,000 and expungement of the driver's employment and DAC Reports.[50]

Back pay, compensatory damages and punitive damages are clearly "claims" under the Bankruptcy Code as these are monetary damages that may be awarded under the STAA.  Mr. Barr's request for reinstatement of employment cannot be directed at HireRight because it is undisputed that Mr. Barr was never employed by HireRight.  Further, while the Third Circuit has recognized that the preferred remedy for wrongful discharge is reinstatement, it has also recognized that a monetary award is a viable alternative when reinstatement is impracticable.[51]  Accordingly, in this matter, any request for reinstatement of employment is a "claim" under the Bankruptcy Code. [52]

Research has not revealed any reported case law determining whether relief aimed at correcting or expunging a false DAC Report is a "claim" for purposes of the Bankruptcy Code.  So, I must determine whether a monetary award is a viable alternative for this type of relief.[53]  In this analysis, I may reject the argument that a monetary award will suffice because Mr. Barr has also sought monetary damages.[54]

---

[49]  Hr'g Tr., Nov. 9, 2016 27:5–28:1.  It is Mr. Barr's understanding that if the ALJ determines that there are violations of the statute, he would then proceed to the district court for monetary relief.

[50]  11 U.S.C. § 31105(b)(3).  *See also Understanding the Surface Transportation Assistance Act (STAA)*, PART380.COM, http://part380.com/blog/2015/07/21/understanding-the-surface-transportation-assistance-act-stta (last visited Nov. 15, 2016).

[51]  *Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 135–36 (3d Cir. 1997) (analogizing the remedy of seniority integration to reinstatement and finding monetary damages an appropriate alternative in both instances).

[52]  It does not appear that referral to the Department of Justice or a further investigation are remedies under the STAA, but I am not ruling on the propriety of any further investigation that OSHA may deem appropriate or any referral that the ALJ may make to the Department of Justice.

[53]  *See In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 306 (3d Cir. 1999); *In re Stone Res., Inc.*, 458 B.R. 823, 833 (E.D. Pa. 2011), *vacated on other grounds*, 482 Fed. App'x 719 (3d Cir. 2012).

[54]  *Ben Franklin*, 186 F.3d at 306–07 (recognizing the common practice of seeking alternative relief).

At argument, Mr. Barr stated that the DAC Report kept and/or generated by HireRight contains false information that has prevented him from obtaining employment as a truck driver for the last three years. This type of harm, if true, does not lend itself solely to monetary damages; moreover, it is a continuous harm.[55]

Two recent cases from the Administrative Review Board reflect that remedies for violation of the STAA include both monetary and non-monetary relief. For example, in *Matter of Grant E. Timmons*, Mr. Timmons, a truck driver, filed a complaint with OSHA alleging his employer blacklisted him in violation of the STAA. After finding that Mr. Timmons engaged in protected activity and was blacklisted, the ALJ awarded Mr. Timmons $17,000 in compensatory damages and ordered that his employer purge Mr. Timmon's employment file and ensure the file reflected a satisfactory work and safety record.[56] Similarly, in *Matter of Albert Brian Canter*, Mr. Canter's employer was found to be in violation of the STAA's whistleblowing protections by placing certain notations on Mr. Canter's DAC report. Among other relief, the ALJ awarded Mr. Canter back pay, interest, attorney's fees and costs, and abatement of the violation, which included deleting the improper notations from Mr. Canter's DAC Report.[57] In both cases, the Administrative Review Board affirmed the ALJ's order of damages and remedies.

---

[55] *See Stone Res.*, 458 B.R. at 833 ("Monetary damages are not a viable alternative as Appellant is continuously harmed by Appellee's breach of the non[-]compete provision."). Indeed, as recognized by HireRight's counsel at argument, if the reorganized HireRight violates any law related to Mr. Barr's DAC Report post-confirmation, Mr. Barr is free to seek whatever relief he deems appropriate.

[56] *Timmons v. CRST Dedicated Services, Inc.*, 2014 WL 4966171 (Dep't of Labor Admin. Review Bd. Sept. 29, 2014).

[57] *Canter v. Maverick Transp., LLC*, 2012 WL 2588598 (Dep't of Labor Admin. Review Bd. June 27, 2012). *See also* News Release, U.S. Dep't of Labor, U.S. Labor Department's OSHA Orders Missouri Trucking Company to Pay More Than $100,000 to Blacklisted Driver From New Jersey, 2014 WL 31417 (Jan. 6, 2014) (noting that OSHA is ordering lost wages, interest, compensatory damages for pain, suffering, emotional distress and loss of home and property, punitive damages, and expungement of the complainant's employment and DAC Report for violation of the STAA).

Monetary damages are not a viable alternative for correction or expungement of a

DAC Report, rather, as reflected in the above cases, correction of a DAC Report is a

necessary complement to any monetary award.  Accordingly, I conclude that the ability to

obtain a correction of his DAC Report—if, indeed, Mr. Barr's assertions are correct—is not

a "claim" that was discharged in the HireRight bankruptcy case.[58]

Finally, Mr. Barr asserts that on two previous occasions in 2015 he attempted to file

a motion for relief from the stay with the Clerk of the Court, but his filings were refused.[59]

He contends that: (i) the Clerk improperly refused to docket two previous motions for relief

from stay when he did not tender a fee with the filing; (ii) the United States Trustee and/or

HireRight were somehow responsible for the fact that his previous attempts to have his

motions filed and/or heard were unsuccessful; and (iii) because his previous motions were

not heard within thirty days, the automatic stay has already terminated as to any litigation

he wants to pursue.

First, per the Bankruptcy Court Miscellaneous Fee Schedule, a fee of $176 is

required to file a motion for relief from stay.[60]  Mr. Barr appears to have challenged the

Clerk's ability to collect the fee (at least, in 2016) and, in any event, he did not tender the fee

---

[58] *In re Udell*, 18 F.3d 403,409 (7th Cir. 1994) (holding that equitable relief is not a "claim" when award of injunction and liquidated damages are cumulative and not alternative, or address entirely separate remedial concerns).

[59] Mr. Barr submitted return receipts showing that both the Clerk's office and the Office of the United States Trustee received documents from Mr. Barr on August 19, 2015.  Barr Motion Ex. D. Although he stated that he has similar return receipts for documents alleged to be sent to the Clerk's office in April 2015, Mr. Barr did not append these documents as exhibits to the instant motion or his post-hearing filing.

[60] *See Bankruptcy Courts Miscellaneous Fee Schedule* ¶ 19, USCOURTS.GOV, http://www.uscourts.gov/services-forms/fees/bankruptcy-court-miscellaneous-fee-schedule (last visited Nov. 15, 2016).  As per Local Rule 1006(e), a schedule of fees also appears on the Clerk's website at http://www.deb.uscourts.gov/.

to the Clerk in 2015 or in 2016 nor did he file a motion to proceed *in forma pauperis* until August 18, 2016.[61]

Second, while it appears that the Office of the United States Trustee (the "UST") may have been served with previous motions,[62] it was not the UST's responsibility to take any action with respect to Mr. Barr's motions. Mr. Barr cites to Federal Rule of Bankruptcy Procedure 5005(c) for the proposition that the UST should have transmitted his previous motions to the Clerk of the Court for filing, but this in an inaccurate interpretation of the rule. Rule 5005(c) states that the UST shall transmit to the Clerk of the Court "any paper intended to be filed with the clerk but erroneously delivered to the [UST]." Mr. Barr did not erroneously deliver any previous motions to the UST, rather, he claims to have delivered the motions directly to the Clerk of the Court to be filed and served them upon the UST. In these circumstances, it was not incumbent on the UST to take any action with respect to his motions.

Third, Local Rule 4001-1(b) requires the moving party, not the UST or the Debtors, to schedule a motion for relief from stay by either placing the motion on a regularly scheduled omnibus date or by obtaining a special setting from chambers.[63] If the moving

---

[61] Mr. Barr recounted in his filing titled *In Forma Pauperis* Motion/Requested to Waive Filing Fees ("*In Forma Pauperis* Motion") that after researching rules and statutes he has not found any reference to a filing fee. D.I. 1222. Mr. Barr further recounts that on August 11, 2016, an administrator and supervisor from the Clerk's office contacted him to inform him of the necessary $176 filing fee, but could not cite him to a rule or statute for the fee. He also recounts that the supervisor suggested that Mr. Barr file a motion *in forma pauperis* to excuse the filing of the fees and also that the Clerk could not docket the Barr Motion without either the required fee or motion. Ultimately, Mr. Barr filed the *In Forma Pauperis* Motion.

[62] Mr. Barr also filed Certificates of Service showing service on HireRight's counsel, Young Conaway Stargatt and Taylor, by email, but counsel stated to the Court that they did not receive any motions by email, including the instant motion. Mr. Barr did not purport to serve the Official Committee of Unsecured Creditors appointed in this case. *See* Fed. R. Civ. P. 4001(a).

[63] Del. Bankr. L.R. 4001-1(b). In his filings, Mr. Barr shows familiarity with Rule 4000-1. *See, e.g.,* *In Forma Pauperis* Motion.

party does not obtain a date on his motion within the thirty-day period, he consents to the stay remaining in place until the motion is heard.[64]

As applied here, assuming without deciding, that the Clerk's office should have accepted for docketing Mr. Barr's previous motions absent the payment of the mandated fee or a motion to proceed *in forma pauperis*,[65] the question is the appropriate remedy.   In *McDowell v. Delaware State Police*, the Third Circuit addressed the clerk's failure to docket a motion intended to act as a complaint in the context of a 1983 action against the state police.[66]  The movant waited over fourteen months to respond to the clerk's letter informing him that he needed to submit a filing fee or a request to proceed *in forma pauperis*.  The Third Circuit held that once the *in forma pauperis* motion was granted, the motion was constructively filed as of the date that the clerk received the motion for purposes of the statute of limitations.  In so finding, the court considered that there was no evidence of bad faith, movant offered a plausible excuse for the delay—he was imprisoned and only learned of his rights after study—and there was no prejudice to the defendants.[67]

In *Breckin v. MBNA America*, the District of Delaware distinguished *McDowell* finding its holding regarding constructive filing to be *dicta* and limited to its factual scenario.[68] Under the facts before it, the *Breckin* court refused to permit constructive filing of a complaint for age discrimination when the plaintiff paid the filing fee 109 days after the

---

[64] Del. Bankr. L.R. 4001-1(b).
[65] *See Patterson Dental Supply v. Hochhauser (In re Hochhauser)*, 2002 WL 1232933 (Bankr. W.D. Tenn. June 5, 2002) (under Bankruptcy Rule 5005(a)(1), the clerk of the court was obligated to accept a filing even though the payment of the filing fee was not in an appropriate form).
[66] 88 F.3d 188, 191 (3d Cir. 1996).
[67] In *Beal Bank SSB v. Brown (In re Brown)*, the Bankruptcy Court for the Western District of Pennsylvania applied *McDowell* to determine that a Chapter 7 petition was filed before "the hammer fell" on a sheriff's sale. 311 B.R. 724, 727–28 (Bankr. W.D. Pa. 2004).
[68] 28 F. Supp. 2d 209, 211 (D. Del. 1998).

court denied his *in forma pauperis* request and 279 days after his right to sue letter was issued. In its analysis, the court considered policy considerations in the ADA context not present in *McDowell*.[69]

   This matter is closer to *Breckin* than to *McDowell*. Mr. Barr claims to have attempted to file the Barr Motion, or some version of it, on two occasions in 2015. Notwithstanding the Clerk's refusal to docket the motion, he waited over a year to follow up on the filing, apparently prompted by the ALJ's Order to Show Cause. In the meantime, HireRight confirmed a plan and received its discharge. Mr. Barr seeks to have the court recognize his prior attempts to file a motion for relief from stay or to have the Barr Motion deemed constructively filed in 2015 so that he can argue that the automatic stay was terminated in 2015 by operation of law and he can proceed with the STAA Action. But, even assuming that the discharge injunction did not trump any previous termination of the automatic stay, permitting the Barr Motion to relate back under these circumstances would not be in keeping with *McDowell*. In *McDowell* and *Breckin*, the court examined the concept of constructive filing in the context of a possible forfeiture of a cause of action due to an expired statute of limitations and came to different conclusions based on the facts of their respective cases. Here, if I permitted constructive filing to 2015 and credited Mr. Barr's argued concomitant termination of the automatic stay, it is HireRight and creditors of HireRight's estate that would forfeit rights.[70]

---

[69] *Id.*

[70] As the Third Circuit noted, section 362 is intended to benefit both the secured creditor and the debtor. *See generally In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 701 (3d Cir. 1989) (reversing the order of the district court and finding that the automatic stay was terminated by operation of law, but without prejudice to the right of the debtor to apply for relief to re-impose the stay under section 105 of the Bankruptcy Code).

Further, even if the Court were to recognize that the Barr Motion was filed in 2015, it was not scheduled for a hearing. Accordingly, the thirty-day period, to the extent it applies to this type of motion for relief from stay,[71] did not begin to run and the automatic stay did not terminate as a result of inaction on any motion that should have been accepted by the Clerk in 2015.[72]

---

[71] While not briefed, it is unclear whether there was a thirty-day clock on any motion Mr. Barr attempted to file for relief from stay in 2015. Section 362(e)(1) provides that "[t]hirty days after a request under *subsection (d)* of this section for relief from the stay *of any act against property of the estate* under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request" except in certain circumstances. 11 U.S.C. § 362(e)(1) (emphasis added). In turn, section 362(d)(2) addresses stays of "*acts against property*" (presumably either of the estate or the debtor), but section (d)(1), which permits relief from stay for cause, does not use those words. And, distinctions are also made in section 362(a). *Compare* § 362(a)(1) (staying actions and proceedings "against the debtor") and § 362(a)(5) (staying actions regarding liens "against property of the debtor") with § 362(a)(2) (staying the enforcement of prepetition judgments "against the debtor or *against property of the estate*"), § 362(a)(3) (staying actions to obtain possession "*of property of the estate*") and § 362(a)(4) (staying actions regarding liens "against property of the estate").
  Further, the advisory committee's original note to Bankruptcy Rule 4001 with regard to section 362(e) suggests there may not have been a running clock in this case: "the expressed legislative intent is to require expeditious resolution of a *secured party's* motion for relief" Fed. R. Bankr. P. 4001(b) advisory committee's note (emphasis added). As does the Third Circuit:

> Section 362, however, also provides two significant statutory protections for *secured creditors*. First, under section 362(d), a secured creditor may request the bankruptcy court to grant it relief from the automatic stay by nullifying, terminating, modifying, or conditioning the stay. Second, to prevent unnecessary delays and adverse effects on the bankrupt estate's assets and the rights of secured creditors which had historically been occasioned by inaction of the bankruptcy courts, the Code also provides stringent time constraints in which a court must hold hearings and issue orders respecting the continuation of the automatic stay. 11 U.S.C.A. § 362(e) and Bankruptcy Rule 4001(a)(2). A violation of these time constraints results in automatic termination of the stay. 11 U.S.C.A. § 362(e) and Bankruptcy Rule 4001(a)(2); *see also* Bankruptcy Reform Act of 1978, H. Rep. No. 95-595, 2d Sess. 344 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6300.

*Wedgewood*, 878 F.2d at 697 (emphasis added); *see also In re Small*, 38 B.R. 143, 147 (Bankr. D. Md. 1984) (the thirty-day period was intended only to apply to secured creditors asserting interests in real property or non-consumer personalty). Here, Mr. Barr is not a secured creditor asking for relief from the stay to foreclose on property or continue foreclosure litigation. Rather, the request for relief from stay sought to continue prepetition litigation unrelated to any *property of the estate*.
[72] There is no time requirement on a hearing on a motion for relief from the discharge order.

*Conclusion*

Having considered all of Mr. Barr's arguments, and having addressed those I believe have some merit, I am denying the Barr Motion. All of the relief he seeks in the non-bankruptcy fora has been discharged by virtue of the Confirmation Order and section 1141 of the Bankruptcy Code, other than the ability to obtain a correction of his DAC Report, which is not a "claim" as that term is used in section 101(5). An order will follow.

BY THE COURT:

Dated: November 28, 2016

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE